UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PERKINS COIE LLP,

         *Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

         *Defendants*.

## DECLARATION OF DAVID J. BURMAN IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

I, David J. Burman, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Perkins Coie LLP ("Perkins Coie"). Perkins Coie is an international law firm that conducts its U.S. operations and activities through a limited liability partnership, Perkins Coie LLP, with seventeen offices around the country. I have been an attorney at Perkins Coie for over 45 years, following two years clerking. I am a member in good standing of the D.C. and Washington bars and have been admitted in many state and federal courts, and I serve on the Advisory Committee on the Federal Rules of Civil Procedure. I am very familiar with the firm's business and operations and was asked as a result to take a lead role in attempting to assess and contain the damage from the March 6 Executive Order. I either have personal knowledge of the facts set forth in this declaration or I know them from business records and my knowledge of the firm's history and operations.

2.      I currently chair the firm's governance task force, and have long and intense involvement in firm management. I led the commercial litigation practice and first served on the firm's executive committee by the early 1990s. I then served for six years on the four-partner

management committee.    Over the years, I have chaired or served on the firm's hiring, compensation, pro bono, technology, and strategic conflicts committees as well as two strategic planning efforts and task forces on practice group structure, total quality management, and role of non-lawyer professionals. I spearheaded the creation of our Intellectual Property Department and the opening of our Chicago office, both of which have become among our most successful initiatives. I have acted as co-lead relationship partner for three of our large institutional clients.

3.     I submit this Declaration in Support of the Complaint and Motion for Temporary Restraining Order filed by Perkins Coie. I am of the age of majority, and I am competent to make this declaration.

**I.     Perkins Coie LLP**

4.     Perkins Coie was founded in Seattle by a retiring U.S. District Judge and U.S. Attorney.   Since 1912, Perkins Coie has grown to become the largest law firm in the Pacific Northwest, has opened offices throughout the United States and in Asia and in Europe, and has more than 1,200 lawyers.  The firm represents a wide range of clients, including Fortune 500 companies, small- and medium-sized businesses, families, individuals, and charitable and public service-oriented organizations. Perkins Coie alumni have been and are presently serving as state and federal court judges, judicial law clerks, and high-ranking government officials, as well as founders, CEOs, and General Counsels of some of the nation's largest and most important companies. Perkins Coie is widely recognized as one of the leading law firms for technology and other innovative companies, and since our founding, Perkins Coie has proudly represented a wide range of industry leaders throughout the world.

5.     Over our 113-year history, Perkins Coie and its lawyers have represented clients in every state, in federal and state courts across the nation, and in tribunals throughout the world

(including the Supreme Court of the United States), and they have helped to establish major precedent in state and federal law. We are committed to providing excellent service to our clients, helping them achieve their goals and standing by them in good and bad times alike.

6.      Perkins Coie has been named as an "Am Law 50" firm on *The American Lawyer 100* list for over a decade. The firm and its lawyers are regularly recognized for excellence in the legal community by *Best Lawyers®*, *Chambers USA*, and other respected organizations, including national and local bar associations.

7.      Perkins Coie has approximately 2,500 employees. Of those, nearly half are attorneys and half are business professionals, including paralegals, patent agents, legal assistants, and other professionals. Our employees are deeply woven into the fabric of their communities. They are Sunday school teachers, Scouts leaders, youth sports coaches, and volunteers serving on hundreds of boards of organizations ranging from art museums and food kitchens to major universities, local schools, and foundations. And they include former members of the armed forces, and current reservists in the U.S. military.

8.      Perkins Coie's attorneys are drawn from all sides of the political spectrum, and most of our attorneys are not politically active. There are attorneys who are liberal and attorneys who are conservative. When Bob Bauer started our small Political Law practice, we were known in Seattle as, if anything, a "Republican firm." Things have become more balanced, but many of our attorneys joined the firm after government service under both Democratic and Republican administrations, or after serving as judges or judicial law clerks to judges appointed by both Democratic and Republican presidents. Reflecting this bipartisan ethos, in recent years, four Perkins Coie partners have been nominated and confirmed to serve as federal judges—two by President Trump in 2019, and two by President Biden in 2021 and 2023.

9.      Perkins Coie is dedicated to our clients, our communities, and each other. The firm has a longstanding, firmwide commitment to pro bono service. Since 1989, the firm has provided approximately 1.45 million hours of pro bono service to innumerable clients, including veterans, indigent families, disabled persons, and community-based organizations of all sizes, including the League of Women Voters and other non-partisan organizations, in matters championing human, civil, and electoral rights, housing, education, food, benefits, and economic justice. We have frequently been honored for our efforts. Our pro bono service also extends to representing indigent criminal defendants before federal courts by court appointment and clients on death row in states with limited pro bono resources. In 2024, for example, Perkins Coie lawyers and business professionals spent over 89,000 hours, valued at nearly $70 million, in pro bono service. Much of our pro bono work involves advocating for military and veterans' rights.

10.      Perkins Coie is often recognized for fostering a work environment in which all lawyers and business professionals are judged on their merit and can reach their potential. Perkins Coie has been named to *Fortune*'s "100 Best Companies to Work For" list for over 20 consecutive years, and our individual offices are often named to similar local lists.

## II.    Interaction with the Federal Government

11.      As a full-service law firm that represents clients in all sectors of the economy in transactional, litigation, and regulatory matters, Perkins Coie lawyers necessarily interact with the federal government on behalf of their clients in innumerable ways. Those interactions are critical to their ability to practice their profession; they are the waters the Perkins Coie attorneys swim in, the air they breathe. If allowed to go into effect, the Order's restrictions would be devastating and irreparable. Most of the firm's litigation practice is in federal court on behalf of their clients in civil and criminal cases, as well as in federal agencies' in-house administrative proceedings. The

firm has nearly a thousand cases currently pending before federal district, bankruptcy, and appellate courts, including the Supreme Court of the United States. Its attorneys have upcoming appearances scheduled before agencies and in courtrooms, including two upcoming arguments before the Supreme Court. Perkins Coie represents clients who have been indicted or are the targets of pending federal criminal investigations.

12.    The firm has nine practice groups, and all of them intersect with the federal government in some way and include clients with business before the federal government. The largest practice groups by headcount are Commercial Litigation, Business, and Intellectual Property, which together account for approximately 75% of the firm's attorneys. The smallest practice group by headcount is Political Law, which includes 8 attorneys (and 19 others affiliated with that practice). I understand the March 6, 2025 Executive Order and Fact Sheet at issue in this proceeding to refer to former members of the Political Law group, albeit not by name. Although the firm's Political Law practice has historically been much smaller than our other practice groups, it also substantially shrank in 2021 when Marc Elias and about 50 other attorneys left Perkins Coie to form the Elias Law Group. This practice group historically has handled a mix of paying and some pro bono cases. It accounts for about 0.5% of the firm's revenue. Perkins Coie attorneys work on these matters because they involve important legal rights and issues affecting our clients.

13.    In the course of their representations, Perkins Coie lawyers frequently meet with federal officials from countless agencies. Although it is difficult to quantify precisely, based on a review of our current client matter list, the vast bulk of our clients have matters that require Perkins Coie lawyers to interact with federal agencies.

14.    For instance, a significant number of Perkins Coie clients are, or have affiliates who are, government contractors and subcontractors—including 100% of its top 15 clients by revenue.

The firm's Government Contracts group handles clients' bid protests and disputes surrounding contract claims, including transactional work and litigation. Perkins Coie represents some of these clients in connection with government contract matters. The approximately 13 attorneys in this group currently are handling approximately 69 government contracting matters involving various federal agencies. But there are many other firm clients that have government contracts and who have engaged Perkins Coie to represent them in matters unrelated to their government contracts.

15.     The firm's Intellectual Property group and its clients also depend heavily on access to and interaction with the federal government. The approximately 236 attorneys in this group frequently represent patent applicants, patent owners, and patent challengers before the U.S. Patent and Trademark Office (USPTO) in patent prosecution and post-grant proceedings, including in administrative trials before the Patent Trial and Appeal Board. Perkins Coie is currently representing approximately 555 clients in approximately 5,415 pending patent applications before the USPTO. Perkins Coie is also representing approximately 20 clients in approximately 56 active post-grant proceedings (i.e., administrative trial proceedings) before the Patent Trial and Appeal Board (PTAB), and approximately 7 clients in approximately 11 active proceedings before the International Trade Commission (ITC). Perkins Coie is also representing clients in trademark and copyright matters before agencies, including approximately 66 matters before the Trademark Trial and Appeal Board (TTAB), approximately 1,960 pending trademark matters before the USPTO, and approximately 145 pending copyright matters before the Copyright Office. Many of those patent and trademark clients also are known to have contracts with the federal government.

16.     Perkins Coie has approximately 343 attorneys in its Business group. That practice group includes subgroups directed to financial regulation, which requires them to engage with federal financial regulatory agencies (such as the Federal Deposit Insurance Corporation, Office

of the Comptroller of the Currency, and the Board of Governors of the Federal Reserve System); international trade, which involves interaction with and practice before the Department of Commerce and the International Trade Commission; and tax, which involves interaction with the Internal Revenue Service.  The international trade group also has approximately 17 pending matters before the Department of Labor and approximately 22 pending matters before U.S. Citizenship and Immigration Services. The group's corporate and securities practice regularly represents clients before and in connection with the Securities and Exchange Commission (SEC), including No Action Request Letters, Securities Act registration statements subject to SEC review, and Exchange Act filings. The Business Group also represents clients before or in connection with the Department of Agriculture, the Food and Drug Administration, Department of Transportation, Department of Labor, Department of Justice, Department of Homeland Security, and Department of State.

17.    The firm's White Collar & Investigations practice includes approximately 29 attorneys and is almost exclusively reliant on interacting with the federal government.  That practice involves representing clients in investigations and after indictments in numerous proceedings involving many agencies of the federal government, including the Department of Justice, Federal Bureau of Investigation (FBI), U.S. Attorney's Offices, and SEC, among others.

18.    There are many other practice groups and subgroups at Perkins Coie that interact, by necessity, with the federal government on behalf of our clients.  These groups include, but are not limited to, Commercial Litigation (with subgroups including Appeals, Issues & Strategy; Construction; and Antitrust); Environment, Energy & Resources; Labor & Employment; Private Client Services; Product Liability; and Real Estate & Land Use.  In summary, much of our work on behalf of our clients requires access to federal government buildings, which house both

courthouses and agencies. This is true of every practice group at the firm. And many of these practice areas, such as White Collar & Investigations, are almost exclusively reliant on interacting with the federal government. Each of our nine major practice groups relies on clients who have done business with the federal government. Such clients or their corporate affiliates account for a significant fraction of revenue in each practice group, as evidenced by the top 15 clients in each practice group (84% of revenue from top 15 clients in Business from those that have or whose corporate affiliates have government contracts; 90% for Commercial Litigation; 51% for Environment, Energy & Resources; 88% for Intellectual Property; 75% for Labor & Employment; 44% for Political Law; 51% for Private Client Services; 94% for Product Liability; 32% for Real Estate & Land Use).

19.     At present, by way of non-exhaustive example, Perkins Coie has active civil and criminal matters on behalf of its clients involving at least the following federal agencies, which require them either to interact with or appear before federal government officials:

- Administration for Strategic Preparedness and Response
- Advisory Council on Historic Preservation
- Biomedical Advanced Research and Development Authority
- Board of Governors of the Federal Reserve System
- Bonneville Power Administration
- Bureau of the Census
- Bureau of Economic Analysis
- Bureau of Indian Affairs
- Bureau of Industry and Security
- Bureau of Land Management
- Bureau of Ocean Energy Management
- Bureau of Reclamation
- Bureau of Safety and Environmental Enforcement
- CHIPS Program Office
- Committee on Foreign Investment in the United States
- Commodity Futures Trading Commission
- Consumer Financial Protection Bureau
- Defense Contract Audit Agency
- Defense Contract Management Agency

- Defense Logistics Agency
- Department of Agriculture
- Department of the Army
- Department of Commerce
- Department of Defense
- Department of Defense Cyber Crime Center
- Department of Energy (including Oak Ridge National Laboratory)
- Department of Health & Human Services
- Department of Homeland Security
- Department of the Interior
- Department of Justice (including Antitrust, CCIPS, Civil, Fraud)
- Department of Labor
- Department of State
- Department of Transportation
- Department of the Treasury
- Department of Veterans Affairs
- Directorate of Defense Trade Controls
- Drug Enforcement Administration
- Environmental Protection Agency
- Equal Employment Opportunity Commission
- Executive Office of the President (including CEQ, OMB, and OSTP)
- Fannie Mae and Freddie Mac
- Federal Aviation Administration
- Federal Bureau of Investigation
- Federal Bureau of Prisons
- Federal Communications Commission
- Federal Deposit Insurance Corporation
- Food & Drug Administration
- Federal Election Commission
- Federal Emergency Management Agency
- Federal Energy Regulatory Commission
- Federal Highway Administration
- Federal Permitting Improvement Steering Council
- Federal Reserve Bank of San Francisco
- Federal Transit Administration
- Financial Crimes Enforcement Network
- Government Accountability Office
- Grid Deployments Office
- Housing and Urban Development
- Internal Revenue Service
- International Trade Administration
- Loan Programs Office
- National Institutes of Health
- National Labor Relations Board

- National Marine Fisheries Service
- National Oceanic and Atmospheric Administration
- National Park Service
- National Renewable Energy Lab
- Office of Clean Energy Demonstrations
- Office of Federal Contract Compliance Programs
- Office of Foreign Assets Control
- Office of the Comptroller of the Currency
- Office of the U.S. Trade Representative
- Pacific States Marine Fisheries Commission
- Patent Trial & Appeal Board
- Rural Utilities Service
- Securities & Exchange Commission
- Small Business Administration
- Trademark Trial & Appeal Board
- U.S. Army Corps of Engineers
- U.S. Attorney's Offices
- U.S. Copyright Office
- U.S. Citizenship and Immigration Services
- U.S. Customs and Border Protection
- U.S. Fish & Wildlife Service
- U.S. Forest Service
- U.S. Immigration and Customs Enforcement
- U.S. International Trade Commission
- U.S. Patent & Trademark Office
- U.S. Postal Inspection Service
- U.S. Secret Service

20.     The firm's pro bono work is frequently before federal agencies or involves interacting with federal government officials. For instance, Perkins Coie attorneys represent veterans in obtaining benefits before the Department of Veterans Affairs and the Department of Defense. Perkins Coie has approximately 41 open veterans matters, the majority of which are related to seeking higher levels of benefits for veterans in connection with their service to this country, such as application for combat-related special compensation (before the Combat-Related Special Compensation Board); discharge upgrade petitions; and appeals to the U.S. Court of Appeals for Veterans Claims. In the past five years, Perkins Coie has handled 90 matters related to veterans' rights. Perkins Coie was honored with the 2023 Veterans Heroes Law Firm Award

by the Attorney General of Washington's Office of Military and Veteran Legal Assistance (OMVLA). That award recognizes the law firm that provided the greatest contribution to OMVLA in any given year. The National Veterans Legal Services Program (NVLSP) also selected a Perkins Coie attorney to receive the 2020 NVLSP Lawyers Serving Warriors Excellence Award. The entire veterans-rights practice requires access to federal officials and buildings. Perkins Coie attorneys also represent disaster victims in FEMA applications and appeals. Perkins Coie attorneys represent pro bono clients in social-security matters, including SSI and SSD. Perkins Coie represents some nonprofits pro bono in obtaining federal tax exemptions. And Perkins Coie represents pro bono low-income inventors with patent applications before the USPTO, and assists organizations and small businesses in registering trademarks. Further, Perkins Coie attorneys have represented pro bono religious organizations, including Jewish and Catholic organizations.

## III. Recent Relevant Litigation

21.     The firm's clients prevailed in all but one of the challenges brought by the Trump campaign seeking to overturn the results of the 2020 election,[1] and the firm's clients also prevailed in a significant number of voting rights cases, including cases where our clients were successful in upholding existing laws against attacks by lawyers for the other party.

22.     On March 24, 2022, Donald Trump sued a host of defendants, including Perkins Coie, Hillary Clinton, the Democratic National Committee, Fusion GPS, and former Perkins Coie partners Michael Sussmann and Marc Elias in the U.S. District Court for the Southern District of Florida alleging that the defendants "maliciously conspired to weave a false narrative" that Mr. Trump was colluding with Russia. *See* 2:22-cv-14102 (S.D. Fla.). Mr. Trump asserted civil RICO

---

[1] The case where Perkins Coie's client did not prevail involved a challenge to the deadline—November 9 versus November 12—to confirm the identities of first-time voters who voted by mail in Pennsylvania.

claims against Perkins Coie for conspiring with the Clinton campaign and sought to recover damages in excess of $24 million, before trebling, as well as attorney's fees and lost profits. On September 9, 2022, the court dismissed the lawsuit with prejudice. *Trump v. Clinton,* 626 F. Supp. 3d 1264 (S.D. Fla. 2022).

23.    On February 6, 2025, Perkins Coie filed a lawsuit, *Shilling v. Trump,* No. 2:25-cv-421 (W.D. Wash.), on behalf of Commander Emily Shilling, Commander Blake Dremann, Lieutenant Commander Geirid Morgan, Sergeant First Class Cathrine Schmid, Sergeant First Class Jane Doe, Staff Sergeant Videl Leins, Matthew Medina, and the Gender Justice League challenging an executive order by President Trump targeting transgender servicemembers. Perkins Coie represents the plaintiffs on a pro bono basis as co-counsel, along with Lambda Legal and the Human Rights Campaign. Perkins Coie, on behalf of its clients, filed a motion for a preliminary injunction on February 19, 2025, asking the court to bar implementation of the executive order until it could adjudicate the case, and the court ordered the government to immediately notify the court before any changes were made to the status quo while the preliminary injunction motion was being briefed.

## IV.    Irreparable Harm Caused by the Order and Its Enforcement

24.    On March 6, 2025, President Donald J. Trump signed the Executive Order 14230 titled "Addressing Risks from Perkins Coie LLP." *See* https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-perkins-coie-llp/ (90 Fed. Reg. 11,781) (the "Order"). The Order was accompanied by a "Fact Sheet" issued the same day that purports to explain and support the Order. Perkins Coie was given no opportunity to respond to the false charges in the Order and Fact Sheet or to explain the inevitable impact.

25.    We of course are constrained under Rule 1.6 of the Model Rules of Professional Conduct and attorney-client privilege, but we can report general facts and facts known to the government. The day after the Executive Order, an official of a federal agency informed a client of Perkins Coie that, because of the Order, the client's Perkins Coie lawyers should not attend a scheduled meeting with an office in that agency to discuss a pending matter. The client had engaged Perkins Coie to defend that client in that enforcement action, and Perkins Coie performed substantial work on the matter, totaling over $1 million in fees, and interacted with the agency on this matter in the interim. The client, after expressing great reluctance and regret, said it was forced to hire other law firms to represent it before the federal government and in related litigation.

26.    On March 6, 2025, an attorney in the Fraud Section of the Criminal Division of the U.S. Department of Justice, informed Perkins Coie that the Fraud Section of the Criminal Division could not proceed with a previously set meeting relating to another Perkins Coie client, citing the need to wait for further guidance on whether that meeting could even occur in light of the Order. This postponement threatens the ability of that client to achieve a swift resolution of the matter.

27.    It is inconceivable that the Order could constitutionally ban Perkins Coie's access to federal courthouses, but because it might be interpreted to do so, the firm has already been forced in incur additional costs in securing additional backup personnel to attend impending hearings. Perkins Coie will continue incurring such harm if the Order's enforcement is not enjoined because Perkins Coie attorneys have numerous upcoming appearances before federal courts and agencies. Indeed, Perkins Coie has nearly a thousand active matters before federal courts, and has thousands of matters before agencies that require access to federal government buildings and officials. Continued refusals by federal officials to meet with Perkins Coie lawyers,

or to permit Perkins Coie lawyers to access federal agencies and buildings, would be devastating to both Perkins Coie's legal practice and its clients' interests.

28.     The Order also includes provisions that would require federal agencies to require government contractors to disclose any relationship they have with Perkins Coie, and to terminate government contracts for clients as to which Perkins Coie has been hired to perform any service. Many of Perkins Coie's largest clients (for instance, the top 15 clients, collectively representing over $343 million in revenue in 2024, which represents almost a quarter of the firm's revenue) or their affiliates have contracts or subcontracts with the federal government, or compete for such contracts, and many of those companies are represented by the firm for legal matters completely unrelated to government-contracting matters. For many of the firm's clients, the fact that the firm gives them legal advice is not public information. Accordingly, if enforced, the Order would seek to require many of these clients to divulge confidential information regarding their legal representations to the federal government, in addition to risking the termination of those clients' contracts if Perkins Coie has been hired to perform any service related to the contract.

29.     Due to the restrictions that the Order imposes on Perkins Coie, and the provisions directed to the firm's federal contractor clients, several clients have already terminated, or have communicated that they are considering terminating, their legal engagements with Perkins Coie. We are in frequent contact with many of our clients, and since the Order, have been in contact with at least our larger clients every day. The common message is that they want to keep using us but are reviewing the relationship, their government contracts and other government interactions, and will need to make decisions shortly. This is a rapidly evolving situation, which changes by the hour. Some clients have reported very concerning messages from government officials directing them to report business with Perkins Coie, and others are concerned about that possibility.

a. A client informed Perkins Coie on March 6, within hours of the Order's release, that due to the Order, Perkins Coie cannot represent that client in any litigation or before the relevant federal agency.

b. A major government contractor that has been a firm client for over 35 years withdrew its work from Perkins Coie in light of the Order as of March 7. Shortly before the Order, the client had added Perkins Coie to its preferred-provider program, and annual billings to the client have often been in the millions of dollars.

c. A government contractor that has been a firm client since 2018 has also withdrawn all work from Perkins Coie as a result of the Order as of March 7.

d. A group of four clients has also withdrawn all work from Perkins Coie as of March 7 due to the need of the clients to engage with various federal agencies—including the DEA, DOJ, and HHS—by the nature of their business.

e. A major government contractor that has been a firm client for over ten years informed the firm on March 7 that it is reconsidering its engagements with Perkins Coie unless something changes in terms of the Order's requirements.

f. Another client indicated on March 7 that it is now, in view of the Order, considering other firms instead to represent it in connection with a DOJ investigation.

g. Because of the uncertainty created by the Order, many clients have begun requesting frequent updates relating to the Order in order to assess whether Perkins Coie can continue to represent them.

h. Earlier today, March 11, a longtime client of the firm that increased its work five-fold over the past three years told us that its CEO intends to disengage from Perkins Coie due to the Order.

30.     Perkins Coie has already lost significant revenue due to the loss of clients who terminated their engagements in the few days since the Order was issued. Like any law firm or business, Perkins Coie has debts, obligations and expenses. If the Order were to continue and thus cause current clients to terminate their engagements, and frighten away prospective new clients, it would put the firm's solvency and very existence at risk. For instance, if we lost our top 15 clients—each of whom is a government contractor or a corporate affiliate of one, each of whom be believe is at risk accordingly—the revenue loss would be devastating because this group alone represented about a quarter of our revenue in 2024. If the Order is allowed to prevent Perkins Coie from interacting with federal agencies or entering federal buildings on behalf of its clients, it would pose an existential risk. The firm is built around representation of clients who interact with the federal government. We take pride in the loyalty of our partners and associates, but lawyers of their quality have other opportunities, including the easy one of following their clients to other firms. Exceptional lawyers are the basis for our reputation and our success. Every passing day increases our risk.

31.     The Order has also had a chilling effect on Perkins Coie attorneys, who are now reconsidering how they approach certain matters that require them to appear in federal buildings.

32.     The Order also threatens Perkins Coie attorneys' right to practice their chosen profession. That threat is not only to revenue-generating practice, but also to the firm's pro bono practice, which frequently requires us to appear in federal court or before federal agencies in criminal, civil, or administrative matters. It is not even clear if TSA officers can process us at airports.

33.     The Order has also impacted Perkins Coie's recruiting and, potentially, retention of our employees. Since the issuance of the Order, we have had business professional candidates

who have been extended offers question the economic health of the firm and if there will be layoffs. One interviewee asked one of the firm's recruiters questions that the recruiter understood to be precipitated by the Order. And the firm has a recruiting event within the next two weeks that is focused on practice before a federal court of appeals, from which the firm historically has hired clerks to practice in areas related to government contracts, international trade, and intellectual property.

34.    The Order also interferes with Perkins Coie's employer–employee relationships because the restrictions are broadly written to include Perkins Coie employees.

## V.    False and Disparaging Statements in the Order

35.    The Order has also harmed Perkins Coie's reputation in the markets for clients, lawyers, and staff through its false and disparaging characterizations of the firm and its attorneys.

36.    The Order says many things that are not only inflammatory but also blatantly false. Most of the allegations were known during the President's first term, and have been (and in many cases were) adjudicated and dismissed long ago. For example, the Order accuses Perkins Coie of working to "steal an election," of "undermining democratic elections, the integrity of our courts, and honest law enforcement," and of "racially discriminat[ing] against its own attorneys and staff, and against applicants," including through "percentage quotas" and "proudly exclud[ing] applicants on the basis of race." And it accuses Perkins Coie of "earnings" that "subsidize, among other things, racial discrimination, falsified documents designed to weaponize the Government against candidates for office, and anti-democratic election changes that invite fraud and distrust." Those accusations are just plain false and most have already been rebutted through the results of prior cases. The Order also references "Fusion GPS" in connection with representation of Hillary

- 17-

Clinton. No attorney at Perkins Coie for at least the last three years had anything to do with the engagement of Fusion GPS.

37.    The Fact Sheet also lists accusations against Perkins Coie. Those descriptions are inflammatory and baseless. Among other false statements, the Fact Sheet wrongly states:

a. "Perkins Coie LLP pushed debunked claims of secret Trump-Russia communications via Alfa Bank, with attorney Michael Sussmann indicted for lying to the FBI about this scheme." A jury quickly and unanimously acquitted Mr. Sussmann. The Fact Sheet also omits that no one else was involved and that Mr. Sussmann left the firm in 2021.

b. "Perkins Coie LLP has worked with activist donors, including George Soros, to judicially overturn enacted election laws, such as those requiring voter identification." Perkins Coie has historically represented both party-affiliated and non-partisan clients in litigation over election laws. Many law firms have done the same. None of Perkins Coie's election-related litigation was frivolous. Indeed, more than half of the litigation was successful after both sides had full due process. And much of it was *defending* state election procedures and actions taken by state officials.

c. "A court was forced to sanction Perkins Coie attorneys for unethical lack of candor before the court." The Fact Sheet alludes to one minor sanction, collectively, $8,700, connected with a single duplicative motion to supplement the record in a Fifth Circuit appeal in a 2021 voting-rights case. None of the three sanctioned attorneys remains at Perkins Coie. It is extremely rare for any of our lawyers to be sanctioned, and we take such matters very seriously.

d. "Perkins Coie LLP has been accused of racially discriminating against its own attorneys, staff, and applicants." Perkins Coie does have a program to encourage minority and other diverse students to become lawyers in technology practices, but it is not limited to such students and Perkins Coie has previously awarded the fellowship to non-diverse applicants. As the law changed, we adjusted the program accordingly, although an action (later voluntarily dismissed) was filed before we could do so. We remain proud of our efforts, which did not harm any existing employee, and which did not affect our regular program for hiring associates in our technology practices. The American Alliance for Equal Rights brought the lawsuit alluded to in the Order (and similar lawsuits against other law firms). The firm responded by making clear that all were welcome to apply to its fellowship, not just those from historically underrepresented groups, and the American Alliance for Equal Rights then dropped the suit.

e. The Fact Sheet is also wrong that "Perkins Coie has publicly announced racial percentage quotas for hiring and promotions, violating civil rights laws." The Fact Sheet's reference to 2019 suggests that it is talking about our pledge, based on the National Football League's Rooney Rule, to always consider minority candidates for firm leadership positions. That is not a quota, and it does not favor such candidates over more qualified candidates.

f. "Perkins Coie LLP hosted an FBI workspace, raising concerns about partisan misuse of sensitive data during investigations targeting President Trump." The "FBI workspace" rumor was long ago debunked. Perkins Coie did not host an "FBI workspace." Rather, like many law firms who represent clients involved in

national-security issues, the firm wanted to protect national security and thus was permitted to install, at its own expense, a single-room Secure Work Environment (SWE) when it moved to new offices. The FBI's only involvement was examining and approving the security of the space. Mr. Sussmann used that as his office. Perkins Coie no longer has a SWE, and the SWE was never an "FBI workspace."

g.  "Perkins Coie LLP has filed lawsuits against the Trump Administration, including one designed to reduce military readiness." This statement impugns Perkins Coie for the political and legal positions taken by some of its clients in lawful litigation. Specifically, this statement refers to *Shilling v. Trump*, a pro bono lawsuit representing plaintiffs challenging an executive order by President Trump affecting transgender servicemembers despite their love of country and equal ability to contribute to military readiness.

* * *

38.    I declare under penalty of perjury, on this 11th day of March, 2025, that the foregoing is true and correct to the best of my knowledge, information and belief.

DAVID J. BURMAN