# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PERKINS COIE LLP, | |
| *Plaintiff*, | Case No. 1:25-cv-00716 (BAH) |
| v. | Judge Beryl A. Howell |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | |
| *Defendants*. | |

## DECLARATION OF DAVID J. BURMAN IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

I, David J. Burman, pursuant to 28 U.S.C. § 1746, hereby declare as follows:[1]

    1.    I am a partner at Perkins Coie LLP ("Perkins Coie"). Perkins Coie is an international law firm that conducts its U.S. operations and activities through a limited liability partnership, Perkins Coie LLP, with seventeen offices around the country. I have been an attorney at Perkins Coie for over 45 years, following two years clerking. I am a member in good standing of the D.C. and Washington bars and have been admitted in many state and federal courts, and I serve on the Advisory Committee on the Federal Rules of Civil Procedure. I am very familiar with the firm's business and operations and was asked as a result to take a lead role in attempting to assess and contain the damage from the March 6 Executive Order. I either have personal knowledge of the facts set forth in this declaration or I know them from business records and my knowledge of the firm's history and operations, and the statements herein are consistent with the

---

[1] This declaration includes the substance of my prior March 12, 2025 declaration in support of Perkins Coie's motion for temporary restraining order (with minor changes where appropriate), along with additional information relevant for summary judgment.

knowledge formed while I was even more directly involved in various aspects of firm management.

2.      I currently chair the firm's governance task force, and have long and intense involvement in firm management. I led the commercial litigation practice and first served on the firm's executive committee by the early 1990s. I then served for six years on the four-partner management committee.  Over the years, I have chaired or served on the firm's hiring, compensation, pro bono, technology, and strategic conflicts committees as well as two strategic planning efforts and task forces on practice group structure, total quality management, and role of non-lawyer professionals. I spearheaded the creation of our Intellectual Property Department and the opening of our Chicago office, both of which have become among our most successful initiatives. I have acted as co-lead relationship partner for three of our large institutional clients.

3.      I submit this Declaration in Support of the Statement of Material Facts As To Which There Is No Genuine Dispute and Motion for Summary Judgment filed by Perkins Coie. I am of the age of majority, and I am competent to make this declaration.

## A.      Perkins Coie LLP

4.      Perkins Coie was founded in Seattle by a retiring U.S. District Judge and U.S. Attorney.  Since 1912, Perkins Coie has grown to become the largest law firm in the Pacific Northwest, has opened offices throughout the United States and in Asia and in Europe, and has more than 1,200 lawyers.

5.      The firm represents a wide range of clients, including Fortune 500 companies, small- and medium-sized businesses, families, individuals, and charitable and public service-oriented organizations. Perkins Coie alumni have been and are presently serving as state and federal court judges, judicial law clerks, prosecutors, public defenders, and high-ranking

government officials, as well as founders, CEOs, and General Counsels of some of the nation's largest and most important companies. Perkins Coie is widely recognized as one of the leading law firms for technology and other innovative companies, and since our founding, Perkins Coie has proudly represented a wide range of industry leaders throughout the world.

6.    Over our 113-year history, Perkins Coie and its lawyers have represented clients in most if not every state, in federal and state courts across the nation, and in tribunals throughout the world (including the Supreme Court of the United States), and they have helped to establish major precedent in state and federal law. The firm is frequently sought out by leading technology and communications companies who are innovating in areas as varied as artificial intelligence, telecommunications, and the Internet of Things. The firm's lawyers are leaders and members of national, state, and local bar associations around the country. Among other esteemed professional organizations, its lawyers are members of the American Bar Association, state bar associations for nearly every state in the country, and local bar associations in such cities and counties as Chicago, King County, Los Angeles County, Maricopa County, New York City, San Francisco, and Washington, D.C.

7.    Perkins Coie has been named as an "Am Law 50" firm on *The American Lawyer 100* list for over a decade. The firm and its lawyers are regularly recognized for excellence in the legal community by *Best Lawyers*®, *Chambers USA*, and other respected organizations, including national and local bar associations.

8.    Perkins Coie has approximately 2,500 lawyers and business professionals. Of those, nearly half are attorneys—including equity partners, non-equity partners, and associates— and half are business professionals, including paralegals, patent agents, legal assistants, and other professionals. Our employees are deeply woven into the fabric of their communities. They are

Sunday school teachers, Scout leaders, youth sports coaches, and volunteers serving on hundreds of boards of organizations ranging from art museums and food kitchens to major universities, local schools, and foundations. They include former members of the armed forces, and current reservists in the U.S. military.

9.      Perkins Coie's attorneys are drawn from all sides of the political spectrum, and most of our attorneys are not politically active. There are attorneys who are liberal and attorneys who are conservative. When Bob Bauer started our small Political Law practice, we were known in Seattle as, if anything, a "Republican firm." His practice was viewed as an interesting business opportunity, not a cause. While partner politics have become more balanced, it was always important that the political practice be respectful of the firm's diversity. Further, many of our attorneys joined the firm after government service under both Democratic and Republican administrations, or after serving as judges or judicial law clerks to judges appointed by both Democratic and Republican presidents. Reflecting this bipartisan ethos, in the past six years, four current or former Perkins Coie lawyers have been nominated and confirmed to serve as federal judges—two by President Trump in 2019, and two by President Biden in 2021 and 2023. One former partner ran for Congress as a Republican, won, and returned to the firm for a time after he lost re-election. Another partner was elected Washington Attorney General as a Republican.

10.      Perkins Coie is dedicated to our clients, our communities, and each other. The firm has a longstanding, firmwide commitment to pro bono service. Since 1989, the firm has provided approximately 1.45 million hours of pro bono service by attorneys, paralegals, and other business professionals to innumerable clients, including veterans, indigent families, disabled persons, and community-based organizations of all sizes, including the League of Women Voters and other non-partisan organizations, in matters championing human, civil, and electoral rights, housing,

education, food, benefits, and economic justice. We have frequently been honored for our efforts. Our pro bono service also extends to representing indigent criminal defendants before federal courts by court appointment and clients on death row in states with limited pro bono resources. In 2024, for example, Perkins Coie lawyers, paralegals, and other business professionals spent over 89,000 hours, valued at nearly $70 million, in pro bono service. Much of our pro bono work involves advocating for military and veterans' rights.

11.    Perkins Coie has received numerous awards from a wide range of organizations for its pro bono representation, including state and local bar associations, the U.S. Patent and Trademark Office 2023 Patent Pro Bono Achievement Certificate, the U.S. District Court for the District of Arizona 2022 Outstanding Pro Bono Attorney of the Year Award (awarded in 2023), and the 2023 Veteran Heroes Law Firm Award by the Attorney General of Washington's Office of Military and Veteran Legal Assistance.

12.    Perkins Coie is often recognized for fostering a work environment in which all lawyers and business professionals are judged on their merit and can reach their potential. Perkins Coie has been named to *Fortune*'s "100 Best Companies to Work For" list for over 20 consecutive years, and our individual offices are often named to similar local lists.

**B.    The Firm's Diversity and Inclusion Efforts**

13.    In addition to our representation of clients in this area, Perkins Coie itself has a longstanding and demonstrable commitment to fostering diversity and inclusion (D&I) within the firm, the legal profession and community. The firm's commitment is summarized plainly on our website:

- "We are intentional and consistent in our efforts to increase the diversity of our workforce and to advance the values of diversity and inclusion in the legal

profession.  Diversity and inclusion are key to our culture, our values, and our business strategy.  They are fundamental to the way we connect with and serve our clients.";

- "Perkins Coie is committed to advancing diversity and inclusion both within the firm and throughout our collective communities.  We will continue to support and participate in efforts to make the legal profession more diverse and inclusive."

*See* Ex. 1, p. 1, 2.

14.    Like the federal government, Perkins Coie formally recognizes Martin Luther King Jr. Day and Juneteenth as firmwide holidays, reinforcing the Firm's commitment to racial equity through institutionalized reflection, education, and service.  The firm encourages attorneys and staff to engage in volunteer activities on these days, supporting local community organizations dedicated to advancing racial justice.  Perkins Coie also observes many heritage months, including several that have been recognized by Congress, by conducting programming aimed at fostering awareness and appreciation of diverse cultural narratives.  These include, but are not limited to, Black History Month, Asian American and Pacific Islander Heritage Month, Women's History Month, Pride Month, and Hispanic Heritage Month.  These initiatives are complemented by firm-wide speakers, panel discussions, and presentations open and available to all Perkins Coie personnel designed to encourage meaningful dialogue on diversity-related topics.  These programs benefit all of the firm's personnel, and we believe they make for a more cohesive and effective working environment.

15.    Perkins Coie's hiring and promotion decisions are merit-based, meaning all candidates are evaluated equally based on the same metrics: qualifications, competencies, personality, and demonstrated excellence.  The firm's hiring committee and interviewers undergo

training on best practices for inclusive hiring, mitigating implicit biases, and fostering fair opportunities. Perkins Coie does not have "percentage quotas" as part of its hiring practices.

16.     Perkins Coie has a Diversity & Inclusion Fellowship program that is expressly open to all first-year law students. *See* Ex. 2, p. 3.

17.     Following litigation initiated by the American Alliance for Equal Rights in 2023, the firm explicitly affirmed the inclusive nature of the fellowship to ensure continued adherence to principles of fairness and legal compliance. After the firm's confirmation that the law student fellowships were open to all, the American Alliance for Equal Rights voluntarily dismissed its lawsuit.

**C.     Interaction with the Federal Government**

18.     Perkins Coie is constrained by Rule 1.6 of the Model Rules of Professional Conduct and attorney-client privilege, and thus cannot disclose client engagements without authorization. No client has authorized Perkins Coie to disclose its engagement of the firm in connection with this litigation, and this section therefore contains information about the Firm's practice without revealing confidential details.

19.     As a full-service law firm that represents clients in all sectors of the economy in transactional, litigation, and regulatory matters, Perkins Coie lawyers necessarily interact with the federal government on behalf of their clients in innumerable ways. Those interactions are critical to their ability to practice their profession; they are the waters the Perkins Coie attorneys swim in, the air they breathe. If allowed to go into effect, the Order's restrictions would be devastating and irreparable. Most of the firm's litigation practice is in federal court on behalf of their clients in civil and criminal cases, as well as in federal agencies' in-house administrative proceedings. As of March 11, 2025, the firm had nearly a thousand cases currently pending before federal district,

bankruptcy, and appellate courts, including the Supreme Court of the United States. Its attorneys have upcoming appearances scheduled before agencies and in courtrooms, including an upcoming argument before the Supreme Court (another one has occurred since March 11).

20.     Perkins Coie represents clients who have been indicted or are the targets of pending federal criminal investigations. Over the past five years, the firm has represented more than 80 individuals and companies who have been criminally investigated, charged, and/or prosecuted by federal authorities at the Department of Justice. This list does not include the firm's work in federal criminal-adjacent areas, such as clemency petitions or other post-conviction relief beyond direct appeals, such as pardons or compassionate release.

21.     The firm has nine main practice groups, and all of them intersect with the federal government in some way and include clients with business before the federal government. The largest practice groups by headcount are Commercial Litigation, Business, and Intellectual Property, which together account for approximately 75% of the firm's attorneys. The smallest practice group by headcount is Political Law. Today, Perkins Coie's Political Law Group includes approximately 8 attorneys, plus approximately 19 attorneys who are members of other practice groups and also affiliated with the practice. I understand the March 6, 2025 Executive Order and Fact Sheet at issue in this proceeding to refer to former members of the Political Law Group, albeit not by name. Although the firm's Political Law practice has historically been much smaller than our other practice groups, it also substantially shrank in 2021 when Marc Elias and about 50 other attorneys left Perkins Coie to form the Elias Law Group. This practice group historically has handled a mix of paying and some pro bono cases, and it is often called on to advise clients (typically corporations and business organizations) on political finance issues. It accounts for

about 0.5% of the firm's revenue.  Perkins Coie attorneys work on these matters because they involve important legal rights and issues affecting our clients.

22.    In the course of their representations, Perkins Coie lawyers frequently meet with federal officials from countless agencies.  Although it is difficult to quantify precisely, based on a review of our current client matter list, the vast bulk of our clients have matters that require Perkins Coie lawyers to interact with federal agencies.

23.    For instance, a significant number of Perkins Coie clients are, or have affiliates who are, government contractors and subcontractors—including 100% of its top 15 clients by revenue. *See* Ex. 3 (identifying revenue from top 15 clients).  I have also reviewed records from the Federal Procurement Data System (FDPS) to confirm that each of these clients, or their affiliates, are government contractors.

24.    The firm's Government Contracts group handles clients' bid protests and disputes surrounding contract claims, including transactional work and litigation.  Perkins Coie represents some of these clients in connection with government contract matters.  As of March 11, 2025, the approximately nine attorneys in this group were handling approximately 70 government contracting matters involving various federal agencies.  But there are many other firm clients that have government contracts and who have engaged Perkins Coie to represent them in matters unrelated to their government contracts.

25.    The firm's Intellectual Property group and its clients also depend heavily on access to and interaction with the federal government.  The approximately 236 attorneys in this group frequently represent patent applicants, patent owners, and patent challengers before the U.S. Patent and Trademark Office (USPTO) in patent prosecution and post-grant proceedings, including in administrative trials before the Patent Trial and Appeal Board.  As of March 11, 2025, Perkins

Coie was representing clients in approximately 5,415 pending patent applications before the USPTO. Perkins Coie was also representing clients in approximately 56 active post-grant proceedings (i.e., administrative trial proceedings) before the Patent Trial and Appeal Board (PTAB), and clients in approximately 11 active proceedings before the International Trade Commission (ITC). Perkins Coie was also representing clients in trademark and copyright matters before agencies, including approximately 66 matters before the Trademark Trial and Appeal Board (TTAB), approximately 1,960 pending trademark matters before the USPTO, and approximately 145 pending copyright matters before the Copyright Office. Many of those patent and trademark clients also are known to have contracts with the federal government.

26.    Perkins Coie has approximately 340 attorneys in its Business group. That practice group includes subgroups directed to financial regulation, which requires them to engage with federal financial regulatory agencies and instrumentalities (such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency); international trade, which involves interaction with and practice before the Department of Commerce and the International Trade Commission; and tax, which involves interaction with the Internal Revenue Service. As of March 11, 2025, the international trade group also had approximately 17 pending matters before the Department of Labor and approximately 22 pending matters before U.S. Citizenship and Immigration Services. The group's corporate and securities practice regularly represents clients before and in connection with the Securities and Exchange Commission (SEC), including No Action Request Letters, Securities Act registration statements subject to SEC review, and Exchange Act filings. The Business Group also represents clients before or in connection with the Department of Agriculture, the Food and Drug Administration, Department of Transportation, Department of Justice, Department of Homeland Security, and Department of State.

27.     The firm's White Collar & Investigations practice (a subgroup of the Commercial Litigation group) includes approximately 29 attorneys and is almost exclusively reliant on interacting with the federal government. That practice involves representing clients in investigations and after indictments in numerous proceedings involving many agencies of the federal government, including the Department of Justice, Federal Bureau of Investigation (FBI), U.S. Attorney's Offices, and SEC, among others.

28.     There are many other practice groups and subgroups at Perkins Coie that interact, by necessity, with the federal government on behalf of our clients. These groups include, but are not limited to, Commercial Litigation (with subgroups including Appeals, Issues & Strategy; Construction; and Antitrust); Environment, Energy & Resources; Labor & Employment; Private Client Services; Product Liability; and Real Estate & Land Use. In summary, much of our work on behalf of our clients requires access to federal government buildings, which house both courthouses and agencies. This is true of every practice group at the firm. And certain of these practice areas, such as White Collar & Investigations, are almost exclusively reliant on interacting with the federal government. Each of our nine major practice groups relies on clients who have done business with the federal government. Such clients or their corporate affiliates account for a significant fraction of revenue in each practice group, as evidenced by the top 15 clients in each practice group (84% of revenue from top 15 clients in Business from those that have or whose corporate affiliates have government contracts; 90% for Commercial Litigation; 88% for Intellectual Property; 51% for Environment, Energy & Resources; 75% for Labor & Employment; 44% for Political Law; 51% for Private Client Services; 94% for Product Liability; 32% for Real Estate & Land Use). *See* Ex. 4 (listing revenue from top 15 clients in each practice group). I have

also reviewed records from the FDPS that confirm the percentage of these clients, or their affiliates, that are government contractors.

29.    As of March 11, 2025, by way of non-exhaustive example, our records show that Perkins Coie has active civil and criminal matters on behalf of its clients involving at least the following federal agencies, which require them either to interact with or appear before federal government officials:

- Administration for Strategic Preparedness and Response
- Advisory Council on Historic Preservation
- Biomedical Advanced Research and Development Authority
- Bonneville Power Administration
- Bureau of the Census
- Bureau of Economic Analysis
- Bureau of Indian Affairs
- Bureau of Industry and Security
- Bureau of Land Management
- Bureau of Ocean Energy Management
- Bureau of Reclamation
- Bureau of Safety and Environmental Enforcement
- CHIPS Program Office
- Committee on Foreign Investment in the United States
- Commodity Futures Trading Commission
- Consumer Financial Protection Bureau
- Defense Contract Audit Agency
- Defense Contract Management Agency
- Defense Logistics Agency
- Department of Agriculture
- Department of the Army
- Department of Commerce
- Department of Defense
- Department of Energy (including Oak Ridge National Laboratory)
- Department of Health & Human Services
- Department of Homeland Security
- Department of the Interior
- Department of Justice (including Antitrust, CCIPS, Civil, Fraud)
- Department of Labor
- Department of State
- Department of Transportation
- Department of Toxic Substance Controls

- Department of the Treasury
- Department of Veterans Affairs
- Directorate of Defense Trade Controls
- Drug Enforcement Administration
- Environmental Protection Agency
- Equal Employment Opportunity Commission
- Executive Office of the President (including CEQ, OMB, and OSTP)
- Fannie Mae and Freddie Mac
- Federal Aviation Administration
- Federal Bureau of Investigation
- Federal Bureau of Prisons
- Federal Communications Commission
- Federal Deposit Insurance Corporation
- Food & Drug Administration
- Federal Election Commission
- Federal Emergency Management Agency
- Federal Energy Regulatory Commission
- Federal Highway Administration
- Federal Permitting Improvement Steering Council
- Federal Transit Administration
- Financial Crimes Enforcement Network
- Financial Industry Regulatory Affairs (FINRA)
- Government Accountability Office
- Grid Deployments Office
- Housing and Urban Development
- Internal Revenue Service
- International Trade Administration
- Loan Programs Office
- National Institutes of Health
- National Labor Relations Board
- National Marine Fisheries Service
- National Oceanic and Atmospheric Administration
- National Park Service
- National Renewable Energy Lab
- Office of Clean Energy Demonstrations
- Office of Federal Contract Compliance Programs
- Office of Foreign Assets Control
- Office of the Comptroller of the Currency
- Office of the U.S. Trade Representative
- Pacific States Marine Fisheries Commission
- Patent Trial & Appeal Board
- Rural Utilities Service
- Securities & Exchange Commission
- Small Business Administration

- Trademark Trial & Appeal Board
- U.S. Army Corps of Engineers
- U.S. Attorney's Offices
- U.S. Copyright Office
- U.S. Citizenship and Immigration Services
- U.S. Customs and Border Protection
- U.S. Fish & Wildlife Service
- U.S. Forest Service
- U.S. Immigration and Customs Enforcement
- U.S. International Trade Commission
- U.S. Patent & Trademark Office
- U.S. Postal Inspection Service
- U.S. Secret Service

30.     The firm's pro bono work is frequently before federal agencies or involves interacting with federal government officials.  For instance, Perkins Coie attorneys represent individual veterans pro bono in obtaining benefits before the Department of Veterans Affairs and the Department of Defense.  As of March 11, 2025, Perkins Coie had approximately 41 open pro bono matters for individual veterans matters, the majority of which are related to seeking higher levels of benefits for veterans in connection with their service to this country, such as application for combat-related special compensation (before the Combat-Related Special Compensation Board); discharge upgrade petitions; and appeals to the U.S. Court of Appeals for Veterans Claims. In the past five years, Perkins Coie has handled 90 matters for individual service members.  Perkins Coie was honored with the 2023 Veterans Heroes Law Firm Award by the Attorney General of Washington's Office of Military and Veteran Legal Assistance (OMVLA).  That award recognizes the law firm that provided the greatest contribution to OMVLA in any given year.  The National Veterans Legal Services Program (NVLSP) also selected a Perkins Coie attorney to receive the 2020 NVLSP Lawyers Serving Warriors Excellence Award.  The entire veterans-rights practice requires access to federal officials and buildings.  Perkins Coie attorneys also represent disaster victims on a pro bono basis in FEMA applications and appeals.  Perkins Coie attorneys represent

pro bono clients in social-security matters, including SSI and SSDI. Perkins Coie represents several nonprofits pro bono for a range of matters, including obtaining federal tax exemptions, formation, and counseling. And Perkins Coie represents pro bono low-income inventors with patent applications before the USPTO, and assists organizations and small businesses in registering trademarks. Further, Perkins Coie attorneys have represented pro bono religious organizations, including Jewish and Catholic organizations.

31.    Much of this pro bono work is not "political." Our analysis indicates that only about 20% of the pro bono matters, and 35% of the pro bono time spent over the past year, were attributable to cases that might be viewed as "political" – *i.e.*, cases involving transgender service members, homelessness, immigration, reproductive rights, the First or Second Amendments, elections, discrimination, or right to die. By contrast, 80% of Perkins Coie's pro bono matters, and nearly two-thirds of its pro bono hours over the past year, were devoted to non-political matters such as veterans, domestic abuse, Criminal Justice Act appointments to represent indigent defendants, Social Security disability payments, patents and trademarks, business and non-profit tax counseling.

32.    Examples of the type of pro bono work that might be considered "political" include: 1) a challenge to a state law that prevented pregnant individuals from using midwives that employ traditional healing practices for prenatal, maternal, and infant care; 2) assisting a faith-based "crisis" pregnancy resources center in a lease dispute; and 3) assisting a deported veteran—who had lived in the United States as a lawful permanent resident since the age of five—in returning to the United States through humanitarian parole.

**D.      Recent Relevant Litigation**

33.      In 2020, Perkins Coie represented a number of clients opposing then-candidate Trump's challenges to the results of the 2020 Presidential Election.  The firm's clients prevailed in all but one of the challenges brought by the Trump campaign seeking to overturn the results of the 2020 election,[2] and the firm's clients also prevailed in a significant number of voting rights cases, including cases where our clients were successful in upholding existing laws against challenges by lawyers for the other party.  The profession's ethics rules would generally not allow us to represent candidate Trump's interests once we had been retained adverse to those interests.

34.      On March 24, 2022, Donald Trump sued a host of defendants, including Perkins Coie, Hillary Clinton, the Democratic National Committee, Fusion GPS, and former Perkins Coie partners Michael Sussmann and Marc Elias in the U.S. District Court for the Southern District of Florida alleging that the defendants "maliciously conspired to weave a false narrative" that Mr. Trump was colluding with Russia.  *See* 2:22-cv-14102 (S.D. Fla.).  Mr. Trump asserted civil RICO claims against Perkins Coie for conspiring with the Clinton campaign and sought to recover damages in excess of $24 million, before trebling, as well as attorney's fees and lost profits.  On September 9, 2022, the court dismissed the lawsuit with prejudice.  *Trump v. Clinton,* 626 F. Supp. 3d 1264 (S.D. Fla. 2022).

35.      On February 6, 2025, Perkins Coie filed a lawsuit, *Shilling v. Trump*, No. 2:25-cv-241 (W.D. Wash.), on behalf of Commander Emily Shilling, Commander Blake Dremann, Lieutenant Commander Geirid Morgan, Sergeant First Class Cathrine Schmid, Sergeant First Class Jane Doe, Staff Sergeant Videl Leins, Matthew Medina, and the Gender Justice League

---

[2] The case where Perkins Coie's client did not prevail involved a challenge to the deadline—November 9 versus November 12—to confirm the identities of first-time voters who voted by mail in Pennsylvania.

challenging an executive order by President Trump targeting transgender servicemembers. The lawsuit challenges the Executive Order as a violation of Plaintiffs' First Amendment, due process, and equal protection rights. Perkins Coie represents the plaintiffs on a pro bono basis as co-counsel, along with Lambda Legal and the Human Rights Campaign. On February 19, 2025, Perkins Coie, on behalf of its clients, filed a motion for a preliminary injunction asking the court to bar implementation of the executive order until it could adjudicate the case. The court entered a preliminary injunction on March 27, 2025. *Shilling*, No. 2:25-cv-241, ECF Dkt. No. 103 (W.D. Wash.). On January 28, 2025, a group of plaintiffs filed an earlier parallel lawsuit challenging Executive Order 14185. *Talbott v. Trump*, No. 25-cv-240, Dkt. 1 (D.D.C.). Perkins Coie does not represent those individuals and, beyond monitoring, is not otherwise involved in that litigation.

E.    **Security Clearances Held by Perkins Coie Personnel**

36.    At the time of the March 6 Order, our records showed that approximately twenty-four Perkins Coie lawyers and business professionals held security clearances. These individuals include a dozen persons with former military or other public service backgrounds, granted access to sensitive information by virtue of their commitment to public service. These individuals also include and overlap with persons whose access to sensitive information has been granted in the context of their fulfilling their obligations as lawyers to represent their clients.

37.    Of the twenty-four security clearance holders, twenty-one received clearance from the Department of Defense and the other three received clearance from the Department of Justice and Federal Bureau of Investigation.

38.    Nine of the security clearance holders received their clearance prior to being hired by Perkins Coie. Two of those individuals hold clearances in connection with their duties as

military reservists, and wholly unrelated to their work at Perkins Coie. Four of the twenty-four individuals with security clearances are non-attorneys.

39.    One partner received a security clearance on February 12, 2025, after President Trump's inauguration and approximately three weeks before the Executive Order issued. The "Adjudication History" in the Defense Information System for Security (DISS) for the partner reflected "**Top Secret adjudication completed** with a **determination of Favorable by DoD CAS on 2025/02/12**." (emphasis in original). *See* Ex. 5. All of the factual conclusions recited in Section 1 of the Executive Order occurred before that partner received this security clearance.

40.    Ten of the security clearance holders were hired at Perkins Coie after the 2016 election.

41.    Nineteen of the security clearance holders had no involvement in any of the matters referenced in the Order or the Fact Sheet. Of the five that did, the security clearances they held were unrelated to their work on those matters. No security clearance holder had any involvement in the Fusion GPS matter. No security clearance holder has any involvement with the *Shilling* matter. None of the security clearance holders is a primary member of the Political Law Group.

42.    Perkins Coie previously (but no longer) maintained a secure area with a low classification level, namely a secure working environment, but that secure area was closed prior to the issuance of the Order. As described below, Perkins Coie has never maintained a Sensitive Compartmented Information Facility (SCIF) and has no record of FBI agents working out of its offices.

**F.    Irreparable Harm Caused by the Order and Its Enforcement**

43.    On March 6, 2025, President Donald J. Trump signed the Executive Order 14230 titled "Addressing Risks from Perkins Coie LLP." *See* https://www.whitehouse.gov/presidential-

actions/2025/03/addressing-risks-from-perkins-coie-llp/ (90 Fed. Reg. 11,781) (the "Order").  The Order was accompanied by a "Fact Sheet" issued the same day that purports to explain and support the Order.  Perkins Coie was given no notice of, nor an opportunity to respond to, the false charges in the Order and Fact Sheet or to explain their inevitable impact on the firm before they were issued, and no effort was made to alter the Order or Fact Sheet after our TRO pleadings pointed out many fundamental (and still unrebutted) errors.  Numerous bar groups, law schools, law firms, and lawyers have spoken out against the Executive Order's plain unconstitutionality.

44.     We of course are constrained under Rule 1.6 of the Model Rules of Professional Conduct and attorney-client privilege, but we can report general facts and facts known to the government.  The day after the Executive Order, an official of a federal agency informed a client of Perkins Coie that, because of the Order, the client's Perkins Coie lawyers should not attend a scheduled meeting with an office in that agency to discuss a pending matter.  The client had engaged Perkins Coie to defend that client in that enforcement action, and Perkins Coie performed substantial work on the matter, totaling over $1 million in fees, and interacted with the agency on this matter in the interim.  The client, after expressing great reluctance and regret, said it was forced to hire other law firms to represent it before the federal government and in related litigation.

45.     On March 6, 2025, an attorney in the Fraud Section of the Criminal Division of the U.S. Department of Justice, informed Perkins Coie that the Fraud Section of the Criminal Division could not proceed with a previously set meeting relating to another Perkins Coie client, citing the need to wait for further guidance on whether that meeting could even occur in light of the Order. *See* Ex. 6.

46.     It is inconceivable that the Order could constitutionally ban Perkins Coie's access to federal courthouses, but because it might be interpreted to do so, the firm has already been

forced to incur additional costs in securing backup personnel to attend impending hearings. Perkins Coie will continue incurring such harm if the Order's enforcement is not permanently enjoined because Perkins Coie attorneys have numerous upcoming appearances before federal courts and agencies. Indeed, Perkins Coie has nearly a thousand active matters before federal courts, and has thousands of matters before agencies that require access to federal government buildings and officials. Refusals by federal officials to meet with Perkins Coie lawyers, or to permit Perkins Coie lawyers to access federal agencies and buildings, would be devastating to both Perkins Coie's legal practice and its clients' interests. Even the threat of such lack of access is surely deterring potential new clients and existing clients from retaining the firm for new matters.

47.      Similarly, the Order also includes provisions that would require federal agencies to require government contractors to disclose any relationship they have with Perkins Coie, and to terminate government contracts for clients as to which Perkins Coie has been hired to perform any service. Many of Perkins Coie's largest clients (for instance, the top 15 clients, collectively representing over $343 million in revenue in 2024, which represents almost a quarter of the firm's revenue) or their affiliates have contracts or subcontracts with the federal government, or compete for such contracts, and many of those companies are represented by the firm for legal matters completely unrelated to government-contracting matters. *See supra* ¶ 23. For many of the firm's clients, the fact that the firm gives them legal advice is not public information, and the importance of confidentiality is a reason for attorney-client privilege and Rule 1.6. Accordingly, if enforced, the Order would seek to require many of these clients to divulge confidential information regarding their legal representations to the federal government, in addition to risking the termination of those clients' contracts if Perkins Coie has been hired to perform any service related to the contract.

48.     Due to the restrictions that the Order imposes on Perkins Coie, and the provisions directed to the firm's federal contractor clients, several clients have already terminated, or have communicated that they are considering terminating, their legal engagements with Perkins Coie. We are in frequent contact with many of our clients, and since the Order, have been in contact with at least our larger clients every day.  The common message is that they want to keep using us but are reviewing the relationship, their government contracts and other government interactions, and will need to make decisions shortly.  This is a rapidly evolving situation, which changes by the hour.  Prior to the TRO, for example, some clients have reported very concerning messages from government officials directing them to report business with Perkins Coie, and others are concerned about that possibility, including:

a.  A seven-year client with seven open matters informed Perkins Coie on March 6, 2025, within hours of the Order's release, that due to the Order, Perkins Coie cannot represent that client in any litigation or before the relevant federal agency.

b.  A major government contractor that has been a firm client for over 35 years reassigned two matters to other law firms on March 7, 2025.

c.  A government contractor that has been a firm client since 2018 withdrew all work from Perkins Coie as a result of the Order as of March 7, 2025.

d.  A coalition of four clients had also withdrawn all coalition work from Perkins Coie as of March 7, 2025 due to the need of the clients to engage with various federal agencies—including the DEA, DOJ, and HHS—by the nature of their business.

e.  A major government contractor that has been a firm client since 2021 with fifteen open matters informed the firm on March 7, 2025 that it is reconsidering its

engagements with Perkins Coie unless something changes in terms of the Order's requirements.

    f.   Another client indicated on March 7, 2025 that it is now, in view of the Order, considering other firms instead to represent it in connection with a DOJ investigation.

    g.   On March 11, 2025, a longtime client of the firm that had increased its work five-fold over the past three years and had 30 open matters started to reconsider whether to terminate every engagement with Perkins Coie.

    h.   Because of the uncertainty created by the Order, and even after the entry of the TRO, many clients have begun requesting frequent updates relating to the Order in order to assess whether Perkins Coie can continue to represent them.

49.    The abrupt loss of so many longstanding and significant clients across a variety of business types and practice disciplines in a one-week period is exceptional and abnormal. The common denominator among these clients is that each one terminated or began reconsidering its engagements in the immediate aftermath of the Order's issuance. While the TRO stemmed some of those consequences, a permanent injunction is necessary to prevent them from resuming and intensifying.

50.    Perkins Coie has already lost significant revenue due to the loss of clients who terminated their engagements in the few days since the Order was issued. And the firm has lost out on new work from clients who were considering engaging the firm, but chose not to move forward with Perkins Coie after issuance of the Executive Order. Like any law firm or business, Perkins Coie has debts, obligations and expenses. If the Order were to continue and thus cause current clients to terminate their engagements, and frighten away prospective new clients, it would

put the firm's solvency and very existence at risk. For instance, if we lost our top 15 clients—each of whom is a government contractor or a corporate affiliate of one, each of whom we believe is at risk accordingly—the revenue loss would be devastating because this group alone represented about a quarter of our revenue in 2024. If the Order is allowed to prevent Perkins Coie from interacting with federal agencies or entering federal buildings on behalf of its clients, it would pose an existential risk. The firm is built around representation of clients who interact with the federal government. We take pride in the loyalty of our partners and associates, but lawyers of their quality have other opportunities, including the easy one of following their clients to other firms. Exceptional lawyers are the basis for our reputation and our success.

51.     The Order has also had a chilling effect on Perkins Coie attorneys, who are now reconsidering how they approach certain matters that require them to appear in federal buildings.

52.     The Order also threatens Perkins Coie attorneys' right to practice their chosen profession. That threat is not only to revenue-generating practice, but also to the firm's pro bono practice, which frequently requires us to appear in federal court or before federal agencies in criminal, civil, or administrative matters. It is not even clear if TSA officers can process us at airports.

53.     The Order has also impacted Perkins Coie's recruiting and, potentially, retention of our personnel. Since the issuance of the Order, we have had business professional candidates who have been extended offers question the economic health of the firm and ask if there will be layoffs. One interviewee asked one of the firm's recruiters questions that the recruiter understood to be precipitated by the Order. The threat to the Firm's recruitment efforts poses severe consequences for the health of the firm. Its potential for growth as a business depends on its ability to draw and retain top talent.

54.     The Order increases the potential that Perkins Coie lawyers will leave the firm for other opportunities in order to preserve their relationships with clients that have government contracts.

55.     The Order also interferes with Perkins Coie's employer–employee relationships because the restrictions are broadly written to include Perkins Coie business personnel.

56.     The firm currently faces considerable uncertainty regarding which aspects of its D&I activities and advocacy will result in adverse consequences, even in the face of injunctive relief.  The Executive Order appears to be a command to purge all references to or support of diversity and inclusion in the workplace.  The risks and uncertainty stemming from this Order have resulted in pausing or pulling back on certain programs and some statements in support of D&I and the implementation of D&I initiatives.  The affected conduct is lawful and consistent with EEOC guidance at the time those actions were taken.

57.     For example, press releases and stories more than six months old, including those touting the firm's D&I advocacy, were already removed from the firm's website (but have been preserved).  Perkins Coie has reassessed and is reassessing other statements and references to its pro bono and D&I advocacy on its website.  The firm similarly has reassessed and is reassessing statements and references to its D&I advocacy in various advertisements and program brochures, including considering removal of the following: (1) the phrase "Diversity is Excellence" in an advertisement; (2) the statement that Perkins Coie is "proud to support" an organization's "commitment to inclusivity and empowerment of diverse communities," in a program brochure for an event the firm is sponsoring; and (3) the phrase "Investing in diversity and inclusion is smart business and helps drive our pursuit of excellence," in a program brochure.

58.    The Order has done more than impact the firm's messaging on D&I.  It has chilled Perkins Coie's diversity-related programs, not because certain measures are required by law, but because of the need to protect the firm from extralegal pressure.  For instance, the Order has interfered with Perkins Coie's ability to offer fellowships to potential new hires, even though those fellowships are open to all applicants.  Perkins Coie has postponed a showing of a movie regarding Lilly Ledbetter, sex discrimination and the Fair Pay Act.  The firm is considering whether and how it can or should respond to questions from clients and prospective clients regarding the demographics of the firm or its lawyers.  The Perkins Coie Women's Forum was concerned that an internal event for first-time attendees to the firm's partner planning conference could be targeted as impermissible, even though it was open to all conference attendees, because a resource group was hosting the event, but decided to proceed with the event notwithstanding the uncertainty.  And firm personnel were even unsure whether they can have a reference to "DE&I" in their email signature block.  In short, Perkins Coie is committed to complying with the law as it evolves over time.  But Section 4 of the Executive Order is both unclear and overbroad, far broader than any change in the law to date.  Consequently, it interferes with speech, and tries to intimidate and distort the firm's advice to clients.

## G.    False and Disparaging Statements in the Order

59.    The Order has also harmed Perkins Coie's reputation in the markets for clients, lawyers, and staff through its false and disparaging characterizations of the firm and its attorneys, such as its statement that Perkins Coie is "dishonest and dangerous."  Such stigma threatens grave, mutually-reinforcing consequences, as the Firm's reputation affects its ability to attract clients, and its ability to attract clients in turn supports its reputation as a top law firm.

60.     The Order says many things that are not only inflammatory but also blatantly false. Most of the allegations were known during the President's first term, and have been (and in many cases were) adjudicated and dismissed long ago.  For example, the Order accuses Perkins Coie of working to "steal an election," of "undermining democratic elections, the integrity of our courts, and honest law enforcement," and of "racially discriminat[ing] against its own attorneys and staff, and against applicants," including through "percentage quotas" and "proudly exclud[ing] applicants on the basis of race."  And it accuses Perkins Coie of "earnings" that "subsidize, among other things, racial discrimination, falsified documents designed to weaponize the Government against candidates for office, and anti-democratic election changes that invite fraud and distrust." Those accusations are just plain false and most have already been rebutted through the results of prior cases.  The Order also references "Fusion GPS" in connection with representation of Hillary Clinton.  Though Marc Elias and others at Perkins Coie represented Hillary Clinton in connection with her presidential campaign, no attorney employed at Perkins Coie for at least the last three years had anything to do with the engagement of Fusion GPS.

61.     The Fact Sheet also lists accusations against Perkins Coie.  Those descriptions are inflammatory and baseless.  Among other false statements, the Fact Sheet wrongly states:

     a.  "Perkins Coie LLP pushed debunked claims of secret Trump-Russia communications via Alfa Bank, with attorney Michael Sussmann indicted for lying to the FBI about this scheme."  A jury unanimously acquitted Mr. Sussmann.  The Fact Sheet also omits that no one else was involved and that Mr. Sussmann left the firm in 2021.

     b.  "Perkins Coie LLP has worked with activist donors, including George Soros, to judicially overturn enacted election laws, such as those requiring voter

identification." Perkins Coie has historically represented both party-affiliated and non-partisan clients in litigation over election laws. Many law firms have done the same. None of Perkins Coie's election-related litigation was frivolous. Indeed, more than half of the litigation was successful after both sides had full due process. And much of it was *defending* state election procedures and actions taken by state officials.

c. "A court was forced to sanction Perkins Coie attorneys for unethical lack of candor before the court." The Fact Sheet alludes to one minor sanction, collectively, $8,700, connected with a single duplicative motion to supplement the record in a Fifth Circuit appeal in a 2021 voting-rights case in violation of a local rule. *See Tex. All. for Retired Ams. v. Hughs*, No. 20-40643 (5th Cir. Jun. 30, 2021), Dkt. No. 127-1. None of the three sanctioned attorneys remains at Perkins Coie. It is extremely rare for any of our lawyers to be sanctioned, and we take such matters very seriously. This was not a lack of candor.

d. "Perkins Coie LLP hosted an FBI workspace, raising concerns about partisan misuse of sensitive data during investigations targeting President Trump." The "FBI workspace" rumor was long ago debunked. Perkins Coie did not host an "FBI workspace." Rather, like many law firms who represent clients involved in national-security issues, the firm wanted to protect national security and thus was permitted to install, at its own expense, a single-room Secure Work Environment (SWE) when it moved to new offices. The FBI's only involvement was examining and approving the security of the space. Perkins Coie no longer has a SWE, and the SWE was never an "FBI workspace."

e. "Perkins Coie LLP has filed lawsuits against the Trump Administration, including one designed to reduce military readiness." This statement impugns Perkins Coie for the political and legal positions taken by some of its clients in lawful litigation. Specifically, this statement refers to *Shilling v. Trump*, the pro bono lawsuit described earlier representing plaintiffs challenging an executive order by President Trump affecting transgender servicemembers despite their love of country and equal ability to contribute to military readiness.

* * *

62.    I declare under penalty of perjury, on this 2nd day of April, 2025, that the foregoing is true and correct to the best of my knowledge, information and belief.

DAVID J. BURMAN

# EXHIBIT 1

← IMPACT

# Diversity & Inclusion

Embracing diversity and inclusion allows us to draw from varied perspectives and communities, enabling us to attract the very best talent to our ranks, and in turn provide excellent service to our clients.

**Overview**          Recruitment & Retention      Our Commitment to Racial Equality

# Our Continuing Commitment to Diversity & Inclusion

Perkins Coie is committed to advancing diversity and inclusion both within the firm and throughout our collective communities. We will continue to support and participate in efforts to make the legal profession more diverse and inclusive.



We are intentional and consistent in our efforts to increase the diversity of our workforce and to advance the values of diversity and inclusion in the legal profession. Diversity and inclusion are key to our culture, our values, and our business strategy. They are fundamental to the way we connect with and serve our clients.

As we consider the Supreme Court decision limiting the consideration of race in university admissions, we re-affirm our commitment to building a more diverse and inclusive workplace and legal profession. Our methods for fulfilling that commitment may evolve over time as the legal landscape changes; our commitment will remain steadfast.

## Objectives

– Engaging firm leadership in proactive diversity and inclusion

– Investing in the diversity pipeline

– Developing programs to address internal and external priorities

— Measuring and monitoring our progress and success

## Strategic Diversity & Inclusion Committee

Established in 2006, the **Strategic Diversity & Inclusion Committee** (SDC) develops firmwide diversity strategies and policies which are used to guide the implementation of existing programs and the creation of new strategic diversity initiatives, with a strong focus on recruitment, retention, promotion and community.

## Local Diversity Committees

We have also established **Local Diversity Committees** in each office that work to develop programming and initiatives designed to address the unique needs of their office and communities.

## Resource groups

**Resource groups** are a key to the success of diversity and inclusion at the firm. Our resource groups develop educational programming, assist with business and professional development opportunities, maintain relationships with national minority bar associations and foster community. The resource groups are important sources of support, development and networking for our diverse lawyers. Below is a list of our resource groups.

# Our Structure

Our commitment to diversity and inclusion is a goal shared collectively throughout the firm, which is why we have created a committee structure that allows all stakeholders to participate.



# Resource Groups

African American/Black Lawyers    +

Asian Pacific Islander Lawyers    +

Latinx Lawyers    +

Lawyers with Disabilities    +

Lesbian, Gay, Bisexual and Transgender (LGBTQ+) Lawyers     +

Native American Lawyers     +

Parents and Caregivers     +

South Asian/Middle Eastern Lawyers     +

Veterans     +

Women's Forum     +

Women of Color     +

# Awards

— Awarded Mansfield 7.0 Certification Plus for Diversity Leadership from Diversity Lab, 2022-2024

— Named among the "Best Law Firms for Women" by *Working Mother/Flex-Time Lawyers,* 2008, 2009, 2011-2022

— Received a score of 100% in the *Corporate Equality Index* and designation as one of the "Best Places to Work" from the Human Rights Campaign Foundation (the educational arm of the nation's largest advocacy group for LGBT Americans), 2009-2025

— Ranked among ChIPs Honor Roll Firms for gender diversity in Intellectual Property practices in the 2021 Inclusion Blueprint Survey, a joint initiative between ChIPs and Diversity Lab

## Partnerships and Sponsorships

- Leadership Council on Legal Diversity

- Corporate Counsel Women of Color

- Charting Your Own Course

- Diversity & Flexibility Alliance

- Hispanic National Bar Association

- Just the Beginning Foundation's Summer Legal Institute

- LAMBDA Legal National Sponsorships

- Minority Corporate Counsel Association

- National Asian Pacific American Bar Association

- National Bar Association

- National Black Law Students Association

- LGBTQ+ Bar Association Lavender Law Conference & Career Fair

- National Native American Law Students Association

- North American South Asian Bar Association

- Out and Equal Workplace Summit

- Practicing Attorneys for Law Students Program, Inc.

**For questions, please contact** Diversity&Inclusion@perkinscoie.com.

People

Industries

Services

Locations

Impact

Careers

Job Openings ↗

Perkins Coie Trust Company ↗                    The Public Company Handbook

Client Advantage                                Subscribe to Mailing Lists ↗

中文网站                                           AI & Machine Learning

Alumni ↗                                         Corporate Law

Blogs                                           Energy Infrastructure & Clean Technology

Client Updates                                  Environment, Energy & Resources Law

Podcasts                                        Intellectual Property Law

Publications                                    Labor & Employment Law

News Room                                       Litigation

California Land Use &                           Privacy & Security Law
Development Law Report
                                                Private Client Services
Security Breach Notification Chart
                                                Real Estate & Land Use
Perkins on Privacy
                                                Technology Transactions & Privacy Law
Public Chatter
                                                Pay Invoice ↗

Terms of Use                                    Transparency in Coverage

Privacy Policy                                  UK Legal Notice

Legal Disclaimer                                Lawyer Advertising

© 2025 Perkins Coie LLP

# EXHIBIT 2

← IMPACT

# Diversity & Inclusion

Embracing diversity and inclusion allows us to draw from varied perspectives and communities, enabling us to attract the very best talent to our ranks, and in turn provide excellent service to our clients.

Overview          **Recruitment & Retention**          Our Commitment to Racial Equality

# Recruitment & Retention

We believe in developing relationships and investing in people. At Perkins Coie, we strive to create a diverse and inclusive community where opportunities to succeed are available to all.



Our firm culture is built on collaboration and mutual respect. Once an attorney becomes part of our community, we want them to feel welcome and prepared to participate at every level of engagement necessary for success. This is why the firm supports inclusive resource groups for women, lesbian, gay, bisexual and transgender attorneys, lawyers with disabilities, veterans, parents, caregivers, and lawyers of color (African American/Black, Latinx, Asian American/Pacific Islander and South Asian/Middle Eastern). In order to increase the diversity of backgrounds, experiences and perspectives within the firm, these resource groups offer opportunities for fellowship, support and networking. In addition, local office diversity committees offer programs and events that respond to the specific and unique needs of their communities, while the firm as a whole also hosts national programs and retreats aimed at providing all attorneys with the information and tools they need to succeed.

## Recruitment Activities & Programs

Our recruitment efforts include building supportive relationships with organizations, hosting job fairs, and offering programs designed to educate and expose students to the legal profession.

# Diversity & Inclusion Fellowship Program

## Overview                                                        ✕

At Perkins Coie, we foster a diverse and inclusive community where opportunities to succeed are available to all. Embracing diversity allows us to draw from different backgrounds and experiences, enabling us to attract the best talent to our ranks, and in turn build strong teams that provide excellent service to our clients. We are committed to creating an environment in which all our people thrive because they feel a sense of belonging.

We are proud to offer our **Diversity & Inclusion Fellowship Program** as part of our comprehensive, firmwide commitment to advancing diversity, equity, and inclusion.

Our Diversity & Inclusion Fellows are full participants in our summer associate program and must spend the first 10 weeks of their summer(s) with Perkins Coie. In addition to receiving a summer associate salary, Fellows will also receive a $15,000 stipend at the conclusion of their first-year summer. Fellows who return as 2Ls will receive a $15,000 stipend at the

## Application Process and Criteria                                ✕

All students who are in good standing in their first year at an ABA-accredited law school are eligible to apply for the Diversity & Inclusion Fellowship Program. Perkins Coie is an Equal Opportunity Employer and welcomes applications for the Diversity & Inclusion Fellowship Program from all eligible applicants regardless of race, color, religion, sex, age, national origin, veteran status, sexual orientation, gender identity / gender expression, disability status, or any other identity.

A complete application must include:

– Current resume.

– Cover letter.

– Undergraduate and law school transcripts (unofficial versions are acceptable).

– A legal writing sample (10-page maximum).

– A personal statement (one-page, single-spaced). The personal statement should be a narrative describing your academic, professional, and life experiences and, where relevant, identifying connections between those experiences and the broader goal of advancing diversity, equity, and inclusion in the legal profession.

We evaluate all applications for the fellowship and consider the following factors:

- **Academic Achievement** – A demonstrated record of academic achievement and excellent writing and interpersonal skills, as well as experience that will contribute to a successful career in the legal field.

- **DEI Leadership** – Engagement in efforts to advance diversity, equity, and inclusion within the community and/or legal profession, including during college or law school.

# Retention Programs and Activities

Perkins Coie recognizes the importance of retention in advancing diversity and inclusion, and we work diligently to invest in the success of our lawyers across the firm. Our retreats are an important retention tool that provide our attorneys opportunities to strengthen relationships with one another and our clients in a professional development setting.



## All Women Lawyers Retreat

The retreat serves as an opportunity for participants to network with other attorneys from all levels, offices and practice groups within the firm, and to share best practices on navigating the law firm culture. The presentations and events offered at this two-day retreat provide the participants with various tools to help advance their career.

## Lawyers of Color/LGBTQ+/Lawyers with Disabilities and Veterans Retreats

These retreats bring together many of the firm's attorneys to discuss, embrace, and celebrate diversity and allyship in an inviting environment. Many of the retreat's sessions and presentations are open to attorneys of all levels, with tracks specific to the programming that coincides with where the attorney currently is in their career. This distinction allows for time focused on professional and business development skills particular to the career stage of the attorneys. In addition to the networking opportunities provided at different presentations and mixers, attendees also have the opportunity to meet other lawyers in their specific practice groups and create new and build upon existing relationships.

People

Industries

Services

Locations

Impact

Careers

Job Openings ↗

Perkins Coie Trust Company ↗

Client Advantage

中文网站

Alumni ↗

Blogs

Client Updates

Podcasts

Publications

News Room

California Land Use & Development Law Report

Security Breach Notification Chart

Intellectual Property Law

Perkins on Privacy

Labor & Employment Law

Public Chatter

Litigation

The Public Company Handbook

Privacy & Security Law

Subscribe to Mailing Lists ↗

Private Client Services

AI & Machine Learning

Real Estate & Land Use

Corporate Law

Technology Transactions & Privacy Law

Energy Infrastructure & Clean Technology

Pay Invoice ↗

Environment, Energy & Resources Law

Terms of Use

Transparency in Coverage

Privacy Policy

UK Legal Notice

Legal Disclaimer

Lawyer Advertising

© 2025 Perkins Coie LLP

# EXHIBIT 3

## Total Fees Attributable to Top 15 Firm Clients

| | Fees Collected (collect) |
|---|---|
| Grand Total | $349,859,769 |

# EXHIBIT 4

**Total Fees Attributable to Top 15 Practice Group Clients**

| Practice Group | Fees Collected |
|---|---:|
| Commercial Litigation Total | $145,647,380 |
| Intellectual Property Total | $118,496,457 |
| Business Total | $56,227,281 |
| Product Liability Total | $51,279,833 |
| Environment, Energy & Resources Total | $22,752,554 |
| Real Estate & Land Use Total | $17,096,769 |
| Labor & Employment Total | $15,292,812 |
| Private Client Services Total | $14,767,312 |
| Political Law Total | $2,558,821 |

# EXHIBIT 5



**Redacted**

| | |
|---|---|
| SSN: | Redacted |
| DOB: | Redacted |
| Place Of Birth: | Redacted United States |
| Exception Code: | None |
| Supporting Investigation: | Tier 5 |
| Incident Report: | |

| | |
|---|---|
| DoD EDI PN: | |
| Eligibility Level: | Top Secret |
| Eligibility Determination: | Favorable made on 2025-02-12 by DoD CAS |
| Open Investigation: | No |
| NDA Signed Date: | 2024/05/22 |
| NDS Signed Date: | |

**Subject Actions**

Basic Info. | Contact Info. | Other Subject Details | SMO Relationships | Incidents | Accesses | CSRs/RFAs | Subject Documents | Foreign Travel

### Citizenship (1)

| Country | Citizenship Date | Citizenship Type | Renunciation Date | Options |
|---|---|---|---|---|
| United States | Redacted | Born in the U.S. or U.S. territory / commonwealth | | |

Add Citizenship

### Investigation Requests (2)

| Request Date | Status | Type | SMO | Agency | EQIP Id | Contract # | Options | Expand |
|---|---|---|---|---|---|---|---|---|
| 2022/01/07 | Terminated | Tier 5 | 0PHT45 - PERKINS COIE | 16306 | 34190767 | F19628-00-C-0004 | | ⊕ |
| 2024/02/13 | Stopped PSO | Tier 5 | 0PHT45 - PERKINS COIE | 16306 | 38639994 | F19628-00-C-0004 | | ⊕ |

### Adjudication History (2)

| Activity Description | Options |
|---|---|
| Top Secret adjudication completed with a determination of Favorable by DoD CAS on 2025/02/12. | |
| Interim Adjudication Completed - on 2024/04/26 | |

Add Adjudication History

# EXHIBIT 6

**From:**  (CRM) Redacted @usdoj.gov>
**Sent:** Thursday, March 6, 2025 10:15 PM
**To:** Redacted (Perkins Coie)
**Cc:** Redacted (Perkins Coie); Redacted (CRM); Redacted (USAVAE)
**Subject:** Tomorrow

Redacted,

Good evening. We are just seeing the newly issued Executive Order relating to your firm, linked here https://www.whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-perkins-coie-llp/.  Consequently, we need to postpone tomorrow's meeting to get further guidance from our management about how to proceed. We will reach out once we have this additional clarity.  We appreciate your patience.

Best,
Redacted


Redacted
**Trial Attorney**
**U.S. Department of Justice | Criminal Division**
**Fraud Section | Market Integrity & Major Frauds Unit**

Redacted (o) | Redacted (c)
Redacted @usdoj.gov