# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PERKINS COIE LLP,

*Plaintiff*,

*v.*

U.S. DEPARTMENT OF JUSTICE, *et al.*,

*Defendants*.

Case No. 25-716 (BAH)

**BRIEF OF AMICI CURIAE OF THE AMERICAN CIVIL LIBERTIES UNION, THE AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA, THE CATO INSTITUTE, THE ELECTRONIC FRONTIER FOUNDATION, THE FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, THE INSTITUTE FOR JUSTICE, THE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, THE NATIONAL COALITION AGAINST CENSORSHIP, THE REPORTERS COMMITTEE FOR THE FREEDOM OF THE PRESS, THE RUTHERFORD INSTITUTE, AND THE SOCIETY FOR THE RULE OF LAW INSTITUTE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

INTERESTS OF AMICI CURIAE ............................................................................... 2

ARGUMENT ................................................................................................................ 6

    I.   The Executive Order Unconstitutionally Retaliates Against Perkins Coie for
        Its Legal Advocacy.............................................................................................. 7

    II.  The Executive Order Violates Separation of Powers and Due Process. ..................... 10

CONCLUSION............................................................................................................. 14

CERTIFICATE OF SERVICE ................................................................................... 166

# TABLE OF AUTHORITIES

**Cases**

*Abel v. United States,*
  362 U.S. 217 (1960) ..................................................................................................11

*Aref v. Lynch,*
  833 F.3d 242 (D.C. Cir. 2016) ................................................................................. 7

*Backpage.com, LLC v. Dart,*
  807 F.3d 229 (7th Cir. 2015) ................................................................................... 7

*BEG Invs., LLC v. Alberti,*
  144 F. Supp. 3d 16 (D.D.C. 2015) .......................................................................... 9

*Borough of Duryea, Pa. v. Guarnieri,*
  564 U.S. 379 (2011) ............................................................................................. 7, 8

*Cheek v. United States,*
  858 F.2d 1330 (8th Cir. 1988) ............................................................................... 13

*Doe v. District of Columbia,*
  697 F.2d 1115 (D.C. Cir. 1983) ............................................................................. 13

*Gonzalez v. Trevino,*
  602 U.S. 653 (2024) ................................................................................................. 3

*Hartman v. Moore,*
  547 U.S. 250 (2006) ................................................................................................. 7

*Hollins v. Oklahoma,*
  295 U.S. 394 (1935) ...............................................................................................11

*In re Debs,*
  158 U.S. 564 (1895) ............................................................................................... 10

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
  341 U.S. 123 (1951) ................................................................................................. 9

*Legal Services Corp. v. Velasquez,*
  531 U.S. 533 (2001) ............................................................................... 2, 8, 10, 12

*Lozman v. City of Riviera Beach,*
  585 U.S. 87 (2018) ................................................................................................... 7

*Marbury v. Madison,*
  1 Cranch 137 (1803) .............................................................................................. 10

*Miller v. California*,
413 U.S. 15 (1973) .................................................................................................. 4

*N.Y. Times Co. v. United States*,
403 U.S. 713 (1971) ...............................................................................................11

*NAACP v. Button*,
371 U.S. 415 (1963) ................................................................................................. 9

*Netchoice, LLC v. Bonta*,
No. 22-cv-08861-BLF (N.D. Cal. Mar. 13, 2025) .................................................. 3

*Novoa v. Diaz*,
No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom.*,
*Novoa v. Diaz*, No. 22-13994 (11th Cir. argued June 14, 2024) ............................... 3

*NRA v. Vullo*,
602 U.S. 175 (2024) ........................................................................................... 2, 10

*Powell v. Alabama*,
287 U.S. 45 (1932) ................................................................................................. 13

*Thomas v. Collins*,
323 U.S. 516 (1945) ................................................................................................. 8

*Trump v. Selzer*,
No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024) .................................................. 3

*United States ex rel. Carey v. Rundle*,
409 F.2d 1210 (3d Cir.1969) .................................................................................. 13

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) ............................................................................................... 13

*Villarreal v. Alaniz*,
__ US __ ,145 S. Ct. 368 (2024) ............................................................................. 3

*Volokh v. James*,
No. 23-356 (2d Cir. argued Feb. 16, 2024) ............................................................. 3

**Other Authorities**

1 Annals of Cong. 439 (J. Madison) (Joseph Gales ed., 1834) ..................................... 10

Albin Krebs, *Edward Bennett Williams, 68, Influential Trial Lawyer Dies; A Brilliant
'Superlawyer,*" N.Y. Times (Aug. 14. 1988) ........................................................11

Clay Risen, *At a Time When Lawyers Feared Defending Government Enemies, One Law
Firm Stood Up*, Politico (Mar. 26, 2025) ..............................................................11

*Constance Baker Motley*, Supreme Court Historical Society ........................................................11

The Diary of John Adams, March 5, 1773 ................................................................. 10

**Executive Orders**

Executive Order No. 14237, 90 Fed. Reg. 13039, "Addressing Risks from Paul Weiss,"
    (Mar. 14, 2025) ........................................................................................... 1

Executive Order No. 14244, 90 Fed. Reg. 13685, "Addressing Remedial Action by Paul
    Weiss," (Mar. 21, 2025) ............................................................................... 1

Executive Order No. 14246, 90 Fed. Reg. 13997, "Addressing Risks from Jenner &
    Block," (Mar. 25, 2025) ............................................................................... 1

Executive Order, "Addressing Risks from Wilmer Hale," (Mar. 27, 2025) ................................... 1

Executive Order 14230, 90 Fed. Reg. 11781, "Addressing Risks from Perkins Coie LLP"
    (Mar. 6, 2025) ............................................................................... *passim*

## INTRODUCTION

President Trump has singled out one of the nation's largest law firms for serious, potentially business-ending sanctions by executive fiat, citing the firm's past representation of his political opponents and its "partisan lawsuits against the United States." The President's action violates fundamental First Amendment freedoms and other constitutional protections. More generally, it is an attack on the independence of the legal profession. In the weeks since this Court issued its temporary restraining order, President Trump has signed executive orders imposing similar sanctions on several other law firms.[1] The fallout from these assaults on the bar may not be limited to lawyers who represent clients or causes that are perceived as hostile to President Trump; the precedent created here could be used by future presidents, of either party, to chill advocacy hostile to their policies or executive branch officials. If allowed to stand, these pressure tactics will have broad and lasting impacts on Americans' ability to retain legal counsel in important matters, to arrange their business and personal affairs as they like, and to speak their minds.

Amici are legal advocacy organizations from across the ideological spectrum that have in common an abiding commitment to the Constitution and the liberties it protects. We write to set out the ways in which the First Amendment, the separation of powers, and due process rights prohibit the President's order sanctioning Perkins Coie LLP for its protected legal advocacy.

---

[1] *See* Exec. Order No. 14237, 90 Fed. Reg. 13039, "Addressing Risks from Paul Weiss," (Mar. 14, 2025); Exec. Order No. 14246, 90 Fed. Reg. 13997, "Addressing Risks from Jenner & Block," (Mar. 25, 2025); Exec. Order, "Addressing Risks from Wilmer Hale," (Mar. 27, 2025). President Trump revoked the Paul Weiss Executive Order pursuant to an agreement with the firm. Exec. Order No. 14244, 90 Fed. Reg. 13685, "Addressing Remedial Action by Paul Weiss," (Mar. 21, 2025).

## INTERESTS OF AMICI CURIAE[2]

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit organization that since 1920 has sought to protect the civil liberties of all Americans. The ACLU of the District of Columbia (ACLU-DC) is the ACLU's Washington, D.C. affiliate. The ACLU and ACLU-DC have frequently appeared in this Court, as counsel to parties or as amicus, in cases raising significant questions about the meaning of the Constitution, its limitations on government power, and the breadth of rights it grants. They have also participated as counsel or amici curiae in many consequential First Amendment cases, including those involving retaliation and legal advocacy. *See, e.g.*, *NRA v. Vullo*, 602 U.S. 175 (2024) (counsel); *Legal Services Corp. v. Velasquez*, 531 U.S. 533 (2001) (amicus).

The Cato Institute is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato files amicus briefs, publishes books and studies, conducts conferences, and produces the annual *Cato Supreme Court Review*.

The Electronic Frontier Foundation (EFF) is a nonprofit legal organization that has defended the rights of technology users in U.S. courts for almost 35 years. EFF's impact litigation includes numerous cases against the federal government challenging both legislative and executive actions. EFF's work is founded on the belief that lawsuits against the federal government are a vital component of the system of checks and balances that undergirds American democracy.

---

[2]  Pursuant to Local Civil Rule 7(o)(5), counsel for amici curiae certify that no counsel for a party authored this brief in whole or in part, and no person other than amici curiae, their members, or their counsel made a monetary contribution to the brief's preparation or submission.

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights on college campuses nationwide through public advocacy, targeted litigation, and *amicus curiae* filings in cases that implicate expressive rights. In June 2022, FIRE expanded its advocacy beyond the university setting and now defends First Amendment rights both on campus and in society at large. In lawsuits across the United States, FIRE works to vindicate First Amendment rights without regard to the speakers' views. *Trump v. Selzer*, No. 4:24-cv-449 (S.D. Iowa, filed Dec. 17, 2024); *Volokh v. James*, No. 23-356 (2d Cir. argued Feb. 16, 2024); *Novoa v. Diaz*, No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom. Novoa v. Diaz*, No. 22-13994 (11th Cir. argued June 14, 2024); *Netchoice, LLC v. Bonta*, No. 22-cv-08861-BLF (N.D. Cal. Mar. 13, 2025) (granting preliminary injunction); *Villarreal v. Alaniz*, __ US __ ,145 S. Ct. 368 (2024). As a free speech organization whose litigators are of necessity adverse to government bodies in all branches of government in the vast majority of their cases, often representing speakers with whom government actors strongly disagree, it is imperative that FIRE remain free to zealously advocate on behalf of its clients without fear of unconstitutional official reprisal or retaliation.

The Institute for Justice (IJ) is a nonprofit public-interest law firm that litigates nationwide on behalf of Americans' most fundamental constitutional rights, among them the right to be free from government retaliation for protected speech. IJ's work on that front has led to important victories, including the Supreme Court's decision last Term in *Gonzalez v. Trevino*, 602 U.S. 653 (2024). This case therefore squarely implicates IJ's longstanding efforts to make it more difficult for government officials to punish their political opponents. But this case also implicates IJ's work more broadly. IJ (like any other public-interest law firm) often angers government officials. Still,

IJ needs access to government information (sometimes including sensitive information) for litigation or to publish its groundbreaking strategic research.[3] IJ needs access to government buildings and government officials, sometimes to advise those officials on how to reform policies to better respect individual rights and sometimes to warn them of litigation if they fail to do so. And IJ needs public-interest clients who are secure in the knowledge that they will not be targeted just because they chose IJ to represent them in their suits against the government. The government's position in this case is that it can take all those things away if it dislikes a law firm's advocacy. To accept that position is to accept that the government can only be challenged by lawyers it finds ideologically congenial—which is to say it cannot be challenged at all. IJ therefore files this brief to help protect its own right to sue the government, even when the government doesn't like it.

The Knight First Amendment Institute at Columbia University is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Institute's aim is to promote a system of free expression that is open and inclusive, that broadens and elevates public discourse, and that fosters creativity, accountability, and effective self-government.

The National Coalition Against Censorship (NCAC) is an alliance of more than 60 national non-profit literary, artistic, religious, educational, professional, labor, and civil liberties groups. NCAC was founded in 1974 in response to the United States Supreme Court's landmark decision in *Miller v. California*, 413 U.S. 15 (1973), which narrowed First Amendment protections for sexual expression and opened the door to obscenity prosecutions. The organization's purpose is to promote freedom of thought, inquiry and expression and to oppose censorship in all its forms.

---

[3] *See* www.ij.org/research.

NCAC engages in direct advocacy and education to support the free expression rights of activists, students, teachers, librarians, artists, and others. It therefore has a longstanding interest in assuring the continuance of robust free expression protections for all—which includes access to counsel who can vindicate individual First Amendment rights. The positions advocated in this brief do not necessarily reflect the views of NCAC's member organizations.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association. It was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

The Rutherford Institute is a nonprofit civil liberties organization headquartered in Charlottesville, Virginia. Founded in 1982 by its President, John W. Whitehead, the Institute provides legal assistance at no charge to individuals whose constitutional rights have been threatened or violated and educates the public about constitutional and human rights issues affecting their freedoms. The Rutherford Institute works tirelessly to resist tyranny and threats to freedom by seeking to ensure that the government abides by the rule of law and is held accountable when it infringes on the rights guaranteed by the Constitution and laws of the United States.

The Society for the Rule of Law Institute (SRLI) is a nonpartisan, nonprofit, social welfare organization dedicated to the defense of the rule of law, the Constitution, and American democracy. Its mission is to protect these essential features of American liberty against rising threats posed by illiberal forces in society, without regard to political party or partisan affiliation. This case is of central concern to SRLI because it implicates indispensable protections of our

system of ordered liberty, specifically the Constitution's provision of separation of powers and the First Amendment's guarantee of freedom of speech.

## ARGUMENT

Amici write to address two basic points. First, Executive Order 14230, 90 Fed. Reg. 11781, "Addressing Risks from Perkins Coie LLP" (Mar. 6, 2025) (the "Executive Order") unconstitutionally retaliates against Perkins Coie for its advocacy on behalf of private individuals and organizations, in violation of the First Amendment. Both the Speech and Petition Clauses protect lawyers' advocacy on behalf of their clients against arbitrary or viewpoint-based government interference. The sweeping and draconian sanctions imposed by the Executive Order—including, among other things, the loss of access to federal facilities and federal employees, the *en masse* suspension of security clearances for the firm's lawyers, and an implicit blacklist on the firm's business with federal contractors—threaten to destroy Perkins Coie and would chill any law firm from participating in similar advocacy against the Trump Administration or its officials. And the Executive Order's sanctions are explicitly premised on the firm's protected advocacy, including its voting rights lawsuits.

Second, the Executive Order violates fundamental separation-of-powers principles by striking at the bar's independence. The judiciary depends on an independent bar to fulfill its constitutional role as a bulwark against usurpations by the legislative and executive branches. By chilling lawyers from engaging in zealous advocacy on behalf of clients adverse to the Administration, the Executive Order not only infringes the protected speech and petitioning of private parties, it also deprives courts of the expert counsel necessary, in our adversarial legal system, for a full and fair adjudication of the most pressing constitutional and statutory issues. And the Executive Order has dire immediate consequences for Perkins Coie's clients, infringing their

right to counsel under the Fifth and Sixth Amendments by arbitrarily prohibiting the firm's lawyers from using federal facilities, engaging with federal officials (including federal prosecutors), and suspending security clearances necessary to work on matters involving classified information.

"[W]here would such official bullying end, were it permitted to begin?" *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235 (7th Cir. 2015). This Court must strongly rebuke and permanently enjoin the Administration's unconstitutional attempt to punish Perkins Coie for its protected advocacy and to intimidate other law firms and lawyers from taking on matters adverse to the government.

## I.    The Executive Order Unconstitutionally Retaliates Against Perkins Coie for Its Legal Advocacy.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *accord, e.g.*, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). To make out a First Amendment retaliation claim, a plaintiff must show that: (i) it engaged in constitutionally protected expression; (ii) defendants responded with an adverse action sufficient to deter a person of ordinary firmness in the plaintiff's position from speaking again; and (iii) there is a causal connection between the plaintiff's protected speech and the retaliatory actions taken against it. *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Perkins Coie easily satisfies all three factors in this case.

First, the Constitution protects Perkins Coie's legal advocacy on behalf of its clients. Such advocacy is protected under both the Speech and Petition Clauses of the First Amendment. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (holding that the Petition Clause protects access to federal courts, while acknowledging that the plaintiff "just as easily could have alleged that his employer retaliated against him for the speech contained within his grievances and

lawsuit."). The analysis under either Clause, for purposes of Perkins Coie's retaliation claim, is substantially the same. *See id.* at 388 (holding that the framework for public employee retaliation claims under the Speech Clause applies to similar claims raised under the Petition Clause) ("It is not necessary to say that the two Clauses are identical in their mandate or their purpose and effect to acknowledge that the rights of speech and petition share substantial common ground. This Court has said that the right to speak and the right to petition are 'cognate rights.'") (quoting *Thomas v. Collins,* 323 U.S. 516, 530 (1945)).

As the Supreme Court recognized in *Legal Services Corp. v. Velasquez*, 531 U.S. 533 (2001), the First Amendment robustly protects legal advocacy against viewpoint-based government censorship. There, plaintiffs challenged a statute prohibiting the use of federal Legal Services Corporation funds in cases challenging federal statutes under the U.S. Constitution or state statutes under federal law or the U.S. Constitution. *Id.* at 537. The Court held that lawyers' advocacy on behalf of their nongovernmental clients is constitutionally protected speech, regardless of who pays for it. *See id.* at 548–49. And it concluded that viewpoint-based restrictions on such advocacy, even in the form of statutory restrictions on the use of legal services funds to raise federal statutory and constitutional challenges in litigation, violate the First Amendment. *Id.* ("Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest.").

Second, the draconian sanctions imposed by the Executive Order would deter an ordinary person in Perkins Coie's position, *i.e.*, other law firms, from engaging in similar advocacy in the future. The *Wall Street Journal* reports that leading law firms are now afraid to challenge "a president who hasn't shied away from punishing his political enemies," and "[a]dvocacy groups . . . say it has been more difficult to recruit larger firms to help with cases against Trump . . . ." *See*

Mem. in Supp. of Pl.'s Mot. for TRO Ex. 5, ECF No. 2-1. This response is not surprising. The sanctions imposed by the Executive Order—including *inter alia* the loss of all security clearances, the effective blacklisting of the firm by all federal contractors for even nongovernment work, and the denial of access to federal facilities and federal employees—are nothing short of a death sentence for any but the smallest and most local law firms. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 143 (1951) (Black, J., concurring) ("[G]overnment blacklists" of disfavored organizations "smack[] of a most evil type of censorship."). The message to the bar is unmistakable: Cross the Administration at your peril.

Finally, while direct evidence of retaliatory animus is not required, *BEG Invs., LLC v. Alberti*, 144 F. Supp. 3d 16, 22 (D.D.C. 2015), the causal connection between the Executive Order and Perkins Coie's protected advocacy is readily apparent on the Order's face. It expressly identifies the firm's voting rights lawsuits as one of the principal grounds for imposing sanctions. And the Fact Sheet further declares that the Executive Order puts the firm on a government-sponsored blacklist for its "partisan lawsuits against the United States." *See https://perma.cc/BB99-MXUS*. This is a straightforward admission that the Executive Order was predominantly motivated by the firm's protected advocacy on behalf of its clients.

The Executive Order's characterization of Perkins Coie's voting rights lawsuits as "partisan" does not remove one iota of First Amendment protection. "[W]hatever may be or may have been true of suits against government in other countries, the exercise in our own . . . of First Amendment rights to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *NAACP v. Button*, 371 U.S. 415, 439–40 (1963). To the contrary, the First Amendment flatly prohibits the government from sanctioning law firms in order to punish and deter legal advocacy on behalf of clients and causes disapproved by the Administration. *See NRA*

*v. Vullo*, 602 U.S. 175, 180–81 (2024) (holding that the NRA stated a First Amendment claim based on allegations that New York officials coerced financial services firms into blacklisting the NRA and other gun-promotion groups).

## II.    The Executive Order Violates Separation of Powers and Due Process.

The Executive Order's retaliatory attack on Perkins Coie for the firm's constitutionally protected legal advocacy is not only a textbook First Amendment violation; it also threatens to undermine the bar's independence, violating basic separation-of-powers principles. The Framers conceived of the courts as an "impenetrable bulwark against every assumption of power in the Legislative or Executive." 1 Annals of Cong. 439 (J. Madison) (Joseph Gales ed., 1834). *See also Marbury v. Madison*, 1 Cranch 137, 177 (1803) ("It is emphatically the province and the duty of the judicial department to say what the law is"). To play its role effectively, the bench depends on the skill and integrity of the bar. In other words, "[a]n informed, independent judiciary presumes an informed, independent bar." *Velasquez*, 531 U.S. at 534. Courts cannot guard against the usurpations of the other branches without the assistance of lawyers willing to challenge those usurpations on their clients' behalf.

The American bar has earned its reputation for independence by standing ready to challenge the government, even in the most controversial and high-profile matters. John Adams famously boasted that his representation of British soldiers in the Boston Massacre prosecution was "one of the best Pieces of Service I ever rendered my Country." The Diary of John Adams, March 5, 1773.[4] Clarence Darrow represented Eugene Debs, then the leader of the American Railway Union, in his conspiracy prosecution for encouraging workers to strike in violation of a federal court injunction. *See In re Debs*, 158 U.S. 564 (1895). Charles Hamilton Houston

---

[4] *Available at* https://perma.cc/SLA3-ATBJ.

represented a Black man convicted of rape by an all-white jury. *See Hollins v. Oklahoma*, 295 U.S. 394 (1935). The law firm of Arnold, Fortas & Porter took on the cases of government employees accused of Communist sympathies during the Second Red Scare. *See* Clay Risen, *At a Time When Lawyers Feared Defending Government Enemies, One Law Firm Stood Up*, Politico (Mar. 26, 2025).[5] James Donovan defended accused Soviet spy Rudolf Abel in the Hollow Nickel case. *See Abel v. United States*, 362 U.S. 217 (1960).[6] Constance Baker Motley defended Rev. Dr. Martin Luther King, Jr. after he was arrested in Birmingham, Alabama. *See Constance Baker Motley*, Supreme Court Historical Society.[7] Floyd Abrams represented the New York Times in challenging the government's attempt to suppress the publication of the Pentagon Papers on national security grounds. *See N.Y. Times Co. v. United States*, 403 U.S. 713 (1971). And Edward Bennett Williams represented Senator Joe McCarthy in censure proceedings before the U.S. Senate. *See* Albin Krebs, *Edward Bennett Williams, 68, Influential Trial Lawyer Dies; A Brilliant 'Superlawyer*," N.Y. Times (Aug. 14. 1988).[8]

Members of the bar uphold its best traditions when they provide zealous advocacy to clients facing the full weight of the federal government. But justice would be poorly served if only the exceedingly brave or the independently wealthy were willing to take such cases. Particularly in complex, high-stakes cases, clients depend on their lawyers to orchestrate the evidence, precedents, and arguments necessary to make the best submission on their behalf. But many firms would sensibly decline to take any case, no matter how meritorious or significant, that presents even a small risk of ruinous sanctions.

---

[5] *Available at*: https://perma.cc/A9QW-QYPB.
[6] The case was dramatized in the film "Bridge of Spies" (Steven Spielberg, 2015).
[7] *Available at*: https://perma.cc/S75C-R7HG.
[8] *Available at*: https://perma.cc/QN6J-RSPB.

This is what makes the Executive Order so pernicious to the separation of powers. "By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power." *Velasquez*, 531 U.S. at 545. If allowed to stand, the Administration's retaliatory attack on Perkins Coie will chill many law firms and lawyers from taking on high-profile matters against the government—particularly pro bono matters defending the civil and constitutional rights of ordinary individuals. *See* Mem. in Supp. of Pl.'s Mot. for TRO Ex. 5 (noting that public interest groups are finding it increasingly difficult to convince firms to undertake such cases). And if the President can destroy even a large, international firm like Perkins Coie with the stroke of pen, the chilling effects on smaller firms and the bar at large will be even more severe.

Even in cases where lawyers take on a representation adverse to the government, the threat of sanctions will chill them from taking positions or making arguments that offend the Administration. This fundamental conflict of interest will "distort[] the legal system by altering the traditional role of the attorneys" as zealous advocates for their clients. *Velasquez*, 531 U.S. at 544. As a result, clients will mistrust their counsel's loyalty, courts will confront case after case where only one view—the Administration's—is adequately and zealously represented, and the public will lose faith in the integrity of the judicial process. *See id.* at 546 ("The courts and the public would come to question the adequacy and fairness of professional representations when the attorney, either consciously to comply with this statute or unconsciously to continue the representation despite the statute, avoided all reference to questions of statutory validity and constitutional authority.").

The Executive Order also infringes Fifth and Sixth Amendment process rights. In the criminal context, "[t]he right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee" under the Sixth Amendment. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). This right both requires "a fair or reasonable opportunity to obtain particular counsel," and bars "arbitrary action prohibiting the effective use of such counsel." *Cheek v. United States*, 858 F.2d 1330, 1334 (8th Cir. 1988) (quoting *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969)). And in the civil context, the interest in aid of counsel is a fundamental aspect of due process. *See Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983) ("[E]very litigant has a powerful interest in being able to retain and consult freely with an attorney."). There, too, the government infringes "due process in the constitutional sense" when it "arbitrarily" interferes with the attorney–client relationship. *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

By obstructing Perkins Coie's lawyers from entering federal buildings, using federal facilities, and interacting with federal officials—including federal prosecutors, *see* Burman Decl. ¶ 26, ECF No. 2-2—the Executive Order arbitrarily prevents the firm from doing much of the work incumbent on counsel, from negotiating with government attorneys to advocacy before regulatory officials. The Executive Order's disclosure provision requires the firm's clients to divulge confidential relationships as a condition of receiving government contracts. And its provision stripping the firm's lawyers of their security clearances prevents those attorneys from discharging their duties in cases involving classified materials, giving the government an unfettered veto over the selection of criminal defense counsel in such cases. If this governmental bullying goes unchecked, the bar will swiftly lose its independence—to the detriment of litigants, courts, and public trust in the judicial process.

13

## CONCLUSION

The Executive Order is an unconstitutional attempt to punish Perkins Coie for its protected advocacy on behalf of its clients, and to intimidate other law firms from challenging the Administration or its officials. For the reasons stated above, Amici respectfully submit that the Court should grant Plaintiff's motion for summary judgment.

DATE: April 2, 2025

Respectfully submitted,

Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF THE DISTRICT OF
 COLUMBIA
529 14th Street, NW, Ste. 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org

*Counsel for Amici Curiae*

Clark M. Neily III
Thomas A. Berry
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 425-7499
cneily@cato.org

*Counsel for Cato Institute*

William Creeley
Robert Corn-Revere
Ronald G. London
FOUNDATION FOR INDIVIDUAL RIGHTS AND
EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473

*Counsel for Foundation for Individual Rights &
Expression*

*/s/ Cecillia D. Wang*
Cecillia D. Wang (D.D.C. Bar No. CA00042)
Ben Wizner
Brian Hauss (D.D.C. Bar No. NY0581)
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
cwang@aclu.org

*Counsel for Amici Curiae*

David Greene
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
davidg@eff.org

*Counsel for Electronic Frontier Foundation*

Robert J. McNamara
Robert R. Johnson
Anya A. Bidwell
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320

*Counsel for Institute for Justice*

*(Counsel continued on next page)*

14

Alex Abdo
Jameel Jaffer
KNIGHT FIRST AMENDMENT INSTITUTE
  AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500

*Counsel for Knight First Amendment Institute
at Columbia University*

Bruce D. Brown
Lisa Zycherman
Gabriel Rottman
Mara Gassmann
Grayson Clary
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, DC 20005
(202) 795-9300
bbrown@rcfp.org

*Counsel for Reporters Committee for Freedom
of the Press*

Gregg Nunziata
SOCIETY FOR THE RULE OF LAW INSTITUTE
601 Pennsylvania Ave NW
South Building, Suite 900
Washington, DC 20004
(202) 410-0659
info@societyfortheruleoflaw.org

*Counsel for Society for the Rule of Law
Institute*

Lee Rowland
NATIONAL COALITION AGAINST CENSORSHIP
29 Broadway, Suite 1400
New York, NY 10006
(212) 807-6222

*Counsel for National Coalition Against
Censorship*

John W. Whitehead
William E. Winters
THE RUTHERFORD INSTITUTE
109 Deerwood Road
Charlottesville, VA 22911
legal@rutherford.org

*Counsel for Rutherford Institute*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2025, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operations of the Court's electronic filing system.

DATE: April 2, 2025                    */s/ Cecillia D. Wang*
                                       Cecillia D. Wang