# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERKINS COIE LLP,<br><br>                   Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, FEDERAL COMMUNICATIONS COMMISSION, OFFICE OF MANAGEMENT AND BUDGET, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, OFFICE OF PERSONNEL MANAGEMENT, GENERAL SERVICES ADMINISTRATION, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, THE UNITED STATES OF AMERICA, and in their official capacities, PAMELA J. BONDI, BRENDAN CARR, RUSSELL T. VOUGHT, ANDREA R. LUCAS, CHARLES EZELL, STEPHEN EHEKIAN, and TULSI GABBARD,<br><br>                   Defendants. | NO. 1:25-cv-00716-BAH |

## BRIEF OF *AMICI CURIAE* 363 LAW PROFESSORS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF

Phillip R. Malone
559 Nathan Abbott Way
Stanford, CA 94305
Telephone: (650) 725-6369
Fax: (650)-723-4426
pmalone@law.stanford.edu

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

IDENTITY AND INTEREST OF AMICI .......................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.   THE EXECUTIVE ORDER VIOLATES THE FIRST AMENDMENT. ......................................... 4

   A.  The Executive Order Constitutes Unlawful Viewpoint Discrimination. ............................... 4

   B.  The Order Is Especially Dangerous Insofar as It Seeks to Insulate Government Actors from Legal Challenge. ........................................................................................ 8

   C.  The Order Places Unconstitutional Conditions on a Speaker's Access to Government Funds and Property. ........................................................................................... 9

   D.  The Order Violates the First Amendment's Petition Clause. .............................................. 10

II.  THE EXECUTIVE ORDER VIOLATES THE FIFTH AND SIXTH AMENDMENTS. .............................. 11

III. THE EXECUTIVE ORDER THREATENS THE RULE OF LAW. .............................................. 15

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*New York Times v. United States,*
  403 U.S. 713 (1971) ................................................................ 6

*Agency for International Development v. Alliance for Open Society Inst.,*
  570 U.S. 205 (2013) ................................................................ 9

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett,*
  564 U.S. 721 (2011) ................................................................ 5

*BE & K Const. Co. v. N.L.R.B.,*
  536 U.S. 516 (2002) ................................................................ 10

*Borough of Duryea, Pa. v. Guarnieri,*
  564 U.S. 379 (2011) ................................................................ 10

*Faretta v. California,*
  422 U.S. 806 (1975) ................................................................ 11

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ................................................................ 13

*Holloway v. Arkansas,*
  435 U.S. 475 (1978) ................................................................ 15

*Kaley v. United States,*
  571 U.S. 320 (2014) ................................................................ 12

*Legal Services Corp. v. Velazquez,*
  531 U.S. 533 (2001) ........................................................ 8, 9, 16

*Luis v. United States,*
  578 U.S. 5 (2016) ................................................................ 12

*Marbury v. Madison,*
  5 U.S. 137 (1803) ................................................................ 4

*McCord v. Bailey,*
  636 F.2d 606 (D.C. Cir. 1980) ................................................ 13

*Mount Healthy City School District Board of Education v. Doyle,*
  429 U.S. 274 (1977) ................................................................ 11

*NAACP v. Button*,
    371 U.S. 415 (1963) ................................................................................................... 13

*Nader v. Democratic National Comm.*,
    567 F.3d 692, 696 (D.C. Cir. 2009) .................................................................... 10, 11

*Nat'l Rifle Ass'n v. Vullo*,
    602 U.S. 175 (2024) ................................................................................................. 2, 4

*Powell v. Alabama*,
    287 U.S. 45 (1932) ................................................................................................. 2, 12

*Railroad Trainmen v. Virginia ex rel. Virginia State Bar*,
    377 U.S. 1 (1964) ....................................................................................................... 13

*Rosenberger v. Rector and Visitors of the University of Virginia*,
    515 U.S. 819 (1995) ................................................................................................. 5, 9

*Strickland v. Washington*,
    466 U.S. 668 (1984) ................................................................................................... 13

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ................................................................................................... 10

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ..................................................................................................... 6

*United Mine Workers v. Illinois State Bar Ass'n*,
    389 U.S. 217 (1967) ................................................................................................... 13

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006) ............................................................................................ 12, 13

*Wood v. Georgia*,
    450 U.S. 261 (1981) ................................................................................................... 13

## Other Authorities

ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 301 (Henry Reeve trans., 2002) (1835) ........ 15

Ali Abbas Ahmadi, *Trump Rescinds Order Targeting Law Firm After It Makes $40m Promise*,
    BBC (Mar. 21, 2025) ..................................................................................................... 3

AM. BAR ASS'N, MODEL RULES OF PRO. CONDUCT R. 1.2(b) ............................................... 5

AM. BAR ASS'N, MODEL RULES OF PRO. CONDUCT R. 1.7(a) ............................................. 14

iv

Erin Mulvaney & C. Ryan Barber, *Fear of Trump Has Elite Law Firms in Retreat*, WALL ST. J. (Mar. 9, 2025) ................................................................................................................. 2, 6

Eugene Scalia, *John Adams, Legal Representation, and the "Cancel Culture,"* 44 HARV. J. L. & PUB. POL'Y 333, 334 (2021) ...................................................................................... 5, 16

Daniel Barnes, *Major Law Firm Strikes Preemptive Deal with White House*, POLITICO (Mar. 28, 2025) ................................................................................................................. 3, 7

Exec. Order No. 14237, 90 Fed. Reg. 13,039 (Mar. 14, 2025)........................................ 2, 6

Exec. Order No. 14244, 90 Fed. Reg. 13,685 (Mar. 21, 2025)........................................ 3, 7

Exec. Order No. 14246, 90 Fed. Reg. 13,997 (Mar. 25. 2025)........................................ 2, 6

Exec. Order, *Addressing Risks from WilmerHale* (Mar. 27, 2025) ........................... 2, 3, 6

Executive Order 14230, 90 Fed. Reg. 11,781 (Mar. 6, 2025) .................................. *passim*

Hon. J. Michael Luttig, Address to the Am. Bar Ass'n Annual Meeting of the Nat'l Conf. of State Bar Leaders (Aug. 4, 2023)............................................................................... 16

J.M. Beattie, *Scales of Justice: Defense Counsel and the English Criminal Trial in the Eighteenth and Nineteenth Centuries*, 9 L. & HIST. REV. 221, 223 (1991) ............................. 11, 12

Katelyn Polantz, *The Chilling Effect of Trump's War Against the Legal Establishment*, CNN (Mar. 11, 2025) .......................................................................................................... 7, 8

Michael Birnbaum, *Law Firms Refuse to Represent Trump Opponents in the Wake of His Attacks*, WASH. POST (Mar. 25, 2025) ............................................................................ 8

Michael S. Schmidt & Maggie Haberman, *Trump Announces Deal with Doug Emhoff's Law Firm*, N.Y. TIMES (Apr. 1, 2025). ................................................................................. 3, 7

Michael S. Schmidt & Matthew Goldstein, *Head of Paul, Weiss Says Firm Would Not Have Survived Without Deal with Trump*, N.Y. TIMES (Mar. 23, 2025)................................. 7

Presidential Memorandum, Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025)............................................................................... 6

Presential Memorandum, Preventing Abuses of the Legal System and the Federal Court (March 22, 2025) ................................................................................................... 3

*Trump Reaches Agreement with Milbank Law Firm*, REUTERS (Apr. 2, 2025)............................. 3, 7

*Trump Threatens Long Prison Sentences for Those 'Cheat' in the Election if He Wins*, PBS NEWS (Sept. 8, 2024) ...................................................................................................... 2

## IDENTITY AND INTEREST OF *AMICI*

*Amici* 363 law professors submit this brief in support of Plaintiff's Motion for Summary Judgment and for Declaratory and Permanent Injunctive Relief (the "Motion") to emphasize the threat that the President's Executive Order (the "Order")[1] presents to the independence and integrity of the legal profession, the rights of clients to seek redress in the courts, and, by extension, the rule of law. As experts in constitutional law, legal ethics, and the history of the legal profession, among other fields, we have a significant interest in ensuring that the principles of free speech, freedom of association, the right to petition the government, and the right to counsel are upheld. As educators, *amici* have an interest in fostering the next generation of attorneys, and in preparing them to zealously represent clients and causes without fear of reprisal. Perkins Coie and the Government have consented to the filing of this brief.  This brief is accompanied by *amici*'s motion for leave to file.[2]  A list of *amici* is provided in Appendix A.

## SUMMARY OF ARGUMENT

The President's Order is a self-declared act of retribution that targets a law firm for representing clients and causes the President disfavors.[3] In inflicting this retribution, the Order contradicts centuries of precedent safeguarding free speech, the right of association, and the right to petition. These precedents establish that the First Amendment "prohibits government officials

---

[1] Throughout this brief, "Executive Order" or "Order" refers to Executive Order No. 14230, codified at 90 Fed. Reg. 11,781 (Mar. 6, 2025) titled "Addressing Risks from Perkins Coie LLP," as well as the accompanying Fact Sheet titled "Fact Sheet: President Donald J. Trump Addresses Risks from Perkins Coie LLP" of the same date.

[2] *Amici* law professors state that no counsel for a party has authored this brief in whole or in part and that no person or entity, other than *amici* law professors or their counsel, has made a monetary contribution to the preparation or submission of this brief.

[3] This brief focuses on the sections of the Order for which the Court has enjoined enforcement—namely, Sections 1, 3, and 5.

from 'relying on the threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression' of disfavored speech." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 176 (2024) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)). Targeting Perkins Coie for representing clients and espousing views the President dislikes is viewpoint discrimination, plain and simple.

The Order violates the Fifth and Sixth Amendments as well. The Fifth and Sixth Amendments were designed to check executive power and to ensure a meaningful way to assert rights before a judicial authority. *Powell v. Alabama*, 287 U.S. 45, 61, 64–65 (1932). Forcing lawyers to bend to the preferences of federal officials robs clients of their right to counsel and introduces the very type of government interference in the administration of justice the Founders acted to prevent.

Finally, the Order threatens the rule of law. If the Order stands, it will be open season on lawyers who have dared to take on clients or causes the President or other officials don't like. This is no hypothetical threat. In the run-up to the election, the President posted on Truth Social that "WHEN I WIN, those people that CHEATED will be prosecuted to the fullest extent of the Law . . . . Please beware that this legal exposure extends to Lawyers . . . ." *Trump Threatens Long Prison Sentences for Those Who 'Cheat' in the Election if He Wins*, PBS NEWS (Sept. 8, 2024). More recently, the President has pledged that Perkins Coie is merely among the first of "a lot of law firms that we're going to be going after." Erin Mulvaney & C. Ryan Barber, *Fear of Trump Has Elite Law Firms in Retreat*, WALL ST. J. (Mar. 9, 2025) (quoting President Trump). Indeed, since the Order at issue here, the President has issued three more Executive Orders targeting Paul, Weiss, Rifkind, Wharton & Garrison; Jenner & Block; and WilmerHale, all leading law firms. *See* Exec. Order No. 14237, 90 Fed. Reg. 13,039 (Mar. 14, 2025) (targeting Paul Weiss); Exec. Order

No. 14246, 90 Fed. Reg. 13,997 (Mar. 25, 2025) (targeting Jenner & Block); Exec. Order, *Addressing Risks from WilmerHale* (Mar. 27, 2025).[4] And, one of those firms caved to the President's pressure, donating what the President described as "$40 million in pro bono legal services over the course of President Trump's term to support the Administration's initiatives" in exchange for the Order's revocation. Ali Abbas Ahmadi, *Trump Rescinds Order Targeting Law Firm After It Makes $40m Promise*, BBC (Mar. 21, 2025) (quoting the President's Truth Social post); *see also* Exec. Order No. 14244, 90 Fed. Reg. 13,685 (Mar. 21, 2025) (revoking Executive Order targeting Paul Weiss).[5]

The impact of the Order reverberates far beyond the particular firm that is targeted. Going forward, a lawyer or law firm that is asked to represent a client on a matter that is likely to trigger

---

[4] In addition, the President issued a March 22, 2025 memorandum, titled "Preventing Abuses of the Legal System and the Federal Court," which directs the Attorney General to, among other things, "seek sanctions against attorneys and law firms who engage in frivolous, unreasonable, and vexatious litigation against the United States" and "review conduct by attorneys or their law firms in litigation against the federal government" in order to identify any misconduct that might warrant further disciplinary action. Presidential Memorandum, Preventing Abuses of the Legal System and the Federal Court (Mar. 22, 2025). In different circumstances, a directive to identify and address ethical misconduct among attorneys might be a reasonable exercise of Presidential authority. But, considered alongside his Executive Orders targeting the previously mentioned firms, his decision to deploy governmental resources toward heightened scrutiny of lawyers who challenge his administration warrants concern.

[5] Three other law firms, Skadden, Arps, Slate, Meagher & Flom; Willkie Farr & Gallagher; and Milbank have decided to donate uncompensated legal services to causes the President supports in order stave off similar executive orders. Daniel Barnes, *Major Law Firm Strikes Preemptive Deal with White House*, POLITICO (Mar. 28, 2025) (reporting that Skadden announced that it would donate the equivalent of $100 million in uncompensated legal services on issues the President supports, and that it would fund fellowships for law school graduates to work on "causes in line with the administration's priorities"); Michael S. Schmidt & Maggie Haberman, *Trump Announces Deal with Doug Emhoff's Law Firm*, N.Y. TIMES (Apr. 1, 2025) (reporting that Willkie Farr reached a similar agreement to provide $100 million in legal services, among other things); *Trump Reaches Agreement with Milbank Law Firm*, REUTERS (Apr. 2, 2025) (reporting that Milbank agreed to provide "at least $100 million" in uncompensated legal services).

the President's ire will have to weigh whether they are willing to be placed on the President's target list—and lose the business such a placement entails. They must also ask whether taking on a client of this sort, and whether zealously advocating on that client's behalf, will hurt other existing clients to whom ethical duties are owed. The Executive branch has no constitutional authority to use executive orders as a cudgel to beat the American legal system into submission.

Beyond the impact on clients and lawyers, orders of this type threaten the integrity of the judicial process, including the core role of judicial review. That anchor of our constitutional system cannot function when one person—regardless of his position—is empowered to threaten and punish lawyers for zealously representing their clients in court. "The Government of the United States has been emphatically termed a government of laws, and not of men." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). Let it not "cease to deserve this high appellation." *Id.*

*Amici* urge the Court to grant Plaintiff's Motion.

## ARGUMENT

### I.    The Executive Order Violates the First Amendment.

The Order violates the First Amendment in at least four ways. First, the Order singles out a speaker and discriminates against it because of its views. Second, the Order unconstitutionally controls the speech and associational freedoms of lawyers engaged in legal work against the government. Third, the Order imposes unconstitutional conditions on a firm's access to government funding and property. Fourth, the Order violates the Petition Clause.

#### A.  The Executive Order Constitutes Unlawful Viewpoint Discrimination.

"At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Vullo*, 602 U.S. at 187. Indeed, while the Supreme Court has long expressed deep skepticism toward all content-

based speech restrictions, it has reserved its highest opprobrium for those based on viewpoint. As the Court has explained: "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). When the government rests its regulation on "particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829.

The Order's viewpoint discrimination is clear on its face. It rebukes Perkins Coie for representing candidates and private citizens whom the administration dislikes, including, in the Order's words, "failed Presidential candidate Hillary Clinton" and "activist donors including George Soros." Order § 1. It also castigates Perkins Coie for advancing specific views through its litigation. *Id.* (criticizing Perkins Coie for litigating cases involving voter identification laws). In doing so, it punishes Perkins Coie for advancing the viewpoints of its clients, despite the well-established premise that an attorney's decision to represent a client "does not constitute an endorsement of the client's political, economic, social or moral views or activities." AM. BAR ASS'N, MODEL RULES OF PROF'L CONDUCT R. 1.2(b).[6]

When a governmental action burdens speech because of its content, the action is reviewed pursuant to strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (quoting *Citizens United v. Fed. Election*

---

[6] *See also* Eugene Scalia, *John Adams, Legal Representation, and the "Cancel Culture*," 44 HARV. J.L. & PUB. POL'Y 333, 337 (2021) ("[I]ndependence of the lawyer from his client is integral to the freedom and autonomy that are among the privileges of private practice, and it is essential to lawyers' effective performance of their role in our system of justice.").

*Comm'n*, 558 U.S. 310, 340 (2010)).

The President's Order targeting his political opponents cannot survive strict scrutiny. To begin, discriminating against one's political enemies is not a permissible purpose. Indeed, an act that "seem[s] 'inexplicable by anything but animus'" cannot survive even rationality review. *Trump v. Hawaii*, 585 U.S. 667, 706 (2018) (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)). Nor can the Order be justified by the President's invocation of "the authority vested in me as President by the Constitution and the laws of the United States of America." Order, pmbl. The President is, by his oath of office (and by the Constitution), bound by the dictates of the Bill of Rights, and has no unilateral power to single out and punish speakers based on nebulous criteria of his own making.[7]

Today, Perkins Coie has fallen into the President's disfavor. Tomorrow, it could be any one of us whose speech the President unilaterally deems antithetical to "the interests of the United States" because that person or organization has chosen to litigate against him. Order § 5.

The threat is far from hypothetical. As noted at the outset, the President has vowed to "go[] after . . . a lot of law firms." Mulvaney & Barber, *supra* (quoting President Trump). Indeed, the President has already targeted four other law firms through separate executive actions. Exec. Order, *Addressing Risks from WilmerHale* (Mar. 27, 2025); Exec. Order No. 14246, 90 Fed. Reg. 13,997 (Mar. 25. 2025) (targeting Jenner & Block); Exec. Order No. 14237, 90 Fed. Reg. 13,039 (Mar. 14, 2025) (targeting Paul Weiss); Presidential Memorandum, Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025) (targeting Covington &

---

[7]  In *New York Times v. United States*, Justice Black observed that the government's power in this area is particularly weak when "[t]he Government does not even attempt to rely on any act of Congress." 403 U.S. 713, 718 (1971) (Black, J., concurring).

Burling LLP).

To the extent the President expected that these orders would cause the firms in question to bend to his will, he has been proven correct:  Paul Weiss, facing a potential exodus of clients and an inability to "survive a protracted dispute with the administration," agreed to donate the equivalent of $40 million in uncompensated legal services toward causes consistent with the President's agenda. *See* Michael S. Schmidt & Matthew Goldstein, *Head of Paul, Weiss Says Firm Would Not Have Survived Without Deal with Trump*, N.Y. TIMES (Mar. 23, 2025) (quoting Paul Weiss Chairman Brad Karp). In exchange, the President revoked the relevant Executive Order. *Id.*; *see also* Exec. Order No. 14244, 90 Fed. Reg. 13,685 (Mar. 21, 2025) (revoking Executive Order targeting Paul Weiss, citing the firm's decision to donate its legal services).

To stave off similar orders, other major firms have preemptively capitulated to the President. Skadden, Arps, Slate, Meagher & Flom recently announced that it would donate the equivalent of $100 million in uncompensated legal services toward issues the President supports in order to escape a similar executive order. *See* Barnes, *supra*. Willkie Farr & Gallagher and Milbank have reportedly come to similar agreements. Schmidt & Haberman, *supra* (reporting that Willkie Farr agreed to donate $100 million dollar in legal services toward causes the President backs to avoid an executive order order); *Trump Reaches Agreement*, *supra* (reporting that Milbank agreed to a similar deal with the President). As the President himself has said, "They're all bending and saying, 'Sir, thank you very much.'" Katelyn Polantz, *The Chilling Effect of Trump's War Against the Legal Establishment*, CNN (Mar. 11, 2025) (quoting the President).

The chilling impact of the President's actions is not limited to the firms the President has targeted; it has cast a shadow over the legal profession at large. Firms across the country are declining to represent clients and causes the President disfavors. *See* Michael Birnbaum, *Law*

*Firms Refuse to Represent Trump Opponents in the Wake of His Attacks*, WASH. POST (Mar. 25, 2025) (reporting that potential clients seeking representation in actions adverse to the President have had difficulty finding representation); Polantz, *supra* (reporting on the "chilling" effect of the President's executive actions toward law firms). Lawyers have been cowed into submission, incentivized to stay quiet, toe the line, and cave to the President's demands—lest they and their clients be punished.

### B.  The Order Is Especially Dangerous Insofar as It Seeks to Insulate Government Actors from Legal Challenge.

Although viewpoint discrimination is hardly ever tolerated, it is especially dangerous when governmental officials wield it to insulate themselves from legal scrutiny. The Supreme Court expressed just this concern in *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001). In *Velazquez*, the Court invalidated a federal statute that prohibited Legal Services Corporation (LSC)-funded attorneys from challenging federal or state welfare laws. *Id.* at 537–49. The restriction, said the Court, impermissibly "distort[ed] the legal system by altering the traditional role of attorneys" as zealous advocates for their clients. *Id.* at 544. And, to make matters worse, it "insulate[d] the Government's interpretation of the Constitution from judicial challenge," *id.* at 548, thus implicating "central First Amendment concerns," *id.* at 547.

The Order in this case is considerably more troubling than the statute invalidated in *Velazquez*. Through this Order, the President has arrogated to himself the power to single out lawyers and law firms who cross him, simply by declaring their legal work, past or present, contrary to the national interest. *See* Order § 5. If the Order is allowed to stand, the zealous advocacy that is the hallmark of a functioning court system will be chilled in dramatic ways, as lawyers tiptoe fearfully away from disfavored views and clients.

### C.  The Order Places Unconstitutional Conditions on a Speaker's Access to Government Funds and Property.

The Order seeks to punish Perkins Coie in numerous ways, including terminating its government contracts, Order § 3(b); threatening the contracts of those who do business with them, *id.* §§ 3(a), 3(b); precluding every single firm employee from working for a federal agency in the future (absent a waiver), *id.* § 5(b); and limiting firm lawyers' access to federal government buildings (potentially including courthouses), *id.* § 5(a). These provisions run afoul of well-established limitations on the government's power to condition benefits on the viewpoint of a recipient.

Indeed, *Velazquez* itself involved a condition on government funding of lawyers' work. The statutory prohibition on LSC-funded lawyers' constitutional arguments applied only to certain congressionally funded legal services (namely, constitutional challenges to welfare laws). *Velazquez*, 531 U.S. at 537–39. The Court concluded, nonetheless, that Congress could not condition funding on viewpoint-based restrictions that distorted the very "medium of expression"—litigation and representation of clients—through which the funded expression took place. *Id.* at 543.

*Velazquez* fits within a broader framework that the Court has created for evaluating speech-based conditions on accessing public property, programs, or funds. This framework establishes that the government may not dictate private speakers' viewpoints as a condition of allowing them to access such resources. *See Agency for Int'l Dev. v. Alliance for Open Society Inst.*, 570 U.S. 205, 214 (2013) ("[T]he Government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit.") (cleaned up). The government "offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression." *Rosenberger*, 515 U.S. at 828. The

9

Order runs well afoul of this essential bar on viewpoint-based conditions.

### D.  The Order Violates the First Amendment's Petition Clause.

The Order also violates the Petition Clause. The First Amendment forbids "abridging" the "right of the people" to "petition the Government for a redress of grievances." The Supreme Court has "recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights" and has "explained that the right is implied by the very idea of a government, republican in form." *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524–25 (2002) (cleaned up). The Court has repeatedly held that the right of access to courts can implicate "the protections of the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).

The Order directly interferes with access to the courts. It directs federal officials to "limit[] official access from Federal Government buildings to employees of Perkins Coie," to the extent permitted by law, whenever such access would "be inconsistent with the interests of the United States." Order § 5(a). The Supreme Court has treated physical access to courthouses as an aspect of "the fundamental right of access to the courts." *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004). The gauzy "interests of the United States" are insufficient to threaten Perkins Coie's access to federal courthouses and administrative agencies, or to other government buildings where it seeks to meet to further its clients' interests.

Further, the Order retaliates against Perkins Coie for positions it has taken in litigation against government actors—most notably in its cases seeking to "judicially overturn" various "election laws, including those requiring voter identification." Order § 1. This Court should not permit the President to punish Perkins Coie for its past actions in petitioning the government for redress of its clients' interests. That retaliation against lawful petitioning itself runs afoul of the Petition Clause. *See Borough of Duryea*, 564 U.S. at 387 (holding that retaliation by government

employee can violate the Petition clause); *see also Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009) ("[W]hen a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith.").

Under the test announced by the Supreme Court in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), Perkins Coie is entitled to relief on its First Amendment claim if it "show[s] that [its] conduct was constitutionally protected, and that this conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor'" in the challenged decisions, unless the Government can show "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Id.* at 287. Here, Perkins Coie's representation of clients and causes the President dislikes is plainly a motivating factor for the actions in the Order.

## II.    The Executive Order Violates the Fifth and Sixth Amendments.

The Order also violates the Fifth and Sixth Amendments, as it tramples on clients' right to select a lawyer free of government intervention. The right to counsel of choice is a bedrock principle of our constitutional order. That right would be meaningless if the Executive branch of the federal government could decide who represents—and who doesn't represent—its adversaries in court.

The "notion of compulsory counsel," *i.e.,* forcing a party to accept a particular lawyer, "was utterly foreign" to the Founders. *Faretta v. California*, 422 U.S. 806, 833 (1975). "[W]hatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice." *Id.* at 833–34.

The Founders were well aware that executive control of access to counsel could distort the administration of justice. The English system against which the Sixth Amendment right to counsel

was established featured "[a]n inherent imbalance in favor of the prosecution" to protect the Crown's interest in ensuring conviction of accused felons. J.M. Beattie, *Scales of Justice: Defense Counsel and the English Criminal Trial in the Eighteenth and Nineteenth Centuries*, 9 L. & HIST. REV. 221, 222 (1991). "The justices of the peace were to deal with felony accusations as agents of the king, not as judicial officers . . . [and] the accused had few rights." *Id.* at 222–23. In the eyes of the Crown, "defense counsel was not only unnecessary, but positively harmful." *Id.* at 223.

Gradually, a right to counsel in felony cases emerged in England, finding its roots in the Treason Act of 1696, which required the presence of defense counsel in response to the obvious "unfairness of a procedure under which the case for the Crown was presented by lawyers, often by the attorney general, while defendants were on their own." *Id.* at 224. Providing counsel in treason cases was a critical first step toward ensuring that the Crown's politically motivated invocations of safety and security to justify criminal prosecution would be tested by a zealous advocate for the accused.

Experience with the inequities of the English system prompted Americans to enshrine the right to counsel in fundamental law. "As early as 1758," Blackstone had "denounced" the prohibition of counsel in felony cases, and in America, "at least twelve of the thirteen colonies" had "definitely rejected" the English prohibition. *Powell v. Alabama*, 287 U.S. 45, 60–61, 64–65 (1932). The "oppressive" English rule, the Supreme Court has emphasized, "never obtained a foothold" here. *Id.* at 65 (quoting *Holden v. Hardy*, 169 U.S. 366, 386 (1898)).

The Founders emphatically rejected the English Rule in the Constitution. The Sixth Amendment secures the accused's right "to be defended by the counsel he believes to be the best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006); *see also Luis v. United States*, 578 U.S. 5, 11 (2016) ("[T]he Sixth Amendment grants a defendant 'a fair opportunity to secure

counsel of his own choice.'") (quoting *Powell*, 287 U.S. at 53); *Kaley v. United States*, 571 U.S. 320, 336 (2014) (remarking that defendants "have a vital interest" in "the constitutional right to retain counsel of their own choosing"). "The right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee." *Gonzalez-Lopez*, 548 U.S. at 147–48. Critically, the Constitution secures that right *precisely* to prevent the government from controlling the loyalty, quality, and vigor of the defense. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."). Indeed, in criminal cases, the Supreme Court has recognized that "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *see also McCord v. Bailey*, 636 F.2d 606, 618 n.2 (D.C. Cir. 1980) (Wald, J., concurring in part and dissenting in part) ("The right to the undivided loyalty of one's attorney is 'absolute' in the sense that it does not depend on one's guilt or innocence. That duty of loyalty is a crucial factor in the success of our adversary system of justice.").

In civil matters, the Due Process Clause of the Fifth Amendment protects litigants' access to counsel.[8] "'[T]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.'" *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970)

---

[8] Actions that abridge an individual's or entity's selection of counsel also violate the First Amendment. *See United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 223–25 (1967) (holding that prohibitions on a union's ability to hire attorneys on a salaried basis violated the First Amendment); *Railroad Trainmen v. Va. ex rel. Va. State Bar*, 377 U.S. 1, 5–7 (1964) (holding that the First Amendment protected a union's ability to recommend attorneys to its members); *NAACP v. Button*, 371 U.S. 415, 438–445 (1963) (invalidating, on First Amendment grounds, a law prohibiting civil rights groups from engaging in public interest litigation).

(quoting *Powell*, 287 U.S. at 68–69) (holding that the party opposing the government in an administrative proceeding generally "must be allowed to retain an attorney if he so desires").[9] Interference with the free choice of counsel and disruption of existing attorney-client relationships in civil cases carries similar costs to the impartial, fair, and accurate administration of justice as it does in criminal cases. Legal ethics rules fortify this constitutional requirement by restricting a lawyer's ability to represent clients when their loyalties are divided. The ABA's Model Rules provide that, with certain exceptions, "a lawyer shall not represent a client if . . . there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to . . . a third person or by the personal interest of the lawyer." AM. BAR ASS'N, MODEL RULES OF PRO. CONDUCT R. 1.7(a).[10]

By making loyalty to the whims of federal officeholders a practical condition of counsels' availability to serve a client, the Order violates the Fifth Amendment. The risks to a law firm subject to this Order or a similar one are significant: loss of, among other things, access to any "[g]overnment goods, property, material and services," government contracts, access to government buildings (presumptively including courts) unless specifically authorized, and the firm's clients' loss of *their* government contracts. Order §§ 2, 3, 5. That is not to mention the risk that employees of such a firm cannot be hired by any government agency absent a waiver from the head of the agency, made in consultation with the Director of the Office of Personnel Management.

---

[9] Just as the freedom to choose counsel is protected by the Fifth Amendment, so too does the Fifth Amendment prohibit the Government from unlawfully infringing upon a lawyer's right to practice their chosen profession. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576 n.15 (1972) (discussing *Goldsmith v. Bd. of Tax Appeals*, 270 U.S. 117 (1926)).

[10] A lawyer's representation of a client can certainly be "materially limited . . . by the personal interests of the lawyer" when the lawyer operates in a climate of fear of Presidential retribution if a particular argument is met with disfavor. *Id.*

*Id.* § 5(b). Many lawyers will find these risks to themselves and their clients to be unacceptably high. They will instead avoid cases and clients that touch on issues that might anger the President— or (perhaps worse) avoid raising arguments that may incur the President's wrath.

The Executive Order eviscerates the client's right to a lawyer whose fidelity is undivided, runs roughshod over the Fifth and Sixth Amendments, and revives precisely the system of abuse of centralized power which the Founders rejected. By threatening attorneys' livelihood for their having spoken out against the preferred policy positions of a sitting President, the Order is intended to—and will—cow attorneys into silence, depriving clients of rights secured by the Fifth and Sixth Amendments. An attorney whose "lips" are "sealed . . . on crucial matters" for fear that she will provoke the ire of the Executive, is no attorney at all. *See Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) (commenting, in a case where a single attorney represented multiple defendants with conflicting interests, "[t]he mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.").

## III.    The Executive Order Threatens the Rule of Law.

That the Order violates core First, Fifth, and Sixth Amendment rights by restricting the ability of Perkins Coie and its clients to participate in the legal system is cause enough for the Court to grant the Motion. The need to provide Perkins Coie relief is all the more urgent, however, because the Order poses a broader threat to the rule of law.

Lawyers play an essential role in upholding America's democratic institutions. As Alexis de Tocqueville observed in the early days of the Republic, lawyers' ability to vindicate the rights of their clients and their attachment to the Constitution and laws serves as "the most powerful existing security against the excesses of democracy." ALEXIS DE TOCQUEVILLE, DEMOCRACY IN

AMERICA 301 (Henry Reeve trans., 2002) (1835). Lawyers' response to governmental abuses is no less essential to the rule of law and an independent judiciary today than it was then. *See Velazquez*, 531 U.S. at 545 ("An informed, independent judiciary presumes an informed, independent bar."). "Intolerance and pressure to suppress ideas that may be unwelcome to some poses a special threat to the legal profession." Scalia, *supra* at 334. "One of the great traditions of the profession is respect for the right to representation of those with whom we disagree, and even to undertake that representation ourselves." *Id.*; *see also* Hon. J. Michael Luttig, Address to the Am. Bar Ass'n Annual Meeting of the Nat'l Conf. of State Bar Leaders (Aug. 4, 2023) (recognizing that lawyers are "uniquely qualified and obligated to defend our Constitution, [r]ule of [l]aw, and [d]emocracy").

Courts must maintain unwavering "vigilance" when the government "imposes rules and conditions" on attorneys that restrict their ability to effectively represent their clients, particularly when such restrictions "in effect insulate its own laws from legitimate judicial challenge." *Velazquez*, 531 U.S. at 544. Restricting attorneys "in advising their clients and in presenting arguments and analyses to the courts distorts the legal system by altering the traditional role of the attorneys." *Id.* And, chilling attorneys alters the basic role of the courts in a government that relies on judicial review to protect constitutional rights. In an adversarial system, courts consider issues only when lawyers have presented them. Limits on lawyers readily become limits on courts.

The Order is a blatant attempt to hamstring attorneys' ability to zealously represent clients—and, particularly, clients who seek to challenge the Executive's authority. At the most basic level, the President seeks to interfere not only with prospective federal contractors' counsel of choice, but with the rights of Perkins Coie's existing clients involved in civil and criminal matters with the government, and with the firm's constitutional and ethical obligations to clients

in such cases.

But the threat from the Order goes far beyond Perkins Coie and its clients. Under the specter of the Order, any firm that has, or hopes to, retain clients who contract with the federal government will have to shape its practice to meet the whims of the President. By the same token, clients who want to stay in the President's good graces will either drop a firm or demand that the firm drop other clients perceived to be enemies of the President.[11]

The challenged Order names only one law firm, but in so doing, it dangles a Sword of Damocles over all those who refuse to place loyalty to the President above the interests of their clients and the law. It seeks to destroy a functional bar that ensures the government follows the law, substituting instead a bar that is, at best, reluctant to challenge the government, and, at worst, one that is a plaything of the party in power. That sword has already fallen on at least seven other firms, *see supra* pages 6–8. This Court should enjoin this abuse of executive power before it goes any further.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that the Court grant Perkins Coie's Motion for Summary Judgment and for Declaratory and Permanent Injunctive Relief.

---

[11] As detailed in the firm's declarations, the Executive Order has already caused Perkins Coie to lose clients. *See* Declaration of David J. Burman in Support of Motion for Temporary Restraining Order, ECF No. 2-2, at ¶ 29 ("[S]everal clients have already terminated, or communicated that they are considering terminating, their legal engagements with Perkins Coie.").

Dated: April 2nd, 2025                    Respectfully submitted,

                                          /s/ *Phillip R. Malone*
                                          Phillip R. Malone
                                          559 Nathan Abbott Way
                                          Stanford, CA 94305
                                          Telephone: (650) 725-6369
                                          Fax: (650)-723-4426
                                          pmalone@law.stanford.edu

                                          *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to LCvR 7(o), I hereby certify that this brief conforms to the requirements of LCvR 5.4, complies with the requirements set forth in Fed. R. App. P. 29(a)(4), and does not exceed 25 pages in length.

DATED this 2nd day of April 2025.

/s/ *Phillip R. Malone*
Phillip R. Malone

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2nd, 2025, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

DATED this 2nd day of April 2025.

/s/ *Phillip R. Malone*
Phillip R. Malone

**APPENDIX A**

**LIST OF *AMICI CURIAE* LAW PROFESSORS**

Institutional affiliations are provided for purposes of identification only and do not reflect the views of the listed institutions.

**Richard L. Abel**
Connell Distinguished Professor of Law
Emeritus and Distinguished Research
Professor
UCLA School of Law

**Kathryn Abrams**
Herma Hill Kay Distinguished Professor of
Law
University of California, Berkeley Law
School

**Jamie R. Abrams**
Professor of Law
American University Washington College of
Law

**Jessie Allen**
Professor of Law
University of Pittsburgh School of Law

**Jonathan Askin**
Professor of Clinical Law
Brooklyn Law School

**Emad H. Atiq**
Professor of Law and Philosophy
Cornell Law School

**Rebecca Aviel**
Professor of Law
University of Denver Sturm College of Law

**Ann Schofield Baker**
Professor of Law from Practice
New York Law School

**Carlos A. Ball**
Distinguished Professor of Law
Rutgers Law School

**Mark Bartholomew**
Professor of Law
University at Buffalo School of Law

**Benjamin Barton**
Helen and Charles Lockett Distinguished
Professor of Law
The University of Tennessee College of Law

**Derek Bambauer**
Irving Cypen Professor of Law
University of Florida Levin College of Law

**Loftus Becker**
Professor of Law Emeritus
University of Connecticut School of Law

**Lenni B. Benson**
Professor of Law
New York Law School

**C. Elizabeth Belmont**
Clinical Professor of Law and Director of
Experiential Education
Washington & Lee University School of
Law

**Eric Berger**
Earl Dunlap Distinguished Professor of Law
University of Nebraska College of Law

**Vivian Berger**
Nash Professor of Law Emerita
Columbia Law School

**Emily Berman**
William B. Bates Distinguished Chair in
Law
University of Houston Law Center

**Elizabeth Earle Beske**
Professor of Law, Associate Dean for
Scholarship
American University Washington College of
Law

**Brian H. Bix**
Frederick W. Thomas Professor of Law and
Philosophy
University of Minnesota Law School

**Susanna Blumenthal**
William L. Prosser Professor of Law and
Professor of History
University of Minnesota Law School

**Carl T. Bogus**
Professor of Law Emeritus
Roger Williams University School of Law

**Meghan Boone**
Professor of Law
Wake Forest University School of Law

**Jennifer Borg**
Clinical Lecturer & Senior Research Scholar
Yale Law School-Media Freedom and
Information Access Law Clinic

**Vincent Martin Bonventre**
Justice Robert H. Jackson Distinguished
Professor of Law
Albany Law School

**Frank O. Bowman, III**
Curators' Distinguished Professor Emeritus
& Floyd R. Gibson Missouri Endowed
Professor Emeritus
University of Missouri School of Law

**Deborah L. Brake**
Professor of Law
University of Pittsburgh School of Law

**Ben Bratman**
Professor of Legal Writing
University of Pittsburgh School of Law

**Cheryl Bratt**
Associate Professor of the Practice
Boston College Law School

**Robert Brauneis**
Michael J. McKeon Professor of Intellectual
Property Law
The George Washington University Law
School

**Paul Brest**
Professor Emeritus
Stanford Law School

**Lea Brilmayer**
Howard M. Holtzmann Professor Emeritus
of Law
Yale Law School

**Juliet M. Brodie**
Professor of Law
Stanford Law School

**Mark Brodin**
Professor
Boston College Law School

**Mark R. Brown**
Newton D. Baker/Baker & Hostetler Chair
& Professor of Law
Capital Law School

**Alan Brownstein**
Professor of Law Emeritus
UC Davis School of Law

**Ryan Calo**
Lane Powell and D. Wayne Gittinger
Professor of Law
University of Washington School of Law

2

**Aaron H. Caplan**
Professor of Law
LMU Loyola Law School

**Jonathan Cardi**
Judge Donald L. Smith Professor of Law
Wake Forest University School of Law

**David Carney**
Professor of Law
Case Western Reserve University School of
Law

**Daniel Canon**
Assistant Professor of Law
University of Louisville, Louis D. Brandeis
School of Law

**Eduardo R.C. Capulong**
Professor of Law
University of Hawai'i Manoa William S.
Richardson School of Law

**Susan Carle**
Professor of Law
American University Washington College of
Law

**Ann Carlson**
Shirley Shapiro Professor of Environmental
Law
UCLA School of Law

**Dale Carpenter**
Judge William Hawley Atwell Chair of
Constitutional Law
SMU Dedman School of Law

**Gilbert Paul Carrasco**
Professor of Law Emeritus
Willamette University College of Law

**William M. Carter, Jr.**
Professor of Law
University of Pittsburgh School of Law

**Zachary L. Catanzaro**
Assistant Professor of Law
St. Thomas University College of Law

**Dale Cecka**
Professor of Law
Albany Law School

**Martha Chamallas**
Distinguished University Professor
The Ohio State University Moritz College of
Law

**Anupam Chander**
Scott K. Ginsburg Professor of Law and
Technology
Georgetown Law School

**Elizabeth Chambliss**
Henry Harman Edens Professor of Law
University of South Carolina Joseph F. Rice
School of Law

**Bernard Chao**
Professor of Law
University of Denver Sturm College of Law

**Erwin Chemerinsky**
Dean and Professor of Law
University of California, Berkeley School of
Law

**Alan K. Chen**
Thompson G. Marsh Law Alumni Professor
University of Denver Sturm College of Law

**Ronald K. Chen**
University Professor and Distinguished
Professor of Law
Rutgers University

**Margaret Chon**
Donald and Lynda Horowitz Endowed Chair
for the Pursuit of Justice
Seattle University School of Law

3

**Stephen Clark**
Professor of Law
Albany Law School

**Ralph D. Clifford**
Emeritus Professor of Law
University of Massachusetts School of Law

**Zachary Clopton**
Professor of Law
Northwestern Pritzker School of Law

**Morgan Cloud**
Charles Howard Candler Professor of Law
Emeritus
Emory University School of Law

**Wilfred Codrington III**
Walter Floersheimer Professor of
Constitutional Law
Benjamin N. Cardozo School of Law

**Daniel O. Conkle**
Robert H. McKinney Professor of Law
Emeritus
Indiana University Maurer School of Law

**Roberto L. Corrada**
Professor of Law
University of Denver Sturm College of Law

**Julie E. Cohen**
Mark Claster Mamolen Professor of Law &
Technology
Georgetown Law School

**David S. Cohen**
Professor of Law
Drexel Kline School of Law

**Thomas F. Cotter**
Professor of Law
University of Minnesota Law School

**Caroline Mala Corbin**
Professor of Law
University of Miami School of Law

**Nathan Cortez**
Callejo Endowed Professor
SMU Dedman School of Law

**Avidan Y. Cover**
Professor of Law
Case Western Reserve University School of
Law

**Christine Coughlin**
Professor of Law
Wake Forest University School of Law

**Karen Halverson Cross**
Professor of Law
University of Illinois Chicago Law School

**Scott Cummings**
Robert Henigson Professor of Legal Ethics
UCLA School of Law

**Christopher E. Czerwonka**
Special Professor of Law
Maurice A. Deane School of Law at Hofstra
University

**Stephanie Dangel**
Professor of Practice
University of Pittsburgh School of Law

**Bob Dauber**
Clinical Professor Emeritus
Sandra Day O'Connor College of Law,
Arizona State University

**Kirsten Dauphinais**
Professor of Law
University of North Dakota School of Law

**Martha F. Davis**
University Distinguished Professor
Northeastern University School of Law

**John C. Dehn**
Associate Professor of Law
Loyola University Chicago School of Law

**Amy Dillard**
Associate Professor of Law
University of Baltimore

**Lisa A. Dolak**
Professor of Law
Syracuse University College of Law

**Michael C. Dorf**
Robert S. Stevens Professor of Law
Cornell Law School

**Joshua Dressler**
Professor of Law Emeritus
The Ohio State University Moritz College of Law

**Robin Effron**
Professor of Law
Brooklyn Law School

**Anne Sodini Emanuel**
Professor of Law, Emerita
Georgia State University College of Law

**Garrett Epps**
Professor Emeritus
University of Baltimore School of Law
Professor of Practice
University of Oregon School of Law

**Stacy Etheredge**
Associate Professor of Law
University of Idaho College of Law

**Danieli Evans**
Assistant Professor of Law
University of Washington School of Law

**Anthony Paul Farley**
James Campbell Matthews Distinguished
Professor of Jurisprudence
Albany Law School

**Jennifer Fan**
Professor of Law & Therese Maynard Chair
in Business Law
Loyola Law School, Los Angeles

**Aaron Fellmeth**
Dennis S. Karjala Professor of Law, Science
and Technology
Sandra Day O'Connor College of Law

**Sharon Finegan**
Professor of Law
South Texas College of Law

**Martha Albertson Fineman**
Robert W. Woodruff Professor of Law
Emory University School of Law

**Claire Finkelstein**
Algernon Biddle Professor of Law and
Professor of Philosophy
University of Pennsylvania

**Jeffrey Fagan**
Isidor & Seville Sulzbacher Professor of
Law
Columbia University Law School

**Marie A. Failinger**
Emerita Professor of Law
Mitchell Hamline School of Law

**Mailyn Fidler**
Assistant Professor
University of New Hampshire Franklin
Pierce School of Law

**Ronald Filler**
Professor of Law Emeritus
New York Law School
Visiting Professor
University of San Francisco School of Law

**Harry First**
Charles L. Denison Professor of Law
Emeritus
NYU School of Law

**Owen Fiss**
Sterling Professor Emeritus of Law
Yale Law School

**Victor B. Flatt**
Coleman P. Burke Chair in Environmental
Law
Case Western Reserve University School of
Law

**Martin Flaherty**
Charles and Marie Robertson Visiting
Professor
School of Public and International Affairs,
Princeton University

**Eleanor Fox**
Professor Emerita
NYU School of Law

**Eric M. Freedman**
Siggi B. Wilzig Distinguished Professor of
Constitutional Rights
Maurice A. Deane School of Law at Hofstra
University

**Alexi Freeman**
Professor of the Practice
University of Denver Sturm College of Law

**Lawrence M. Friedman**
Marion Rice Kirkwood Professor of Law,
Emeritus
Stanford Law School

**Shannon Fyfe**
Assistant Professor
Washington & Lee University School of
Law

**Frank J. Garcia**
Professor of Law
Boston College Law School

**Marie-Amélie George**
Professor of Law
Wake Forest University School of Law

**Sarah Gerwig**
Professor of Law
Mercer University School of Law

**Bennett L. Gershman**
Distinguished Professor of Law
Pace University

**James Gibson**
Sesquicentennial Professor of Law
University of Richmond

**Charles Gardner Geyh**
Distinguished Professor and John F.
Kimberling Chair in Law
Indiana University Maurer School of Law

**Joe Glannon**
Professor of Law
Suffolk Law School

**Shubha Ghosh**
Crandall Melvin Professor of Law
Syracuse University College of Law

**Nicole B. Godfrey**
Assistant Professor of Law
University of Denver Sturm College of Law

**Cynthia Godsoe**
Professor of Law
Brooklyn Law School

**Steve C. Gold**
Professor of Law and Judge Raymond J.
Dearie Scholar
Rutgers Law School

**Eric Goldman**
Professor of Law
Santa Clara University School of Law

**Paul Goldstein**
Lillick Professor of Law
Stanford Law School

**Thalia González**
Professor of Law
UC Law San Francisco

**Robert W. Gordon**
Professor of Law, Emeritus
Stanford Law School

**Sarah Gottlieb**
Assistant Clinical Professor of Law
Washington & Lee University School of
Law

**Paul Gowder**
Professor of Law
Northwestern Pritzker School of Law

**Michael Green**
Visiting Professor
Washington University in St. Louis

**Kent Greenfield**
Professor of Law and Dean's Distinguished
Scholar
Boston College

**Betsy Grey**
Professor of Law
Arizona State University College of Law

**James Grimmelmann**
Tessler Family Professor of Digital and
Information Law
Cornell Tech and Cornell Law School

**Joanna L. Grossman**
Ellen K. Solender Endowed Chair in
Women and Law & Professor of Law
SMU Dedman School of Law

**Lisa Grumet**
Professor of Law
New York Law School

**Michael Grynberg**
Professor of Law
DePaul University College of Law

**Jennifer A. Gundlach**
Emily & Stephen Mendel Distinguished
Professor of Law and Clinical Professor of
Law
Maurice A. Deane School of Law at Hofstra
University

**Jeffrey Gutman**
Professor of Clinical Law
George Washington University Law School

**Lucas Guttentag**
Professor of the Practice of Law
Stanford Law School

**Thomas Haley**
Assistant Professor
University of Florida Levin College of Law

**Mark A. Hall**
Professor of Law and Public Health
Wake Forest University

**Rebecca Hamilton**
Professor of Law
American University Washington College of
Law

**G.S. Hans**
Clinical Professor of Law
Cornell Law School

**Karen Hanson Wellman**
Assistant Clinical Professor
University of Idaho College of Law

**Daniel Harawa**
Professor of Clinical Law
NYU School of Law

**Grant M. Hayden**
Richard R. Lee Jr. Endowed Professor of Law
SMU-Dedman School of Law

**Antony Haynes**
Professor of Law
Albany Law School

**Paul J. Heald**
Albert J. Harno & Edward W. Cleary Chair in Law, Emeritus
University of Illinois College of Law

**William Henderson**
Professor and Stephen F. Burns Chair on the Legal Profession
Indiana University Maurer School of Law

**Helen Hershkoff**
Herbert M. and Svetlana Wachtell Professor of Constitutional Law and Civil Liberties
NYU School of Law

**Kathy Hessler**
Assistant Dean of Animal Law and Clinical Professor of Law
The George Washington University Law School

**Robert Heverly**
Associate Professor of Law
Albany Law School

**Laura A. Heymann**
James G. Cutler Professor of Law
William & Mary Law School

**B. Jessie Hill**
Judge Ben C. Green Professor of Law
Case Western Reserve University

**Claire Hill**
Professor and James L. Krusemark Chair in Law
University of Minnesota Law School

**Robert A. Hillman**
Edwin H. Woodruff Professor of Law, Emeritus
Cornell Law School

**Keith Hirokawa**
Distinguished Professor of Law
Albany Law School

**Timothy R. Holbrook**
Provost's Professor & Robert B. Yegge Endowed Distinguished Professor in Law
University of Denver Sturm College of Law

**Nicholas D. Horan**
Associate Teaching Professor and Assistant Dean for Academic Success
Northeastern University School of Law

**Aziz Huq**
Frank and Bernice J. Greenberg Professor of Law
University of Chicago Law School

**Rebecca Ingber**
Professor of Law
Benjamin N. Cardozo School of Law

**Steven D. Jamar**
Professor of Law, Emeritus
Howard University School of Law

**Dawn Johnsen**
Walter W. Foskett Professor of Law
Indiana University Maurer School of Law

**Eric E. Johnson**
Earl Sneed Centennial Professor of Law
University of Oklahoma College of Law

**Sheri Johnson**
James and Mark Flanagan Professor of Law
Cornell Law School

**Linda D. Jellum**
Professor of Law
University of Idaho College of Law

**Jeffrey Kahn**
University Distinguished Professor of Law
SMU Dedman School of Law

**Johanna Kalb**
Dean and Professor of Law
University of San Francisco School of Law

**Pamela S. Karlan**
Kenneth and Harle Montgomery Professor
of Public Interest Law
Stanford Law School

**Alexis Karteron**
Professor of Clinical Law
NYU School of Law

**Ken Katkin**
Professor of Law
NKU Chase College of Law

**Mark Kelman**
James C. Gaither Professor of Law and Vice
Dean
Stanford Law School

**Amalia Kessler**
Lewis Talbot and Nadine Hearn Shelton
Professor of International Legal Studies
Stanford Law School

**Neil Kinkopf**
Professor of Law
Georgia State University College of Law

**Heidi D. Kitrosser**
William W. Gurley Professor of Law
Northwestern Pritzker School of Law

**Karl Klare**
George J. & Kathleen Waters Matthews
Distinguished University Professor
Northeastern University School of Law

**Michael Klarman**
Charles Warren Professor of American
Legal History
Harvard Law School

**Alexandra Klein**
Assistant Professor of Law
Washington & Lee University School of
Law

**Harold Hongju Koh**
Sterling Professor of International Law
Yale Law School

**Susan P. Koniak**
Professor of Law, Emerita
Boston University School of Law

**William S. Koski**
Eric & Nancy Wright Professor of Clinical
Education and Professor of Law
Stanford Law School

**Harold J. Krent**
Professor of Law
Chicago-Kent College of Law

**Margaret B. Kwoka**
Lawrence Herman Professor in Law
The Ohio State University Moritz College of
Law

9

**Alexandra D. Lahav**
Anthony W. and Lulu C. Wang Professor
Cornell Law School

**Amy Landers**
Professor of Law
Drexel University Kline School of Law

**John Thomas Langford**
Visiting Associate Clinical Professor of Law
Yale Law School

**Peter Larsen**
Assistant Professor of Law
Mitchell Hamline School of Law

**Michael Lawrence**
Professor of Law
Michigan State University

**Robert P. Lawry**
Emeritus Professor of Law
Case Western Reserve University

**Thomas S. Leatherbury**
Clinical Professor of Law and Director of
the First Amendment Clinic
SMU Dedman School of Law

**Jeffrey Lefstin**
Professor of Law
University of California College of the Law,
San Francisco

**Mark A. Lemley**
William H. Neukom Professor
Stanford Law School

**Arther S. Leonard**
Professor of Law Emeritus
New York Law School

**Lisa G. Lerman**
Professor of Law Emerita
Catholic University of America Columbus
School of Law

**Gregg P. Leslie**
Professor of Practice
Arizona State University Sandra Day
O'Connor College of Law

**John Leubsdorf**
Distinguished Professor
Rutgers Law School

**Leslie Levin**
Professor of Law
University of Connecticut School of Law

**David S. Levine**
Professor of Law
Elon University School of Law

**Ariana Levinson**
Frost, Brown, Todd Professor of Law
University of Louisville

**Justin Levitt**
Professor of Law
LMU Loyola Law School

**Yvette Joy Liebesman**
Professor of Law
Saint Louis University School of Law

**James S. Liebman**
Professor of Law
Columbia Law School

**Theo Liebmann**
Clinical Professor of Law
Maurice A. Deane School of Law at Hofstra
University

**Leah Litman**
Professor of Law
University of Michigan Law School

**Stephen Loffredo**
Professor of Law Emeritus
CUNY School of Law

10

**David A. Logan**
Dean and Professor of Law Emeritus
Roger Williams University School of Law

**David Luban**
Distinguished University Professor
Georgetown Law School

**Steven Lubet**
Williams Memorial Professor of Law,
Emeritus
Northwestern Pritzker School of Law

**Mary A. Lynch**
Kate Stoneman Chair in Law and
Democracy
Albany Law School

**Gregory P. Magarian**
Thomas and Karole Green Professor of Law
Washington University in St. Louis

**Carol Mallory**
Teaching Professor
Northeastern University School of Law

**Suzette Malveaux**
Roger D. Groot Professor of Law
Washington & Lee University School of
Law

**Maya Manian**
Professor of Law
American University Washington College of
Law

**Cathy Lesser Mansfield**
Senior Instructor
Case Western Reserve University

**Irina Manta**
Professor of Law
Maurice A. Deane School of Law at Hofstra
University

**William Marshall**
Kenan Professor of Law
University of North Carolina

**Jennifer Martin**
Professor of Law
Albany Law School

**Toni M. Massaro**
Professor of Law, Emerita
University of Arizona

**Connie Mayer**
Professor of Law
Albany Law School

**Thomas Wm. Mayo**
Professor of Law
SMU Dedman School of Law

**William McGeveran**
Dean & William S. Pattee Professor of Law
University of Minnesota School of Law

**Nicholas M. McLean**
Assistant Professor of Law
University of Hawai'i at Mānoa, William S.
Richardson School of Law

**M. Isabel Medina**
Victor H. Schiro Distinguished Professor of
Law
Loyola University New Orleans College of
Law

**Joan Meier**
NFVLC Professor of Clinical Law
George Washington University Law School

**Michelle Mello**
Professor of Law
Stanford Law School

**Bernadette Meyler**
Carl and Sheila Spaeth Professor of Law
Stanford Law School

**Amelia Miazad**
Acting Professor of Law
UC Davis School of Law

**Frank Michelman**
Robert Walmsley University Professor and
Professor of Law, Emeritus
Harvard University

**Monte Mills**
Professor & Director, Native American Law
Center
University of Washington School of Law

**Viva R. Moffat**
Professor of Law
University of Denver Sturm College of Law

**Daniel I. Morales**
Associate Professor of Law, Dwight Olds
Chair in Law
University of Houston Law Center

**Alison Morantz**
James and Nancy Kelso Professor of Law
Stanford Law School

**Nicole Morris**
Professor of Practice
Emory University School of Law

**Alan Morrison**
Associate Dean
George Washington University Law School

**Deirdre K. Mulligan**
Professor of Law
University of California, Berkeley School of
Law

**Emily R.D. Murphy**
Professor of Law
University of California College of the Law,
San Francisco

**Heather E. Murray**
Associate Director, Cornell Law School
First Amendment Clinic
Cornell Law School

**Sharmila Murthy**
Professor of Law and Public Policy
Northeastern University School of Law

**Karen Musalo**
Professor of Law
UC Law San Francisco

**Ellen Murphy**
Professor of Practice
Wake Forest University School of Law

**Ryan H. Nelson**
Associate Professor of Law
South Texas College of Law Houston

**Burt Neuborne**
Norman Dorsen Professor of Civil Liberties
Emeritus
NYU Law School

**Len Niehoff**
Professor from Practice
University of Michigan Law School

**Steve H. Nickles**
Professor of Law
Wake Forest University School of Law

**John T. Nockleby**
Professor of Law
LMU Loyola Law School

**Clare R. Norins**
Clinical Associate Professor
University of Georgia School of Law

**Helen Norton**
University Distinguished Professor and
Rothgerber Chair in Constitutional Law
University of Colorado School of Law

**Jacob Noti-Victor**
Associate Professor of Law
Benjamin N. Cardozo School of Law

**Eric W. Orts**
Guardsmark Professor, Legal Studies &
Business Ethics Department
The Wharton School, University of
Pennsylvania

**Brian L. Owsley**
Associate Professor of Law
UNT Dallas College of Law

**Sean A. Pager**
Professor of Law
Michigan State University

**Suzanne Painter-Thorne**
Professor of Law
Mercer University School of Law

**Mary-Rose Papandrea**
Samuel Ashe Distinguished Professor of
Constitutional Law
University of North Carolina School of Law

**Samir D. Parikh**
Professor of Law
Wake Forest University School of Law

**Wendy Parker**
Research Professor of Law
Wake Forest University School of Law

**Wendy E. Parmet**
Matthews Univ. Distinguished Prof of Law
Northeastern University School of Law

**Michael Stokes Paulsen**
Distinguished University Chair & Professor
of Law
The University of St. Thomas School of
Law

**Alexi Pfeffer-Gillett**
Assistant Professor
Washington & Lee University School of
Law

**Russell G. Pearce**
Edward & Marilyn Bellet Chair in Legal
Ethics, Morality and Religion
Fordham University School of Law

**Deborah Pearlstein**
Marie Robertson Visiting Professor in Law
& Public Affairs
Princeton University

**Richard J. Peltz-Steele**
Chancellor Professor
University of Massachusetts Law School

**Michael J. Perry**
Robert W. Woodruff Professor Emeritus
Emory University School of Law

**Philip Peters, Jr.**
Ruth L Hulston Professor Emeritus of Law
University of Missouri School of Law

**Ellen S. Podgor**
Professor of Law
Stetson University College of Law

**Sarah Polcz**
Acting Professor of Law
University of California, Davis School of
Law

**Angi Porter**
Assistant Professor of Law
American University Washington College of
Law

**Lucas A. Powe, Jr.**
Anne Green Regents Chair
University of Texas School of Law

**Richard Primus**
Theodore J. St. Antoine Collegiate Professor of Law
The University of Michigan Law School

**Edward A. Purcell, Jr.**
Joseph Solomon Distinguished Professor Emeritus
New York Law School

**Dara Purvis**
Professor of Law
Temple Beasley School of Law

**Richard J. Pierce, Jr.**
Lyle T. Alverson Professor of Law
George Washington University

**Robert L. Rabin**
A. Calder Mackay Professor of Law
Stanford Law School

**Aziz Rana**
J. Donald Monan, S.J., University Professor of Law and Government
Boston College

**Nancy Rapaport**
Garman Turner Gordon Professor of Law
UNLV William S. Boyd School of Law

**Margaret Raymond**
Warren P. Knowles Chair
University of Wisconsin Law School

**James Redwood**
Professor of Law
Albany Law School

**Mitt Regan**
McDevitt Professor of Jurisprudence
Georgetown Law School

**Alexander A. Reinert**
Max Freund Professor of Litigation and Advocacy
Benjamin N. Cardozo School of Law

**Patricia Youngblood Reyhan**
Distinguished Professor of Law
Albany Law School

**William D. Rich**
Emeritus Professor of Law
University of Akron School of Law

**Sandra L. Rierson**
Professor of Law
Western State College of Law at Westcliff University

**Thomas Riordan**
Visiting Associate Clinical Professor
LMU Loyola Law School

**David Ritchie**
Professor of Law & Philosophy
Mercer University School of Law

**Lauren Robel**
Val Nolan Professor Emerita
Indiana University Maurer School of Law

**Cassandra Burke Robertson**
John Deaver Drinko-BakerHostetler Professor of Law
Case Western Reserve University School of Law

**Sarah Rogerson**
Professor of Law
Albany Law School

**Sonia E. Rolland**
Professor of Law
Northeastern University School of Law

**Tom I. Romero, II**
Professor of Law
University of Denver Sturm College of Law

**Henry Rose**
Professor of Law
Loyola University Chicago School of Law

**Gerald Rosenberg**
Associate Professor Emeritus
University of Chicago Law School

**Elizabeth Rosenblatt**
Professor of Law
Case Western Reserve University Law
School

**Jonathan Rosenbloom**
Professor of Law
Albany Law

**Catherine J. Ross**
Lyle T. Alverson Professor of Law, Emerita
George Washington University Law School

**Eric Ruben**
Associate Professor
SMU Dedman School of Law

**John E. Rumel**
Professor of Law
University of Idaho College of Law
Visiting Professor
University of San Francisco School of Law

**Michael Russo**
Visiting Professor/ Practitioner in Residence
Seattle University School of Law

**Michael L. Rustad**
Thomas Lambert Jr. Professor of Law
Suffolk University Law School

**Zahr Said**
Professor of Law
Santa Clara University Law School

**Rosemary Salomone**
Kenneth Wang Professor of Law
St. John's University School of Law

**Stephen A. Saltzburg**
Wallace and Beverley Woodbury University
Professor
The George Washington University Law
School

**Joshua D. Sarnoff**
Niro Professor of Intellectual Property Law
DePaul University

**Jane Schacter**
Professor of Law
Stanford Law School

**Joan Schaffner**
Associate Professor of Law
The George Washington University Law
School

**Scott Schang**
Professor of Practice
Wake Forest University School of Law

**Erin Scharff**
Willard H. Pedrick Distinguished Research
Scholar and Professor of Law
Arizona State University, Sandra Day
O'Connor College of Law

**Roger E. Schechter**
William Thomas Fryer Research Professor
Emeritus
George Washington University Law School

**Andrew Scherer**
Professor of Law
New York Law School

**Philip G. Schrag**
Delaney Family Professor of Public Interest
Law
Georgetown Law School

15

**Joshua I. Schwartz**
E.K. Gubin Professor of Law
George Washington University Law School

**Rebecca J. Scott**
Professor of Law & Charles Gibson
Distinguished University Professor of
History
University of Michigan Law School

**Christopher B. Seaman**
Robert E.R. Huntley Professor of Law
Washington & Lee University School of
Law

**Gregory S. Sergienko**
Assistant Dean of Student Affairs &
Instructor
University of Idaho

**Peter M. Shane**
Jacob E. Davis and Jacob E. Davis II Chair
in Law Emeritus
The Ohio State University Moritz College of
Law

**Amanda Shanor**
Assistant Professor of Law
University of Pennsylvania

**Scott Shapiro**
Southmayd Professor of Law and Professor
of Philosophy
Yale Law School

**Jonathan Shapiro**
Professor of Practice
Washington & Lee University School of
Law

**Jonathan J. Sheffield**
Clinical Assistant Professor
Loyola University Chicago

**Jodi L. Short**
Mary Kay Kane Professor of Law
UC Law San Francisco

**Michael Siebecker**
Maxine Kurtz Faculty Research Scholar and
Professor of Law
University of Denver Sturm College of Law

**Jessica Silbey**
Professor of Law
Boston University School of Law

**Gary J. Simson**
Macon Chair in Law
Mercer Law School

**Rima Sirota**
Professor of Law, Legal Practice
Georgetown Law School

**Deborah A. Sivas**
Luke W. Cole Professor of Environmental
Law
Stanford Law School

**David Sloss**
John A. and Elizabeth H. Sutro Professor of
Law
Santa Clara University School of Law

**Abbe Smith**
Scott K. Ginsburg Professor of Law
Georgetown Law School

**Catherine Smith**
Professor of Law
Washington and Lee University School of
Law

**Fred Smith**
Professor of Law
Emory University

**Stacey L. Sobel**
Professor of Law, Associate Dean of
Research & Faculty Development
Western State College of Law at Westcliff
University

**Aviam Soifer**
Professor Emeritus
University of Hawai'i, Wm. S. Richardson
School of Law

**Ann Southworth**
Professor of Law
University of California, Irvine

**Norman W. Spaulding**
Nelson Bowman Sweitzer and Marie B.
Sweitzer Professor of Law
Stanford Law School

**Jane M. Spinak**
Edward Ross Aranow Clinical Professor
Emerita of Law
Columbia Law School

**Carla Spivack**
Distinguished Professor of Law
Albany Law School

**David Stein**
Assistant Professor of Law and Computer
Science
Northeastern University

**Ralph G. Steinhardt**
Lobingier Professor of Comparative Law
and Jurisprudence, Emeritus
George Washington University Law School

**Geoffrey R. Stone**
Edward H. Levi Distinguished Professor of
Law
University of Chicago Law School

**Katherine J. Strandburg**
Alfred Engelberg Professor of Law
New York University School of Law

**Marcy Strauss**
Professor of Law
Loyola Law School Los Angeles

**Susan Sturm**
George M. Jaffin Professor of Law & Social
Responsibility
Columbia Law School

**Madhavi Sunder**
Frank Sherry Professor of Intellectual
Property Law
Georgetown Law School

**Zephyr Teachout**
Professor of Law
Fordham Law School

**George C. Thomas III**
Rutgers University Board of Governors
Professor of Law
Rutgers University

**Richard Thompson Ford**
Professor of Law
Stanford Law School

**Cristina Carmody Tilley**
Professor of Law
University of Iowa College of Law

**Joseph A. Tomain**
Senior Lecturer in Law
Indiana University Maurer School of Law

**Gerald Torres**
Dolores Huerta & Wilma Mankiller
Professor of Environmental Justice
Yale Law School

**Paul R. Tremblay**
Clinical Professor and Dean's Distinguished
Scholar
Boston College Law School

**George Triantis**
Richard E. Lang Professor of Law
Stanford Law School

**Enid Trucios-Haynes**
Bernard Flexner Chair and Professor of Law
Louis D. Brandeis School of Law,
University of Louisville

**Lisa Tucker**
Professor of Law
Drexel University Thomas R. Kline School
of Law

**Rebecca Tushnet**
Frank Stanton Professor of the First
Amendment
Harvard Law School

**Ron Tyler**
Professor of Law (Teaching)
Stanford Law School

**Michael Wald**
Jackson Eli Reynolds Professor of Law
Stanford Law School

**Alec Walen**
Distinguished Professor
Rutgers School of Law

**Tyler Valeska**
Assistant Professor of Law
Loyola University Chicago School of Law

**Liza Vertinsky**
Professor of Law
University of Maryland Carey School of
Law

**Alexander Volokh**
Associate Professor
Emory Law School

**Eugene Volokh**
Thomas M. Siebel Senior Fellow
Hoover Institution at Stanford University
Gary T. Schwartz Professor of Law
Emeritus
UCLA School of Law

**Howard Wasserman**
Professor of Law
FIU College of Law

**Jonathan Weinberg**
Distinguished Professor of Law
Wayne State University

**Allen S. Weiner**
Senior Lecturer in Law
Stanford Law School

**Laura Weinrib**
Fred N. Fishman Professor of Constitutional
Law
Harvard Law School

**Allison Weiss**
Professor of Practice
Washington & Lee School of Law

**Thomas Williams**
Assistant Professor of Law
American University Washington College of
Law

**Brian Wolfman**
Professor from Practice
Georgetown Law School

**Ellen Yaroshefsky**
Howard Lichtenstein Distinguished
Professor of Legal Ethics
Maurice A. Deane School of Law at Hofstra
University

18

**Benjamin C. Zipursky**
Professor of Law and James H. Quinn '49
Chair in Legal Ethics
Fordham Law School

**Jonathan Zasloff**
Professor of Law
UCLA School of Law