**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PERKINS COIE LLP,

        Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE, *et. al*.,

        Defendants.

Civil Action No. 25-716 (BAH)

**BRIEF OF *AMICUS CURIAE* THE INTERNATIONAL ACADEMY OF TRIAL LAWYERS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR DECLARATORY AND PERMANENT INJUNCTION**

Patrick M. Regan
Bar No. 336107
REGAN ZAMBRI & LONG, PLLC
1919 M Street, NW
Washington, DC 20036
Email: pregan@reganfirm.com
Phone: (202) 463-3030
Fax: (202) 463-0667

*Counsel for* Amicus Curiae

i

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* is a professional association of lawyers.  It has no parent corporations and does not issue stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................................ i

TABLE OF CONTENTS .......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTEREST OF *AMICUS CURIAE* ........................................................................................ 1

ARGUMENT ........................................................................................................................... 4

CONCLUSION ........................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boumediene v. Bush*,
   553 U.S. 723 (2008)...........................................................................................................7

*Cooper v. Aaron*,
   358 U.S. 1 (1958)..............................................................................................................2

*Legal Services Corp. v. Velazquez*,
   531 U.S. 533 (2001)..........................................................................................................4

*Marbury v. Madison*,
   5 U.S. 137 (1803)..............................................................................................................8

*Martinez v. Ryan*,
   566 U.S. 1 (2012)..............................................................................................................4

*National Rifle Ass'n. v. Vullo*,
   602 U.S. 175 (2024)..........................................................................................................5

*People v. Croswell*,
   3 Johns. Cas. 337 (N.Y. 1804)..........................................................................................5

*Perry v. Sinderman*,
   408 U.S. 593 (1972)..........................................................................................................6

*Sacher v. United States*,
   343 U.S. 1 (1952)..............................................................................................................5

*State of Tennessee v. Scopes*,
   289 S.W. 363 (Tenn. 1927)...............................................................................................5

*United States v. Armstrong*,
   517 U.S. 456 (1996)..........................................................................................................6

**Other Authorities**

Addressing Risks from Jenner & Block, The White House (Mar. 25, 2025),
   https://tinyurl.com/u7ts9x49 ...........................................................................................2

Addressing Risks from Paul Weiss, The White House (Mar. 14, 2025),
   https://tinyurl.com/5w4j69fv ...........................................................................................2

See Addressing Risks from WilmerHale, The White House (Mar. 28, 2025)
   ("WilmerHale Order"), https://tinyurl.com/4m8a79jn ....................................................2

iv

Suspension of Security Clearances and Evaluation of Government Contracts (Feb.
   25, 2025), https://tinyurl.com/3yxdrmfp......................................................................................2

## INTEREST OF *AMICUS CURIAE*[1]

This *amicus* brief is filed on behalf of The International Academy of Trial Lawyers ("The Academy.")  The Academy, as more fully described below, is an elite, invitation-only professional association of the leading trial lawyers in the United States and in 30 countries around the world.  For over 70 years, the Academy has been devoted to the preservation of the Rule of Law. The Academy stands as the world's foremost trial lawyer organization, dedicated to excellence, advocacy, and legal reform. Our membership includes 500 active trial lawyers in the United States and over 150 Fellows from 30 countries, representing both plaintiffs and defendants in civil cases, as well as prosecutors and criminal defense lawyers.  Academy Fellows have, for many decades, served the legal profession and the Judiciary through participation in bar committees, leadership roles such as State Bar presidencies, and board and trustee positions at major law and law related institutions.  In addition, the Academy has a Foundation which, each and every year, supports the rule of law by awarding grants to institutions that provide legal education for judges, critically needed legal services to the poor, legal education to journalists from around the world , asylum and naturalization legal representation for the immigrant community, and legal support for at risk youth, the homeless and those wrongfully convicted of crimes.

Because of our solemn commitment to a free and independent bar, our steadfast support of the independence of the judiciary and the survival of the integrity of the American legal system, the Academy joins, on behalf of the Fellows of the Academy in the U.S. and around

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), amici certify that (1) this brief was authored entirely by counsel for amicus curiae and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) apart from counsel for amicus curiae, no other person contributed money to fund preparing or submitting this brief.

the world, to oppose the March 6, 2025 Executive Order entitled "Addressing Risks from Perkins Coie LLP" (the "Executive Order") that is the central issue in this litigation.  The Executive Order (which is now subject to a temporary restraining order) should be permanently enjoined as a violation of core First, Fifth, and Sixth Amendment guarantees, as well as fundamental separation-of-powers principles.

But something even more critical is at stake.  In recent weeks, the President has issued threats against law firms and *numerous* additional orders imposing punitive sanctions on leading law firms in undisguised retaliation for representations that the firm, or its current or former members, have undertaken, and more may be in the offing.[2]  Those Orders pose a grave threat to our system of constitutional governance and to the Rule of Law itself.  As an organization devoted to the protection of the Rule of Law, the Academy understands the crucial role of independent trial counsel and the absolute requirement of zealous and uncompromised advocacy on behalf of a client without fear of retribution. It has long been the calling of lawyers and law firms to support the judiciary and this Court should act with resolve to ensure that this abuse of executive power ceases.  Cf. *Cooper v. Aaron*, 358 U.S. 1 (1958).

The Academy joins in this action and files this brief in support of the basic principle that lawyers and their clients have the right to sue the government, even when – and perhaps especially when - the government doesn't like it. The ability of lawyers to zealously represent controversial clients without fear of government reprisal is essential for our individual liberty,

---

[2] See Addressing Risks from WilmerHale, The White House (Mar. 28, 2025) ("WilmerHale Order"), https://tinyurl.com/4m8a79jn; Addressing Risks from Jenner & Block, The White House (Mar. 25, 2025) ("Jenner Order"), https://tinyurl.com/u7ts9x49; Addressing Risks from Paul Weiss, The White House (Mar. 14, 2025) ("Paul Weiss Order"), https://tinyurl.com/5w4j69fv; Suspension of Security Clearances and Evaluation of Government Contracts (Feb. 25, 2025), https://tinyurl.com/3yxdrmfp.

central to an effective judicial branch, and wholly consistent with American history, values, and our constitutional democracy

The experience of other nations offers cautionary reminders of the perils associated with governmental intrusion into the autonomy of a legal system and with political retribution aimed at lawyers thought to stand in the way of a regime's political objectives.  In countries such as Columbia, the Philippines, China, Turkey and Guatemala, regimes have disbarred, prosecuted and jailed lawyers who dared to represent opposition figures or challenge government actions, with predictable results for the Rule of Law and the integrity of the legal profession in those countries.

Principle 16 of the United Nations Basic Principles on the Role of Lawyers (UN Basic Principles) provides that lawyers must be able to perform all their professional functions without intimidation, hindrance, harassment or improper interference; and shall not suffer, or be threatened with, prosecution or administrative, economic or other sanctions for any action taken in accordance with recognized professional duties, standards and ethics. Furthermore, pursuant to Principle 18 of the UN Basic Principles, lawyers shall not be identified with their clients or their clients' causes as a result of discharging their functions.

The actions of the current administration demonstrate a contempt for the independence of the American legal profession and violate long-standing domestic and international standard which ensure that legal professionals can conduct their vital work without interference. Lawyers must be able to represent their clients without fear of retaliation and must not be punished because of who their clients are. The independence of the legal profession is fundamental to ensure respect for human rights and is a crucial element of the Rule of Law.

**ARGUMENT**

1       The Executive Order at issue in this case, and the others like it, take direct aim at several of the Nation's leading law firms and seek to cow every other firm, large and small, into submission. Based on almost-decade-old allegations, the Executive Order subjects an entire firm, as well as its clients and personnel, to draconian punishment—including the revocation of its attorneys' security clearances, the potential loss of clients that contract with the United States, and the denial of access to federal buildings and facilities. Such sanctions would threaten the survival of any law firm.

2       The threat posed by the Executive Order at issue—and by others like it—is a direct assault on the legal profession itself. It is no exaggeration to say that we have entered a dangerous era in which any lawyer who dares to challenge the actions of the current administration, or even represent causes it disfavors, risks punitive and professionally retaliation. That threat is not abstract—it is real, it is now, and it chills the practice of law at its core. However expedient it may be for those in power to silence dissent by targeting the lawyers who bring it, the Rule of Law cannot survive in a climate of fear and intimidation. Our adversarial system is not a luxury; it is the foundation of American justice. It requires zealous, fearless advocates on both sides so that impartial judges can reach decisions based on truth, law, and facts—not political pressure. See *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("An informed, independent judiciary presumes an informed, independent bar.").

That is why the legal profession has long held, as sacrosanct, the obligation to represent clients—regardless of how reviled, controversial, or politically radioactive they may be. See *Martinez v. Ryan*, 566 U.S. 1, 12 (2012) ("[T]he right to counsel is the foundation for our adversary system"). This principle dates back to John Adams, who, in 1770, defended eight British soldiers accused of the Boston Massacre—not because he agreed with them, but because justice demanded

4

they have an advocate. The courage of lawyers who take on unpopular causes has long "made

lawyerdom proud." *Sacher v. United States*, 343 U.S. 1, 4 (1952). So too in *State of Tennessee v.*

*Scopes*, 289 S.W. 363 (Tenn. 1927), where Clarence Darrow stood up for the right to teach

evolution against a tide of religious and political opposition. And in *People v. Croswell*, 3 Johns.

Cas. 337 (N.Y. 1804), Alexander Hamilton defended a young journalist criminally prosecuted for

criticizing President Jefferson—arguing that truth must be a defense to libel, even when it

challenges those in power.

In stark contrast, countries like Russia have become notorious for targeting lawyers who

challenge government abuses—through surveillance, disbarment, and even imprisonment. It was

precisely this pattern of intimidation and retaliation that led to the passage of the Magnitsky Act,

named for Sergei Magnitsky, a Russian lawyer who died in custody after exposing government

corruption. The United States has condemned such conduct abroad; it must not tolerate it at home.

These cases endure because they mark moments when lawyers chose principle over

popularity. This Honorable Court must do no less now.

3       Fortunately, such abuses have been rare in our country's history. Over the past two

decades alone, elite law firms have represented clients seeking to challenge major presidential

initiatives, including the Military Commissions Act of 2006, the Affordable Care Act, and the

Dodd-Frank Wall Street Reform and Consumer Protection Act. Until now, it would have been

inconceivable that a law firm would risk punitive retribution from the federal government for

undertaking representations of this kind. And when state or local governments have attempted to

wield the threat of official retribution to deter litigants from advocating for what they believe, the

Supreme Court has condemned such actions in clear and decisive terms. *E.g.*, *National Rifle Ass'n.*

*v. Vullo*, 602 U.S. 175, 189 (2024) ("[T]he First Amendment prohibits government officials from

relying on the threat of invoking legal sanctions and other means of coercion … to achieve the suppression of disfavored speech." (citation omitted)).

That once proud tradition is now in jeopardy. Unless this Court acts decisively now, what was once beyond the pale will, in short order, become the norm. Corporations and individuals alike will risk losing their right to be represented by the law firms of their choice, and a profound chill will be cast over the First Amendment right to petition the courts for redress.

4       The Executive Orders not only chill protected advocacy—they violate foundational constitutional principles of due process and equal protection. The government cannot impose sweeping sanctions against law firms without any individualized finding of misconduct. Nor can it selectively punish firms based on the identities of their clients or the causes they pursue. That is collective punishment—targeting lawyers not for wrongdoing, but for the content of the advocacy they undertake. Such viewpoint discrimination, carried out through the machinery of government power, is antithetical to both fairness and the First and Fifth Amendments. *Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (First Amendment protection against government infringing on freedom of speech); *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (due process clause implicated by government action that is selective, punitive, and ideologically motivated.) In this country, lawyers do not lose their rights—or their reputations—because they stand beside the unpopular.

5       This is not only a threat to speech and access to counsel, but it is also a threat to the separation of powers itself. Executive retaliation against lawyers for challenging government action represents a dangerous consolidation of power. If lawyers are deterred from pursuing claims against the government, and courts are deprived of those cases, the Judiciary cannot fulfill its constitutional role.

As the Supreme Court warned in *Boumediene v. Bush*, 553 U.S. 723, 742 (2008), "The laws and Constitution are designed to survive, and remain in force, in extraordinary times." But that survival depends on the independence of the bar and on courts receiving the full and fearless advocacy of litigants on both sides. Without it, the system collapses—not all at once, but piece by piece. This action, however, represents a significant bold-faced piece of the deconstruction of our democracy.

6      The role of *amicus* is critical when a law firm stands up for a client challenging the actions of the president or his administration, regardless of political affiliation. It is essential to confront federal government overreach or inaction—whether that involves violations of religious liberty, assaults on press freedom, or burdensome regulations. This is precisely what amicus and similar entities are called to do. By its very nature, such litigation puts lawyers in direct conflict with the Executive Branch's policies and objectives. This kind of litigation cannot be pursued responsibly or zealously under the threat of retaliation—and the actual retaliation and retribution that is at play here.

Since this Court issued its Temporary Restraining Order, the Administration has intensified its retaliatory measures against lawyers, law firms, and the legal profession as a whole. Instead of standing firm against the unprecedented economic, political, and public pressure imposed by the Administration, many of the nation's most prominent law firms have capitulated. They have cowered before the administration. This is unacceptable. The actions taken by the Administration will have lasting and chilling effects on the delivery of essential legal services and the administration of justice.

Moreover, the explicit targeting of law firm pro bono efforts in the three most recent executive orders—which absurdly label these efforts as "activities that make our communities less

7

safe, increase burdens on local businesses, limit constitutional freedoms, and degrade the quality

of American elections"—is deeply concerning. For our system of justice to function, lawyers must

be free of fear or restraint to advocate for their clients, whether large or small, rich or poor. They

must have the freedom, consistent with Chief Justice Marshall's assertion, to defend "the right of

every individual to claim the protection of the laws" *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

Without this vigorous advocacy, the promise of equal justice under the law is meaningless.

7       The efforts of *amicus* members are vital to upholding the integrity and foundational

principles of our judicial system. The Fellows of the Academy include advocates for the nation's

leading business and financial institutions, which rely on the stability of the Rule of Law to ensure

predictability in their endeavors. Equally important, other Fellows champion the interests of small

businesses, nonprofit organizations, consumers, workers, individual citizens, criminal defendants,

and prosecutorial offices—all of whom depend on the impartial administration of justice to protect

and advance their objectives.

The diverse political, social, and economic perspectives held by individuals within these

firms, even in the face of contentious executive orders, only underscores the critical importance of

our collective mission. United under the auspices of *amicus* and its unanimous Board, we

vigorously support the unwavering integrity and stability of the adversarial system. We find it

imperative now more than ever to protect, nurture, and defend the Rule of Law.

As we have witnessed from the current administration's actions in recent weeks and

months, the Judicial Branch stands as the last safeguard against the erosion—or even the potential

destruction—of one of our co-equal branches of government. It is not hyperbolic to suggest that

the survival of our Judiciary is not just a matter of legal principle; it is a necessity for the

preservation of our democratic values and the protection of all citizens' rights. We must act decisively to safeguard this essential institution.

8       Like every lawyer, the members of *amicus* have sworn an oath to uphold the Constitution and to discharge the obligations of the profession to the best of our ability. That oath obligates all of us, no matter our political views, to be faithful custodians of our Nation's commitment to the Rule of Law—a commitment that has made it possible for this Nation's corporations to lead the world in innovation and productivity; for our scientists, scholars and creative artists to contribute so much to human progress; and for all of us to know that we can turn to the courts to vindicate our fundamental civil and criminal rights.

The International Academy of Trial Lawyers, as *amicus*, therefore feels a special responsibility to stand up now to the unprecedented threat posed by the Executive Order at issue in this case and others like it. **The Rule of Law hangs in the balance.**

## CONCLUSION

For the foregoing reasons, this Court should grant the motion for permanent injunction.


Dated:  April 8, 2025


                                                     */s/ Patrick M. Regan*
                                                    Patrick M. Regan
                                                    Bar No. 336107
                                                    REGAN ZAMBRI & LONG, PLLC
                                                    1919 M Street, NW
                                                    Washington, DC 20036
                                                    Email: pregan@reganfirm.com
                                                    Phone: (202) 463-3030
                                                    Fax: (202) 463-0667

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by

operation of the Court's electronic filing system.


April 8, 2025                                                                    /s/ Patrick M. Regan
                                                                                Patrick M. Regan