IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERKINS COIE, LLP,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE, ET AL,<br><br>    Defendants. | Case No. 1:25-cv-00716-BAH<br><br>Hon. Beryl A. Howell |

**UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY, SERVICE EMPLOYEES INTERNATIONAL UNION, AMERICAN FEDERATION OF TEACHERS, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, CENTER FOR CIVIL RIGHTS AND CRITICAL JUSTICE, CENTER FOR LAW, EQUITY AND RACE, CENTER FOR RACIAL AND ECONOMIC JUSTICE, CENTER ON LAW, RACE & POLICY, CENTER ON RACE, INEQUALITY, AND THE LAW, GIBSON-BANKS CENTER FOR RACE AND THE LAW, THE LAWYERING PROJECT, AUTISTIC SELF ADVOCACY NETWORK, BAZELON CENTER FOR MENTAL HEALTH LAW, AND DISABILITY LAW UNITED IN SUPPORT OF PLAINTIFF**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.5(e), counsel for Movants certifies that the Fred T. Korematsu Center for Law and Equality and other organizational amici are not a publicly held corporations, do not have parent corporations, and that no publicly held corporation owns 10 percent or more of their stock.

**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Pursuant to Local Civil Rule 7(o), the Fred T. Korematsu Center for Law and Equality, Race and Law Centers, Civil Rights Organizations, and Labor Unions (collectively "Amici") respectfully move the Court for leave to file the attached brief as amici curiae in support of Plaintiff Perkins Coie LLP's motion for summary judgment. The Parties do not oppose this motion.

I.  **Interests of Amici**

Amici are Race and Law Centers from law schools across the country engaged in research, advocacy, and education regarding issues of race and the law; Service Employees International Union (SEIU), which advances worker rights and has over 150 affiliates and representing approximately two million members in healthcare, the public sector, and property services; the American Federation of Teachers (AFT), a union with more than 3,000 local affiliates nationwide and representing 1.8 million members who are America's educators, school and higher education staff, nurses, healthcare professionals, and public employees; the American Association of University Professors (AAUP), a membership association of faculty and academic professionals with chapters at colleges and universities throughout the country, which advances

academic freedom and economic security of academic workers; and legal advocacy organizations dedicated to defending human and civil rights rights. Amici have a common interest in supporting the rule of law and upholding the Constitution and the liberties it protects.

### a. Race and Law Centers

The **Fred T. Korematsu Center for Law and Equality** ("Korematsu Center") is a non-profit organization based at the University of California, Irvine School of Law. Inspired by the legacy of Fred Korematsu, who defied military orders during World War II that ultimately led to the unlawful incarceration of over 120,000 Japanese Americans, the Korematsu Center works to advance social justice for all. In addition to having a deep commitment to the rule of law and ensuring that lawyers and law firms remain free to advocate for their clients without fear of retaliation by the government, the Korematsu Center has a special interest in ensuring that actions taken for national security reasons remain bounded by the constitution. The Korematsu Center does not, in this brief or otherwise, represent the official views of the University of California, Irvine School of Law.

The **Center for Civil Rights and Critical Justice** ("CCRCJ") is based at Seattle University School of Law and works to achieve a legal system where both historical and present-day racism, oppression, and marginalization no longer control outcomes or otherwise contribute to inequality. CCRCJ educates future lawyers to be agents for social change and racial equality in all areas of the law, advocates for advancement of the law to achieve equal justice, and produces research to drive effective reform by revealing systems of oppression and exclusion. CCRCJ has a special

interest in ensuring the rule of law and, given the pro bono work undertaken by CCRCJ's Civil Rights Clinic, in ensuring the fundamental freedom of advocates to representent their clients in politically charged matters without fear of reprisal. CCRCJ does not, in this brief or otherwise, represent the official views of Seattle University.

The **Center for Law, Equity and Race** ("CLEAR") was established by Northeastern University School of Law to address challenges from the role of the law and legal systems in creating and perpetuating racial inequalities and disparities. CLEAR addresses the challenge by providing interdisciplinary, hands-on advocacy, learning opportunities, research, legislative engagement, and community outreach. As a result, CLEAR has a strong interest in ensuring that lawyers and the legal community remain free to advocate for their clients without fear of retaliation by the government. In addition, CLEAR has a special interest in ensuring that actions taken for national security reasons remain bounded by the constitution. The Center for Law, Equity and Race joins this brief to provide important context for the position that the rule of law and advocacy must be protected. CLEAR does not, in this brief or otherwise, represent the official views of Northeastern University or Northeastern University School of Law.

The **Center for Racial and Economic Justice** is based at UC Law San Francisco. The mission of the Center for Racial and Economic Justice is to advance equity and justice through legal education, research and scholarship, and academic-community partnerships and collaborations. The Center for Racial and Economic Justice does not, in this brief or otherwise, represent the official views of UC San Law.

4

The Duke University School of Law **Center on Law, Race & Policy** (the "Center") is a nonpartisan, nonprofit university-based center that supports research, public engagement, teaching, and programs related to race, law, policy, and people. The Center has an ongoing commitment to fostering racial equity by promoting material change in law and public policy, focusing on education, knowledge production, and community engagement. Accordingly, the Center joins this brief in ensuring the fundamental freedom of advocates to represent their clients without fear of retaliation. The Center does not, in this brief or otherwise, represent the official views of Duke University or Duke University School of Law.

The **Center on Race, Inequality, and the Law** at New York University School of Law works to highlight and dismantle structures and institutions that have been infected by racial bias and plagued by inequality. The Center fulfills its mission through public education, research, advocacy, and litigation focused on ensuring the fair administration of justice. No part of this brief purports to represent the views of New York University School of Law or New York University.

The **Gibson-Banks Center for Race and the Law** ("the Gibson-Banks Center" or "Center") at the University of Maryland Francis King Carey School of Law ("Maryland Carey Law") works collaboratively to reimagine and transform institutions and systems of racial and intersectional inequality, marginalization, and oppression. Through education and engagement, advocacy, and research, the Gibson-Banks Center examines and addresses racial inequality and advances racial justice in a variety of focus areas. Named after Larry Gibson and Taunya Lovell Banks, the first Black man and woman to become tenured professors at Maryland Carey Law,

5

the Center is committed to preparing law students for productive and professional roles in the legal profession where they represent their clients free from retaliation from governmental officials. This amicus brief is submitted on behalf of the Gibson-Banks Center and not on behalf of Maryland Carey Law or the University of Maryland, Baltimore.

b. <u>Unions and Associations</u>

**Service Employees International Union** ("SEIU") represents approximately two million members in healthcare, the public sector, and property services. SEIU has over 150 affiliates across the United States, Puerto Rico, and Canada. SEIU members include long-term care workers, physicians and other healthcare workers, janitors, security officers, airport workers, librarians, childcare workers, educators, fast food workers, employees who work for city, county, and federal governments, and many more. Our work is guided by our vision for a just society where all workers are valued and all people respected—no matter where we are from or the color of our skin, where all families and communities can thrive, and where we leave a better and more equitable world for generations to come. SEIU has significant familiarity with the critical need for and importance of zealous legal advocacy of issues that advance our members' interests, particularly when those interests are either not served by the government or, alternatively, under threat by the government.

The **American Federation of Teachers** ("AFT") was founded in 1916 and today represents 1.8 million members. AFT members include preK-12 educators, paraprofessionals, higher education faculty and administrative staff, nurses and health care workers, and public employees. The AFT's mission is to champion

6

fairness, democracy, and economic opportunity in and through high-quality public education, as well as healthcare and public services for students, their families, and communities their members serve. The AFT does so by ensuring its members receive fair pay and benefits for their crucial work, by fighting for safe working conditions that also benefit students, patients and all those who use public services, and by fighting for civil rights.

The **American Association of University Professors** ("AAUP") is a membership association of faculty and academic professionals with chapters at colleges and universities throughout the country. AAUP is committed to advancing academic freedom and shared governance, defining fundamental professional values and standards for higher education, promoting the economic security of academic workers, and ensuring higher education's contribution to the common good. AAUP often opposes US government policies as a plaintiff organization, *see Nat'l Ass'n of Diversity Officers in Higher Educ.et al v. Trump*, --- F. Supp. 3d ---, 2025 WL 573764, at *29 (D. Md. Feb. 21, 2025); *American Sociological Association et al v. Chertoff*, 588 F. Supp. 2d 166 (D. Mass. 2008); and by submitting and joining amicus briefs. *See Barenblatt v. United States*, 360 U.S. 109 (1959); *Trump v. Hawaii*, 138 S. Ct. 2392 (2018).

    c. <u>Advocacy Organizations</u>

**The Lawyering Project** is a nonprofit legal advocacy organization that blends traditional impact litigation with movement lawyering to promote reproductive health, rights, and justice throughout the United States.

The **Autistic Self Advocacy Network** is the largest and oldest advocacy organization run by and for the autistic community. We promote the interests of autistic

people and others with intellectual and developmental disabilities. Litigation has been integral to expanding the legal rights of Americans with disabilities. For this reason, permitting governmental pressure on legal organizations because they serve clients who may need to bring court challenges against actions by government entities would set a dangerous precedent for the people we serve. Any such development could severely curtail our constituents' ability to enforce their rights.

Since 1972, the **Judge David L. Bazelon Center for Mental Health Law** has advocated for the civil rights, full inclusion, and equality of adults and children with mental disabilities. We secured early legal precedents creating basic civil rights for people with mental disabilities—including the rights to a public education, receive services in community-based settings instead of institutions, and make decisions about one's own care. The Center played a key role in the historic case of *Olmstead v. L.C.* (1999), in which the Supreme Court found that needless segregation of people with psychiatric disabilities violates federal law. None of this would have been possible without pro bono support from private law firms, like Perkins Coie, who co-counsel on our cases and provide critical support and resources to our work.

**Disability Law United** (DLU) is a national nonprofit legal organization whose mission is to defend human and civil rights secured by law, focusing on intersectional disability justice. The neutral and ethical practice of law is the foundation of democracy and civil rights, and it is threatened by the recent executive orders targeting law firms for representing clients or taking positions that the government does not like. If these executive orders are allowed to stand, than any firm or organization could be next, including our own. As an organization of civil rights lawyers, DLU

believes it is our responsibility to speak out against the federal government's abuse of its power represented by punishing law firms for practicing law.

## II.     Argument

While the Federal Rules of Civil Procedure do not address a specific procedure governing motions for leave to appear as amicus curiae in federal district court, district courts have "inherent authority" to grant participation by an amicus curiae, which is derived from Federal Rule of Appellate Procedure 29. *See Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008); *see also Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007) (this Court has "broad discretion" in granting leave to file amicus briefs). Courts generally grant amicus status when "the information offered is 'timely and useful.'" *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996) (quoting *Waste Mgmt. of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)).

This Court's Local Rule 7(o) requires those wishing to file an amicus brief to "set forth the reasons why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case." Amici write to support Plaintiff's claims and also to lend this Court their diverse perspectives as centers in law schools engaging in scholarship and advocacy regarding issues of race and the law; as a transnational labor union advancing workers rights; as a national union championing fairness, democracy, and economic opportunity; as a professional association of academic workers ensuring higher education's contribution to the common good; and as civil rights advocates engaged in a variety of civil rights litigation. The perspective and legal analysis

9

provided in the amicus brief highlights the need for First Amendment protections for the broad and varied civil rights advocacy undertaken by amici.

Amici discuss how the First Amendment protects participants in litigation against government retaliation—as the United States Supreme Court determined when Southern States attempted to interfere with groups advocating for racial equality during the Civil Rights Movement. Amici also write to underscore the danger of the Administration's casual invocation of national security to shield its retaliatory actions against Perkins Coie and other law firms for their work on causes disfavored by the Administration. Amici remind the Court of the lessons learned from *Korematsu v. United States*, 323 U.S. 214 (1944), and the more recent Guantanamo cases, as both provide cautoionary lessons about judicial deference to unsubstantiated claims of national security. These historical examples of executive overreach, as well as the role the courts have played in ensuring the rule of law, are critical to this Court's resolution of the constitutional issues raised by the Executive Order targeting Perkins Coie.

This Court's local rules also require an amicus brief "to be filed in a timely manner such that it does not unduly delay the Court's ability to rule on any pending matter." LCivR 7(o). Here, the proposed amicus brief supports the Plaintiff's motion for summary judgment and is, consistent with FRAP 29, filed seven days after Plaintiff's motion (ECF No. 39), and seven days before April 16, 2025—the filing deadline this Court set for the parties to respond to each side's dispositive motions (ECF No. 26), thus affording each an opportunity to address any of amici's arguments in responsive briefing. The filing of this amicus brief in advance of the April 16, 2025

responsive briefing deadline will guard against any delay in this Court's ability to rule on this matter.

Respectfully submitted,

/s/ Jim Davy

Charlotte Garden*
University of Minnesota Law
  School†
Walter F. Mondale Hall
229 S. 19th Ave.
Minneapolis, MN 55455

Jeremiah Chin*
University of Washington School
  of Law†
William H. Gates Hall, Rm. 310
P.O. Box 353020
Seattle, WA 98195-3020

Jessica Levin*
Melissa Lee*
CENTER FOR CIVIL RIGHTS AND
  CRITICAL JUSTICE
RONALD A. PETERSON LAW CLINIC
Seattle University School of Law
901 12th Avenue
Seattle, WA 98122

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Robert S. Chang*
Susan McMahon*
THE FRED T. KOREMATSU CENTER FOR
  LAW AND EQUALITY
University of California–Irvine
401 E. Peltason Dr., Suite 1000
Irvine, CA 92697
(949) 824-3034
rchang@law.uci.edu

\* *pro hac vice* applications forthcoming
† institutional affiliations listed for identification purposes only

Counsel for Amici Curiae

April 9, 2025

**CERTIFICATE OF SERVICE**

I certify that on April 9, 2025, this motion for leave was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Jim Davy

Jim Davy