## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
PERKINS COIE LLP,                           )
                                            )
 *Plaintiff,*                          )
                                            ) No. 1:25-cv-00716-BAH
  v.                              )
                                            )
U.S. DEPARTMENT OF JUSTICE, *et al.*,       )
                                            )
 *Defendants.*                         )
_____     )


## BRIEF *AMICUS CURIAE* OF
## AMERICA'S FUTURE,
## GUN OWNERS OF AMERICA,
## GUN OWNERS FOUNDATION,
## GUN OWNERS OF CALIFORNIA,
## JUDICIAL ACTION GROUP, AND
## CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND
## IN SUPPORT OF RECONSIDERATION OF THE TRO AND
## DEFENDANTS' MOTION TO DISMISS

Patrick M. McSweeney  William J. Olson (D.C. Bar # 233833)
3358 John Tree Hill Road  Jeremiah L. Morgan (D.C. Bar # 1012943)
Powhatan, VA  23139   William J. Olson, P.C.
         370 Maple Avenue West, Suite 4
Phillip L. Jauregui   Vienna, VA  22180-5615
Judicial Action Group  (703) 356-5070
1300 I Street, N.W. #400E  wjo@mindspring.com
Washington, DC  20005  Counsel for *Amici Curiae*
        Dated: April 9, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    PLAINTIFF DOES NOT HAVE CLEAN HANDS REQUIRED TO SEEK
      EQUITABLE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   PERKINS COIE'S COMPLAINT IS DEVOID OF ANY ACTIONABLE CLAIM
      INVOKING THE SUBJECT MATTER JURISDICTION OF THIS COURT AND
      SHOULD BE DISMISSED UNDER F.R.CIV.P. RULE 12(B)(1) . . . . . . . . . . . . . 6

      A.    Perkins Coie's Claims Lack Ripeness . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Perkins Coie Lacks Standing as There Is No Actual or
            Imminent Injury in Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    Perkins Coie Lacks Standing to Advance Third-Party Claims . . . . . . 8

III.  PERKINS COIE'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
      RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED UNDER
      F.R.CIV.P. RULE 12(B)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    Perkins Coie's Complaint Raised a Non-justiciable Political
            Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Perkins Coie's Complaint Makes the Unsupportable Claim that
            the Executive Order Violates Due Process . . . . . . . . . . . . . . . . . . . . 10

      C.    Perkins Coie's Complaint Has Demonstrated No Valid First
            Amendment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ii

D.    Perkins Coie Fails to Demonstrate First Amendment
Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.    THE DISTRICT COURT HAD NO AUTHORITY WHATEVER TO CENSOR
THE EXECUTIVE BRANCH OF GOVERNMENT. . . . . . . . . . . . . . . . . . . . . . . 12

A.    Perkins Coie's Election Activities. . . . . . . . . . . . . . . . . . . . . . . 12

B.    Perkins Coie's DEI Policies. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.    PERKINS COIE'S COMPLAINT MISREPRESENTED ITSELF TO THE COURT  . . . 14

VI.    THE EXECUTIVE ORDER INVOLVING PERKINS COIE IS MILD
COMPARED TO EFFORTS BY THOSE ASSOCIATED WITH PERKINS COIE
ALUMNI TO DISBAR AND DESTROY TRUMP ATTORNEYS . . . . . . . . . . . . . . 21

VII.    THE LOWER FEDERAL COURTS HAVE ISSUED AN EXTRAORDINARY
NUMBER OF INJUNCTIONS AGAINST PRESIDENT TRUMP'S EFFORT TO
IMPLEMENT POLICY CHANGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

iii

# TABLE OF AUTHORITIES

Page

**HOLY BIBLE**

*Leviticus* 19:15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*Proverbs* 18:13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*Proverbs* 24:23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*James* 2:4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


**CONSTITUTION**

Amendment I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12


**CASES**

*Baker v. Carr*, 369 U.S. 186 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*Board of Regents v. Roth*, 408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . 10
*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) . . . . . . . . . 9
*Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240 (1933). . . . . . . . . . 6
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . 7
*Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498 (9th
    Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Texas Alliance for Retired Americans, Sylvia Bruni; DSCC; DCCC v. Ruth
    Hughs*, No. 20-40643, 5th Cir, Order of March 11, 2021 (*per curiam*) . . . 13


**MISCELLANEOUS**

Dan Bongino and D.C. McAllister, <u>Spygate: The Attempted Sabotage of
    Donald J. Trump</u> (Post Hill Press: 2018). . . . . . . . . . . . . . . . . . . . . . 18, 19
X. Bustillo, "Trump is sentenced in hush money case - but gets no
    penalty or fine," *NPR* (Jan. 10, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
M. Cohen, "FEC fines Hillary Clinton campaign and DNC over
    Trump-Russia dossier research," *CNN* (Mar. 30, 2022) . . . . . . . . . . . . . . 21
J. Colvin, "DNC, Clinton Campaign Agree to Steele Dossier Funding
    Fine," *Associated Press* (Mar. 31, 2022). . . . . . . . . . . . . . . . . . . . . . . . 4, 21
M. Haberman, "George Soros Bankrolls Democrats' Fight in Voting Rights
    Cases," *The New York Times* (June 5, 2015) . . . . . . . . . . . . . . . . . . . . . . . 17
Dylan Jackson, "Fifth Circuit Sanctions Democratic Election Lawyer Marc
    Elias in Texas Voting Case," *Law.com* (Mar. 15, 2021) . . . . . . . . . . . . . . 18
M. Kranish, "Clinton lawyer kept Russian dossier project closely held," *The
    Washington Post* (Oct. 27, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iv

H. Ludwig, "The Dark Money Intimidation Group Attacking Election
    Lawyers," *Tomklingenstein.com* (Aug. 16, 2024) . . . . . . . . . . . . . . . . . . . 22

A. McCarthy, <u>Ball of Collusion</u> (Encounter Books:  2019) . . . . . . . . . . . 19, 20, 21

C. Ravold, "Political Law Personified: Marc Elias & Perkins Coie Take on
    Redistricting," *Capital Research Center* (Dec. 13, 2018). . . . . . . . . . . . . . 16

P.C. Roberts, "Seattle law firm Perkins Coie drew Democrats' cash, and
    Trump's wrath," *The Seattle Times* (Mar. 17, 2025). . . . . . . . . . . . 15, 16, 18

D. Roe, "Perkins Coie's Marc Elias Became Every Democrat's Favorite
    Lawyer. Now He Wants to Reform Democracy Itself," *Law.com* (Feb.
    1, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

C. Ross, "Fusion GPS Founder Had Contact With State Department Official
    During 2016 Campaign," *Daily Caller* (Mar. 4, 2019) . . . . . . . . . . . . . . . 20

L. Smith, <u>The Permanent Coup</u> (Center Street:  2020) . . . . . . . . . . . . . . . . . 18, 20

L. Smith, <u>The Plot Against the President</u> (Center Street:  2019). . . . . . . . . . . . . 20

K. Vogel, "Democratic Lawyer Stymied Trump in 2020. Other Efforts Played
    Into G.O.P. Hands," *The New York Times* (Oct. 30, 2024) . . . . . . . . . 16, 17

Kenneth P. Vogel, "Franken-Coleman gravy train rides on," *Politico* (Apr. 6,
    2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D. Weiss, "Perkins Coie hired company that compiled Trump dossier,"
    *ABAJournal.com* (Oct. 25, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## INTEREST OF *AMICI*[1]

The interest of the *amici curiae* is set out in the accompanying motion for leave to file.

## STATEMENT OF THE CASE

On March 6, 2025, President Donald Trump signed an executive order entitled "Addressing Risks from Perkins Coie LLP" ("the EO").  The EO cites the role of plaintiff law firm Perkins Coie LLP ("Perkins Coie"), *inter alia*, in fabricating the "Steele Dossier" in 2016 in an effort to influence the 2016 presidential election, to undermine state election laws, as well as the discriminatory practices engaged in by that firm.

The EO directs government agencies to, *inter alia*, suspend security clearances for attorneys with Perkins Coie, determine whether that firm provides any services to the federal government and to suspend any such services, determine whether government contractors with whom they do business have relationships with Perkins Coie, refrain from hiring employees of Perkins Coie, "absent a waiver from the head of the agency that such hire will not threaten the

---

[1]  Both parties consented to the filing of this brief.  No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

2

national security of the United States," and "limit[] official access from Federal

Government buildings to employees of Perkins Coie when such access would

threaten the national security of or otherwise be inconsistent with the interests of

the United States." *Id.*

On March 11, 2025, a small army of 14 lawyers filed a Complaint

("Compl.") (Dkt. 1) on behalf of Perkins Coie against numerous federal agencies

and officials, alleging a veritable smorgasbord of various legal theories, including

*ultra vires* executive action on judicial questions,[2] deprivation of due process (*id*.

at ¶¶ 10, 99-116), denial of equal protection (*id*. at ¶¶ 10, 117-25), denial of free

speech rights (*id*. at ¶¶ 10, 126-56), denial of free association (*id*. at ¶¶ 10, 126-

56), and denial of Perkins Coie clients' right to counsel (*id*. at ¶¶ 10, 157-68).

Perkins Coie also filed a motion for a temporary restraining order against

paragraphs 1, 3, and 5 of the Executive Order, and supporting memorandum and

declarations.  Dkt. 2, 2-1.

On the very next day, March 12, 2025 after a hearing at 2:00 pm, and before

the government could even respond in writing, at 6:33 pm, the district court issued

a TRO exactly as requested by Perkins Coie by prohibiting enforcement of the

---

[2] *Perkins Coie, LLP v. U.S. Department of Justice*, *et al.*, Complaint at ¶¶ 10, 85-98, Case No. 1:25-cv-00716-BAH, (Dkt. 1) (Mar. 11, 2025).

3

EO's sections 1, 3, and 5.  *Perkins Coie LLP v. U.S. Department of Justice, et al.,* Order (Mar. 12, 2025) (Dkt. 21).  The TRO went even further, enjoining the government Defendants "from using the statements laid out in Section 1 of Executive Order 14230 in any interactions with plaintiff or plaintiff's clients, or employee of plaintiff or plaintiff's clients...."

The government filed a motion to disqualify Judge Howell on March 21, 2025 (Dkt. 34), which was denied by Judge Howell on March 26, 2025 in a 21-page Opinion and Order (Dkt. 36).[3]  On April 2, 2025, the government filed a motion and supporting memorandum seeking dismissal of the complaint (Dkt. 43, 43-1), and sought reconsideration of the TRO (Dkt. 44), both of which these *amici* file this *amicus* brief to support.

## ARGUMENT

The Perkins Coie Complaint has numerous deficiencies (addressed in Sections II and III, *infra*) rendering this Court to be without jurisdiction to issue any relief, including the TRO previously issued.  Other factors demonstrating the court's error in issuing the TRO are discussed in Sections I and IV to VII, *infra*.

---

[3]  Although apparently allowed, the same district court judge ruling on this motion violated the maxim *nemo judex in causa sua*, that no one should be a judge of his own case, a principle drawn from Holy Writ.  *See, e.g.*, *Proverbs* 18:13; *James* 2:4; *Leviticus* 19:15; and *Proverbs* 24:23.

4

The Appendix to this Brief identifies 50 injunctions issued against the Trump Administration.

## I.     PLAINTIFF DOES NOT HAVE CLEAN HANDS REQUIRED TO SEEK EQUITABLE RELIEF.

During the 2016 Presidential election between Donald Trump and Hillary Clinton, the Clinton for President Campaign paid  money to its law firm, Perkins Coie, for expenses, which by all public accounts was used to fund the hiring of a foreign former intelligence officer to prepare a phony document (the "Steele Dossier"),[4] ostensibly based on an (unreliable) Russian source, about supposed connections between then-candidate Trump and Russian President Vladimir Putin. That fabricated dossier was then used by Obama Administration officials to obtain a FISA warrant in order to spy on Trump's campaign.  The Clinton campaign denied

---

[4] *See, e.g.,* J. Colvin, "DNC, Clinton Campaign Agree to Steele Dossier Funding Fine," *Associated Press* (March 31, 2022) ("Hillary Clinton's 2016 presidential campaign and the Democratic National Committee have agreed to **pay $113,000 to settle a Federal Election Commission investigation** into whether they violated campaign finance law by **misreporting spending** on research that eventually became the infamous **Steele dossier**....  The Clinton campaign hired **Perkins Coie**, which then hired **Fusion GPS**, a research and intelligence firm, to conduct opposition research on Republican candidate Donald Trump's ties to **Russia**.  But on FEC forms, the Clinton campaign classified the spending as legal services.... The Steele dossier was a report compiled by former British spy **Christopher Steele** and financed by Democrats that included **salacious allegations** about Trump's conduct in Russia and allegations about ties between the Trump campaign and Russia." (emphasis added)).

5

foreknowledge of this corrupt political scheme engaged in by its counsel, Perkins

Coie.[5]  Nonetheless, the Federal Election Commission found probable cause that the

Clinton Campaign and DNC had violated federal election law for concealing the

nature of the expense on its campaign disclosure forms, and agreed to pay a

substantial fine for illegal and deceptive practices.  The effort to manipulate the 2016

Presidential Campaign through the resulting Russiagate hoax was arguably the

biggest political scandal in American history, and Perkins Coie was at its epicenter.[6]

*See also* Section V, *infra*.

---

[5]  *See, e.g.,* D. Weiss, "Perkins Coie hired company that compiled Trump dossier," *ABAJournal.com* (Oct. 25, 2017) ("Perkins Coie lawyer **Marc Elias hired the company that compiled a dossier** with allegations about Donald Trump's Russia connections, **the law firm confirmed** on Tuesday.  Elias hired the company, Fusion GPS, to assist in the law firm's representation of the Clinton campaign and the Democratic National Committee, report the New York Times and the Washington Post, which was first with the story.  The Clinton campaign and the DNC helped pay for the opposition research, the stories report.  The law firm's involvement became public in a letter filed in court that was written by Perkins Coie managing partner Matthew Gehringer....  A DNC spokeswoman told the newspapers that chairman Tom Perez and the new leadership at **the DNC "were not involved in any decision-making regarding Fusion GPS**, nor were they aware that Perkins Coie was working with the organization."  Brian Fallon, a former Clinton campaign spokesman, said he never heard about any dossier until after the election." (emphasis added)).

[6]  *See, e.g.,* M. Kranish, "Clinton lawyer kept Russian dossier project closely held," *The Washington Post* (Oct. 27, 2017).

6

Perkins Coie has come to this Court seeking to be relieved of the just consequences of its own wrongful actions, and thus comes to court with anything but clean hands, which bars it from any entitlement to equitable relief.  The U.S. Supreme Court has described clean hands as "one of the fundamental principles upon which equity jurisprudence is founded."  As such, it constitutes a defect in the Plaintiff's case that this Court can neither ignore nor waive.  *See Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 244-45 (1933) ("courts of equity ... apply the maxim requiring clean hands ... where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.").

## II.  PERKINS COIE'S COMPLAINT IS DEVOID OF ANY ACTIONABLE CLAIM INVOKING THE SUBJECT MATTER JURISDICTION OF THIS COURT AND SHOULD BE DISMISSED UNDER F.R.Civ.P. RULE 12(b)(1).

### A.  Perkins Coie's Claims Lack Ripeness.

Apart from two allegations (Complaint ¶¶ 67, 68), Perkins Coie's complaint does not allege any government employee actions that have yet been taken against it. Instead, it challenges an Executive Order that merely directs various federal agencies to begin to take certain actions, and in each case, the agency is directed only to take such actions as are "consistent with applicable law."  Until any such actions may be

7

taken, Perkins Coie's challenge to their legality is not ripe, and the complaint must be dismissed for lack of subject matter jurisdiction. *See Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

## B.    Perkins Coie Lacks Standing as There Is No Actual or Imminent Injury in Fact.

To establish standing, a plaintiff must plausibly plead:  (1) an "injury in fact," *i.e.,* "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct complained of," *i.e.,* that the injury is "fairly ... trace[able] to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court"; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  Perkins Coie's complaint fails all three prongs of this test.

First, Perkins Coie's asserted injuries are not of any legally protected interest, as it has no legal entitlement to continued security clearances or use of a SCIF, and for the reasons that the case is not ripe discussed *supra*, any supposed injury is not "actual or imminent."  Second, Perkins Coie is attacking the President's Executive Order based on the words of the Order, not based on any action taken by executive

agencies implementing that order, as none had happened as of the filing of the Complaint, as Perkins Coie rushed to this Court prematurely to obtain protection based only on its fears of what might happen. Because the Executive Order expressly states any such action is to be taken in accord with the law, the issuance of the Executive Order itself cannot be the cause of any actual injury. Neither can an injunction against the Executive Order redress any injury that might be claimed to arise at some time in the future in the implementation of the order.

### C.  Perkins Coie Lacks Standing to Advance Third-Party Claims.

In Counts VI and VIII, Perkins Coie also seeks to advance not its own claims, but the claims of its clients. Although courts have accepted third-party standing in some unusual circumstances, Perkins Coie's complaint contains no allegations that would permit it to raise the claims of its clients. Its allegation that its clients are incapable of pressing their own claims because they would have to disclose their attorney-client relationship with Perkins Coie fails for several reasons. The identity of a lawyer's client is generally not privileged. Similarly, its claim that its clients would be deprived of the services of their law firm of choice does not get Perkins Coie over the third-party standing hurdle. The case on which Perkins Coie relies demonstrates that a plaintiff seeking to press the claims of others must itself have suffered some injury in fact in order to qualify under Article III, and prudentially, the

9

courts consider: (1) the relationship between the plaintiff and the third party;
(2) whether the third party can raise its own claims; and (3) the impact of the
litigation on the third-party interests.  *See Caplin & Drysdale, Chartered v. United
States*, 491 U.S. 617, 623 n.3 (1989).  The law firm in that case had been paid by its
criminal client with forfeitable assets which were going to be clawed back, so it
clearly had its own injury in fact; Perkins Coie's Complaint only alleges that its future
business might be impacted.  More importantly, however, there is no reason why
Perkins Coie's sophisticated clients cannot assert whatever claims they might have
themselves.

## III.    PERKINS COIE'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED UNDER F.R.Civ.P. RULE 12(b)(6).

### A.    Perkins Coie's Complaint Raised a Non-justiciable Political Question.

Perkins Coie's Complaint addressed security clearances, but its Motion for a
TRO did not request, and the Court's TRO did not grant, relief on Paragraph 2 of the
Executive Order.  However, Perkins Coie has no legally protected interest whatsoever
in maintaining security clearances.  The President's decision to terminate security
clearances is within his sole prerogative and therefore presents a non-justiciable
political question.  It is not, as Perkins Coie claims, an exercise of judicial authority

10

(Complaint at ¶¶ 85-98), but rather arguably fails under all six tests for non-justiciability articulated by the Supreme Court in *Baker v. Carr*, 369 U.S. 186, 217 (1962):

The power over foreign affairs and national security is textually committed to the President (Test #1); whether to grant or withhold a security clearance is not a judicially manageable standard (Test #2); such would require the court to make an initial policy determination (Test #3); express a lack of respect for the President's authority over such policy determinations (Test #4); or question the policy determination already made (Test #5); and it would risk the possibility of embarrassment from multifarious policy pronouncements from different branches of government (Test #6).

**B.    Perkins Coie's Complaint Makes the Unsupportable Claim that the Executive Order Violates Due Process.**

Perkins Coie claims that the Executive Order violates its Due Process rights in numerous ways, but in order for Due Process rights to be triggered at all, there must be a deprivation of a property interest.  As the Supreme Court has made clear, there is no property interest in the continuation of benefits (such as a security clearance or contract renewals) based on mere expectation as opposed to a legitimate claim of entitlement.  *See Board of Regents v. Roth*, 408 U.S. 564 (1972).

11

### C.    Perkins Coie's Complaint Has Demonstrated No Valid First Amendment Claim.

Count V of Perkins Coie's complaint asserts violations of the First Amendment.  But the Executive Order does not prohibit Perkins Coie from speaking, and the government is under no obligation to contract with an entity whose past actions are antithetical to the goals of the administration.  Perkins Coie also alleges retaliation for its First Amendment views, but its own allegations demonstrate that it is its actions, not its expression, that form the basis for the Executive Order.

Indeed, Perkins Coie's complaint reveals no awareness of the irony it displays in complaining that the Executive Order unfairly described Perkins Coie's activities as "egregious" (Compl. ¶ 4) because it involved speech at the very core of the First Amendment, namely, elections.  Perkins Coie evidences no self-reflection that the Executive Order is an outgrowth of its own demonstrably manipulative activities targeting the speech and candidacy of its clients' political opponent, namely President Trump himself.  Holding entities that engaged in such activity as Perkins Coie did accountable is not retaliation for its speech, but reflects the country's need for justice and accountability.

12

**D.    Perkins Coie Fails to Demonstrate First Amendment Retaliation.**

Perkins Coie claims that the Executive Order was issued in retaliation for its views supporting "Diversity, Equity, and Inclusion" ("DEI"), but as the Order makes clear, the target is illegal race- and sex-discrimination, not the expression of views supporting such discrimination.  Nothing in the Executive Order targets Perkins Coie's "beliefs"; rather, it targets acts by Perkins Coie of discrimination.

**IV.    THE DISTRICT COURT HAD NO AUTHORITY WHATEVER TO CENSOR THE EXECUTIVE BRANCH OF GOVERNMENT.**

In enjoining the government defendants "from using the statements laid out in Section 1 of Executive Order 14230 in any interactions with plaintiff or plaintiff's clients, or employee of plaintiff or plaintiff's clients," this court grossly exceeded its authority.  The censored Section I of the Executive Order contained three paragraphs, each of which is addressed below.

**A.    Perkins Coie's Election Activities.**

The first paragraph of EO Section I states:

The dishonest and dangerous activity of the law firm Perkins Coie LLP ("Perkins Coie") has affected this country for decades. Notably, in 2016 while representing failed Presidential candidate **Hillary Clinton**, Perkins Coie **hired Fusion GPS**, which then manufactured a **false "dossier"** designed to steal an election. This egregious activity is part of a pattern. Perkins Coie has worked with activist donors including George Soros to **judicially overturn popular, necessary, and democratically enacted election laws**, including those requiring

13

voter identification. In one such case, a court was forced to **sanction Perkins Coie attorneys** for an **unethical** lack of candor before the court. [Emphasis added.]

While Perkins Coie may object to the adjectives used, it cannot challenge the essential accuracy of these statements.  That firm has come to be known by the American People for two primary reasons — it was the firm which was at the epicenter of the Russiagate hoax advanced for its client Hillary Clinton, and it led the efforts nationwide to undermine state election laws which operated to protect against election fraud.  *See also* Section I, *infra*.

As to the Executive Order's statements about sanctions, it is undeniable that Perkins Coie attorneys were sanctioned by the Fifth Circuit for unethical conduct. *See Texas Alliance for Retired Americans, Sylvia Bruni; DSCC; DCCC v. Ruth Hughs*, No. 20-40643, 5th Cir., [Order of March 11, 2021](#) (*per curiam*) ("This inexplicable failure to disclose the earlier denial of their motion violated their duty of candor to the court."[7]).

_____

[7]  The Fifth Circuit's order continued: "Sanctions are warranted in this case to deter future violations.  The attorneys listed on the February 10, 2021 motion to supplement the record shall pay: (i) the reasonable attorney's fees and court costs incurred by Appellant with respect to Appellees' duplicative February 10, 2021 motion, to be determined by this court following the filing of an affidavit by Appellant and any response by Appellees, and (ii) double costs."

14

**B.    Perkins Coie's DEI policies.**

The second and third paragraphs of Section I of the Executive Order addressed Perkins Coie's DEI policies.  Again, while Perkins Coie apparently believes that some racial discrimination is desirable, the laws of the United States and the Trump Administration do not.  The Order's Section I states that Perkins Coie's "disrespect for the bedrock principle of equality represents good cause to conclude that they neither have access to our Nation's secrets nor be deemed responsible stewards of any Federal funds."

**V.    PERKINS COIE'S COMPLAINT MISREPRESENTED ITSELF TO THE COURT.**

In its Complaint, Perkins Coie represents to this Court that it is a law firm just like any other, doing nothing except promoting the best interests of its clients to the best of its ability.  Compl., at ¶¶ 5-8, 14-21.  Perkins Coie asserts that its past actions against Trump are non-partisan, and that the firm is being singled out for retaliation and punishment for the mere act of zealously representing its clients, particularly the 2016 Clinton Campaign.  *Id.* at ¶ 5.  Perkins Coie claims that they are merely "*lawyers* who advocate for *clients*," and that Perkins Coie employees "are not activists or partisans."  *Id.* at ¶ 91.  Styling themselves as a law firm no different than any other, being punished for simply doing its job, Perkins

15

Coie claims that its "ability to represent the interests of its clients — and its ability

to operate as a legal services business at all — are under direct and imminent

threat." *Id.* However, Perkins Coie's descriptions fail to accurately reflect its

record, as illustrated by many stories, including those published by many of the

same media outlets cited by Perkins Coie both in its complaint and motion for a

TRO.

Perkins Coie is a law firm, but it also has operated as a partisan political

organization, not just in representing the Democratic National Committee

("DNC"), the 2016 Clinton Campaign, and other high-level political operatives,

but also its actions which go far beyond the normal scope of the practice of law

and a normal attorney-client representation.

Without a complete investigation and accounting, it is difficult to put all the

pieces together, but public sources, including some of the media outlets cited by

Perkins Coie in the Complaint and Motion for a TRO, have reported that Perkins

Coie has been politically partisan for decades, aggressively spearheading

Democrat party efforts at both the national and state level. *See* P.C. Roberts,

"Seattle law firm Perkins Coie drew Democrats' cash, and Trump's wrath," *The

Seattle Times* (Mar. 17, 2025). Since the 1990's, Perkins Coie has been "the go-to

law firm for Democrats in election disputes, including some of the most

16

consequential contests in recent history." *Id.* Indeed, Perkins Coie's political law

practice became "a kind of who's who in Democratic politics," growing to about

50 attorneys, and represented "a force in national politics." *Id.* Perkins Coie has

"represented the Democratic National Committee and the Democratic House and

Senate fundraising operations, advised Democratic presidential campaigns, and

shaped party strategy in election fights, voting rights battles, redistricting and

related matters." *Id.* For example, the founder of Perkins Coie's political law

practice, Bob Bauer, "went on to serve as President Barack Obama's White House

counsel in 2009 and President Biden's personal attorney." P.C. Roberts, *supra*.

Throughout the first half of the 2010s, Perkins Coie petitioned state courts,

on behalf of Democrat-funded groups, to re-draw voting districts, netting

democrats dozens of seats in various state legislatures. *See* C. Ravold, "[Political](

Law Personified: Marc Elias & Perkins Coie Take on Redistricting)," *Capital*

*Research Center* (Dec. 13, 2018)

However, it was Bob Bauer's successor who ushered Perkins Coie's

political law practice into uncharted waters, through hyper-aggressive litigation

strategies on behalf of its Democrat-aligned clients. Marc Elias rose to

prominence in Perkins Coie when he successfully led his client, Al Franken,

"through a monthslong recount and legal battle that gave Democrats control of the

17

chamber," leading "to time in front of news cameras and millions of dollars in legal fees, helping to usher in a new era in which political law, once regarded in legal circles as an unprofitable backwater, came to be seen as an appealing growth market."  K. Vogel, "Democratic Lawyer Stymied Trump in 2020. Other Efforts Played Into G.O.P. Hands," *The New York Times* (Oct. 30, 2024).

Such high-profile, aggressive, and contentious litigation led to skyrocketing costs; small fortunes regularly traded hands between D.C. fundraisers, campaigns, and the attorneys fighting their battles.  *See* Kenneth P. Vogel, "Franken-Coleman gravy train rides on," *Politico* (Apr. 6, 2009).  "Since Marc Elias, the architect of the firm's legal effort on behalf of the Democrats, took over as the political law group's chair in 2009, it has billed over $150 million to Democratic entities."  D. Roe, "Perkins Coie's Marc Elias Became Every Democrat's Favorite Lawyer. Now He Wants to Reform Democracy Itself," *Law.com* (Feb. 1, 2021).

Under Elias's leadership, Perkins Coie's political law practice would spearhead several representations directly funded by George Soros, to influence voting rules to be more favorable to Democrats.  *See* M. Haberman, "George Soros Bankrolls Democrats' Fight in Voting Rights Cases," *The New York Times* (June 5, 2015).  Perkins Coie's political law practice would roughly double in size, and by 2021, was generating a substantial amount of Perkins Coie's annual revenue.

18

*See* Roe, *supra*; Roberts, *supra*.  Perkins Coie's political attorneys would push the bounds of ethical representation, leading to sanctions in the Fifth Circuit for a lack of candor to the court.  Dylan Jackson, "Fifth Circuit Sanctions Democratic Election Lawyer Marc Elias in Texas Voting Case," *Law.com* (Mar. 15, 2021).

During the 2016 presidential election, Perkins Coie would go even further in connection with the firm's representation of the Clinton Campaign and the DNC.  In April 2016, when the DNC's servers were allegedly hacked and had all of its information stolen, Perkins Coie did not contact law enforcement to address this crime committed against its client; instead Perkins Coie hired a private cybersecurity firm, Crowdstrike.  *See* Dan Bongino and D.C. McAllister, Spygate: The Attempted Sabotage of Donald J. Trump at 64 (Post Hill Press: 2018). Crowdstrike, which had significant ties to prominent Clinton supporters and President Obama's FBI, brusquely concluded that the hack must have been perpetrated by Russia after a mere day of investigation.  *See id.* at 64-66. Crowdstrike's conclusory accusations of Russian meddling were used to lend credence to the claims that Russian interference undermined the 2016 presidential election.  *See* L. Smith, The Permanent Coup at 33-35 (Center Street:  2020), access to the hacked servers was denied to federal law enforcement.  *See* D.

19

Bongino, *supra*, at 68-69. "Rather than do its own investigation, the FBI relied on a contractor retained by the DNC's lawyers [Perkins Coie]." *Id.* at 69.

Perkins Coie was also at the heart of the infamous Steele Dossier, a discredited report designed to slander then-presidential candidate Donald Trump with outlandish claims of his alleged collusion with and blackmailing by the Russian government. *See id.* at 80-83. In March 2016, Elias was approached by Glenn Simpson, co-founder of Fusion GPS, a private intelligence firm that was hired by Perkins Coie. *See* A. McCarthy, Ball of Collusion at 158 (Encounter Books: 2019). Simpson, knowing that Elias was representing the Clinton Campaign, offered to continue a research project designed to unearth dirt on Donald Trump, but also to turn its focus to Russia. *See id.* at 158-59. Elias accepted, and the relationship between the Clinton Campaign, Perkins Coie, Fusion GPS, and Christopher Steele, an ex-MI6 operative, who primarily authored the dossier, began. *See id.*

Massive campaign resources were put into this project, as the Clinton Campaign and the DNC "combined to pay Perkins Coie over $12 million for 'legal services' and 'compliance consulting,'" and "out of this amount, Perkins Coie paid Fusion $1.02 million. Fusion in turn, paid $168,000 to Steele (who was also being paid by the FBI)." *Id.* at 159. Perkins Coie was the central link that orchestrated

20

the Steele Dossier, acting as the go-between for all the parties, and making sure

that the money changed hands in such a way that it would draw as little attention

as possible.  *See id.*  Indeed, Perkins Coie's centrality to the project was evinced

when "[t]he header of the May 20 protodossier reads 'PRIVILEGED-PREPARED

AT THE INSTRUCTION OF COUNSEL [Perkins Coie].'"  L. Smith, <u>The Plot</u>

<u>Against the President</u> at 45 (Center Street:  2019).

     In addition to releasing the fraudulent Steele Dossier to the public in order

to discredit Trump, Perkins Coie brought the dossier to the attention of the FBI

and Obama's Department of Justice ("DOJ") who filed an application for a

Foreign Intelligence Surveillance Act ("FISA") warrant on Carter Page, a key

Trump Campaign official, based on the dossier's contents.[8]  *See id.* at 8, 97, 183;

L. Smith, <u>The Permanent Coup</u>, *supra* at 36.  The FISA warrant, which was

granted weeks before the 2016 presidential election, allowed the DOJ to monitor

the prior and ongoing communications of the Trump Campaign.  *See* McCarthy,

*supra* at 268.

---

[8]  Fusion GPS, the firm hired by Perkins Coie, also sought to give the
dossier credibility by providing it to officials at the State Department, who then in
turn provided it to the FBI.  *See* C. Ross, "<u>Fusion GPS Founder Had Contact With</u>
<u>State Department Official During 2016 Campaign</u>," *Daily Caller* (Mar. 4, 2019).

21

The DNC and Clinton Campaign's payment to Perkins Coie for the Steele Dossier, which was mislabeled as to what the payments were actually for, violated election law. *See* McCarthy, *supra* at 159, 274-75. However, when the facts came to light, the DNC and Clinton Campaign were only given a $113,000 fine, a slap on the wrist. *See* J. Colvin, "DNC, Clinton campaign agree to Steele dossier funding fine," *Associated Press* (Mar. 31, 2022); M. Cohen, "FEC fines Hillary Clinton campaign and DNC over Trump-Russia dossier research," *CNN* (Mar. 30, 2022). Perkins Coie was never held accountable for its central role in creating the Steele Dossier, or for concealing the payments for it. By contrast, President Trump received 34 state felony convictions for a variant of that same action — allegedly mislabeling campaign finance expenditures. *See* X. Bustillo, "Trump is sentenced in hush money case - but gets no penalty or fine," *NPR* (Jan. 10, 2025). Based on the foregoing public sources, Perkins Coie cannot claim to be non-partisan, merely representing its political clients as any law firm would.

## VI.    THE EXECUTIVE ORDER INVOLVING PERKINS COIE IS MILD COMPARED TO EFFORTS BY THOSE ASSOCIATED WITH PERKINS COIE ALUMNI TO DISBAR AND DESTROY TRUMP ATTORNEYS.

The district court described the Government's Motion to Disqualify Judge Howell as retaliation "targeting the law firm with punitive measures due to the law

22

firm's representation of clients whom the President dislikes or who sought relief

through litigation that the President opposes."  Order of March 26, 2024, at 1.

The district court expressed concern about the effect on lawyers not being

willing to represent clients at odds with President Trump, but failed to note that

Perkins Coie's alumni were reported to have connections to efforts to disbar,

sanction, and drive out of business conservative lawyers in the past.  According to

one published report about the lead group attempting to drive pro-Trump lawyers

from the profession, The 65 Project[9]:

> **The 65 Project** is functionally two organizations: an LCC ... and a
> law firm on D.C.'s Maine Avenue.....  We know that the LLC's board
> consists of at least two veteran Democratic operatives, Ezra Reese
> and Teter.  Reese is a former election lawyer for **Perkins Coie** — the
> Democratic Party's law firm of choice — who currently leads
> political affairs at **Marc Elias's Elias Law Group,** the mission of
> which is "electing Democrats, supporting voting rights, and helping
> progressives make change."  [H. Ludwig, "The Dark Money
> Intimidation Group Attacking Election Lawyers,"
> *Tomklingenstein.com* (Aug. 16, 2024) (emphasis added).]

Interestingly, the 65 Project has never filed a bar complaint against Perkins Coie

or any of its alumni.

---

[9] The 65 Project website describes itself as "[a] bipartisan effort to deter
future abuse of the legal system by lawyers seeking to overturn legitimate
elections  We will **hold such lawyers accountable** for past abuses and will work
to revitalize the state bar disciplinary process so that lawyers, including public
officials, who lie about election results and who fuel insurrection **will face
professional consequences**."  (Emphasis added.)

## VII.  THE LOWER FEDERAL COURTS HAVE ISSUED AN EXTRAORDINARY NUMBER OF INJUNCTIONS AGAINST PRESIDENT TRUMP'S EFFORT TO IMPLEMENT POLICY CHANGES.

The district court took offense at:  "the opening line in defendants' pending motion, expressing 'the need to curtail ongoing improper encroachments of President Trump's Executive Power playing out around the country'" in part for being made without citation.  Order of March 26, 2025, at 2.  These *amici* would like to provide some supporting citations for the benefit of the court — a list of some **50 injunctions** which have been issued by federal courts in the dozen weeks since the President was inaugurated.  *See* Appendix.  This court finds this extraordinary number of injunctions to be praiseworthy, describing it as:

> a testament to the fact that this country has an independent judiciary that adheres to an impartial adjudication process, without being swayed merely because the federal government appears on one side of a case and the President wishes a particular result.  [*Id*. at 3.]

Since the district court did not conduct an evaluation of these 50 injunctions, it is obvious that these words of praise assume that all of these injunctions were valid.  A more reasonable conclusion from this remarkable list is that the lower federal courts are quite unhappy with the candidate for President voted for by 77 million persons (winning the electoral college vote by a margin of 312 to 226), and are working at the behest of Big Law and Democrat state Attorneys General to resist

24

the very changes which the American People elected President Trump to
implement on November 5, 2024.

## CONCLUSION

The Court should not delay in resolving the issues presented because former
Government counsel agreed to extend the TRO "until final judgment," as the
complaint should have been dismissed, and the TRO should never have been
entered.  Every day that the TRO is allowed to stay in effect is an unjustified
intrusion by the judicial branch on the executive branch, imperiling the Separation
of Powers.  The temporary restraining order should be vacated forthwith, and the
complaint dismissed with prejudice.

Respectfully submitted,

_/s/  William J. Olson_

| | |
|---|---|
| Patrick M. McSweeney | William J. Olson (D.C. Bar # 233833) |
| 3358 John Tree Hill Road | Jeremiah L. Morgan (D.C. Bar # 1012943) |
| Powhatan, VA  23139 | William J. Olson, P.C. |
| | 370 Maple Avenue West, Suite 4 |
| Phillip L. Jauregui | Vienna, VA  22180-5615 |
| Judicial Action Group | (703) 356-5070 |
| 1300 I Street, N.W. #400E | wjo@mindspring.com |
| Washington, DC  20005 | Counsel for *Amici Curiae* |
| | Dated: April 9, 2025 |

APPENDIX

App.1

**FEDERAL COURT INJUNCTIONS AGAINST
THE TRUMP ADMINISTRATION**
(January 20, 2025 through April 8, 2025)

## BIRTHRIGHT CITIZENSHIP

1. *New Hampshire Indonesian Community Support v. Trump*, No. 1:25-cv-00038 — The District of New Hampshire enjoined any enforcement of Trump's birthright citizenship EO within the state.

2. *Washington v. Trump*, No. 2:25-cv-00127 — The District of Washington enjoined any enforcement of Trump's birthright citizenship EO nationwide.

3. *New Jersey v. Trump; Doe v. Trump*, No. 1:25-cv-10139 — The District of Massachusetts enjoined any enforcement of Trump's birthright citizenship EO within the state.

4. *CASA Inc. v. Trump*, 8:25-cv-00201 — The District of Maryland enjoined any enforcement of Trump's birthright citizenship EO nationwide.

## IMMIGRATION

5. *J.G.G. v. Trump*, 1:25-cv-00766 — D.C. district judge James Boasberg ordered flights of gang members and terrorists rerouted back to the United States, and then ordered that Trump cannot deport anyone under the Alien Enemies Act without a hearing.  Upheld by D.C. Circuit, and appealed to SCOTUS.

6. *Chung v. Trump*, No. 1:25-cv-02412 — The Southern District of New York issued a temporary restraining order preventing Trump from deporting a Columbia student for pro-Hamas activism.

7. *Phila. Yearly Meeting of The Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, No. 8:2025-cv-00243 — Maryland district court enjoined ICE raids in houses of worship.

App.2

8. *M.K. v. Joyce*, 1:25-cv-01935 — The Southern District of New York issued a temporary restraining order forbidding the removal of a prisoner from the U.S. to Venezuela until the court could rule on the merits of the removal.

9. *Parra v. Castro*, 1:24-cv-00912 — The District of New Mexico enjoined the transfer of three Venezuelans to Gitmo.  They were then removed to their home country instead.

10. *Vizguerra-Ramirez v. Choate*, 1:25-cv-00881 — The District of Colorado enjoined the ICE deportation of a Mexican citizen.

11. *National TPS Alliance v. Noem*, 25-cv-01766 — The Northern District of California enjoined ending Temporary Protected Status ("TPS") for 350,000 to 600,000 Venezuelans.

## TRANSGENDER

12. *Talbott v. Trump*, No. 1:25-cv-00240 — Lesbian D.C. district court judge Ana Reyes enjoined Trump's rule preventing "transgender" persons from serving in the military.  The case is on appeal to the D.C. Circuit.

13. *PFLAG v. Trump*, 8:25-cv-00337 — The Maryland district court granted an injunction against Trump's order denying federal funding to institutions performing chemical or surgical "transgender" mutilation on minors.

14. *Washington v. Trump*, No. 2:25-cv-00244 — The Washington district court also enjoined Trump's order denying federal funding to institutions performing chemical or surgical "transgender" mutilation on minors.

15. *Ireland v. Hegseth*, No. 1:25-cv-01918 — The New Jersey district court enjoined the Air Force from removing two "transgender" service members pursuant to Trump's order banning "transgender" service members.

16. *Doe v. McHenry; Doe v. Bondi*, 1:25-cv-00286 — A D.C. district judge enjoined the transfer of twelve "transgender women" to men's prisons under Trump's order, and terminating their taxpayer-funded hormone treatments.

App.3

17. *Moe v. Trump*, No. 1:25-cv-10195 — The Massachusetts district court enjoined the transfer of a "transgender woman" to a men's prison under Trump's order.

18. *Jones v. Bondi*, 1:25-cv-401 — D.C. district court enjoined the transfer of three "transgender women" to men's prisons under Trump's order, and terminated their taxpayer-funded hormone treatments.

19. *Shilling v. Trump*, 2:25-cv-00241 — The Washington district court enjoined Trump's order to remove "transgender" service members.

## GOVERNMENT OPERATIONS

20. *Dellinger v. Bessent*, No. 1:25-cv-00385 — The district court for the District of Columbia issued a restraining order invalidating Trump's firing of U.S. special counsel Hampton Dellinger.  The order was upheld by the D.C. Circuit Court of Appeals and the Supreme Court, then was temporarily lifted by the Court of Appeals on March 5, pending a final decision on the merits.

21. *American Federation of Government Employees, AFL-CIO v. U.S. Office of Personnel Management*, No. 3:25-cv-01780 — The Northern District of California enjoined Trump's order for six federal agencies to dismiss thousands of probationary employees.  The injunction was upheld by the Ninth Circuit.

22. *Wilcox v. Trump*, No. 1:25-cv-00334 — Judge Beryl Howell of the D.C. district court enjoined Trump's firing of Democrat National Labor Relations Board member Gwynne Wilcox, and ordered her reinstated to finish her term.

23. *Harris v. Bessent*, No. 1:25-cv-00412 — The D.C. district court enjoined Trump's firing of Merit Systems Protection Board member Cathy Harris and ordered her reinstated.

24. *American Federation of Government Employees v. Trump*, No. 1:25-cv-00352 — A Trump-appointed D.C. district court judge issued a temporary restraining order against Trump's firing of USAID employees.  He later vacated the TRO and denied a preliminary injunction against the firings.

App.4

25. *Does 1-9 v. Department of Justice*, No. 1:25-cv-00325 — D.C. district court judge Jia Cobb enjoined Trump from releasing the names of any FBI agents who worked on the January 6 investigation.

26. *Doctors for America v. U.S. Office of Personnel Management*, No. 1:25-cv-00322 — D.C. district court judge John Banks ordered that CDC and FDA webpages that "inculcate or promote gender ideology" be restored after Trump ordered them removed.

27. *Perkins Coie v. DOJ*, No. 1:25-cv-00716 — D.C. district judge Beryl Howell enjoined Trump's directive barring government agencies doing business with Perkins Coie and banning Perkins Coie attorneys from federal buildings.

28. *American Federation of Government Employees, AFL-CIO v. Ezell*, No. 1:25-cv-10276 — The District of Massachusetts issued a temporary restraining order against Trump's buyout of federal employees. The judge later lifted the TRO and denied an injunction, allowing the buyout to go forward.

29. *Maryland v. United States Department of Agriculture*, No. 1:25-cv-00748 — The District of Maryland issued a TRO ordering 38 agencies to stop firing employees and reinstate fired employees.

30. *Does 1-26 v. Musk*, No. 8:25-cv-00462 — Maryland district court ordered DOGE to reinstate email access for fired USAID employees.

31. *American Federation of Teachers v. Bessent*, No. 8:25-cv-00430 — District of Maryland enjoined DOE and Office of Personnel Management from disclosing personal information of employees to DOGE.

32. *American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*, No. 1:25-cv-00596 — The District of Maryland granted an injunction forbidding the Social Security Administration from providing personal information to DOGE.

33. *Brehm v. Marocco*, No. 1:25-cv-00660— D.C. district court issued a temporary restraining order forbidding Trump from removing Brehm from U.S. African Development Foundation, replacing with Marocco.

App.5

34. *American Oversight v. Hegseth*, No. 1:25-cv-00883 — Judge Boasberg of the D.C. district court issued an order "as agreed by the parties," for the government to preserve all Signal communications related to the leak to an Atlantic editor of DoD conversations in Houthi strike.

## FUNDING

35. *National Treasury Employees Union v. Vought*, 1:25-cv-00381 — The D.C. district court halted Trump's budget cuts and layoffs at the Consumer Financial Protection Bureau.

36. *AIDS Vaccine Advocacy Coalition v. Department of State*, No. 1:25-cv-00400 — A D.C. district court judge ordered Trump to unfreeze and spend $2 billion in USAID funds.  The Supreme Court, in a 5-4 ruling with Justices Alito, Thomas, Kavanaugh, and Gorsuch dissenting, left the order in place.

37. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333 — The Maryland district court enjoined Trump's order blocking federal funding for DEI programs.

38. *National Council of Nonprofits v. OMB*, No. 1:25-cv-00239 — The Maryland district court blocked Trump's order to pause federal aid while reviewing to determine that it aligned with administration policy.

39. *Massachusetts v. NIH*, No. 1:25-cv-10338 — The Massachusetts district court enjoined Trump's NIH funding cuts.

40. *New York v. Trump*, 1:25-cv-00039 — The Southern District of New York enjoined Trump's order to freeze federal spending while reviewing to determine that it aligned with administration policy.

41. *California v. Department of Education*, No. 0:25-cv-01244 — District of Massachusetts granted a temporary restraining order blocking Trump's withdrawal of funds to schools teaching DEI. The First Circuit denied a motion for stay pending appeal.

App.6

42. *RFE/RL, Inc. v. Lake*, No. 1:25-cv-00799 — The D.C. district court issued a temporary restraining order forbidding Trump from cutting funds to Voice of America.

43. *Massachusetts Fair Housing Ctr. v. HUD*, No. 3:25-cv-30041 — Massachusetts district court enjoined Trump's cuts to HUD grant funding and ordered spending reinstated.

44. *Climate United Fund v. Citibank, N.A.*, 1:25-cv-00698 — D.C. district court issued a temporary restraining order enjoining EPA's Termination of Greenhouse Gas Reduction Fund Grants.

45. *Association of American Medical Colleges v. NIH*, No. 1:25-cv-10340 — District of Massachusetts enjoined Trump's NIH grant funding cuts.

46. *American Association of Colleges for Teacher Education v. McMahon*, 1:25-cv-00702 — Maryland district court issued an injunction requiring reinstatement of terminated education grant funds.

47. *Chicago Women in Trades v. Trump*, No. 1:25-cv-02005 — The Northern District of Illinois entered a temporary restraining order commanding the reinstatement of DEI grants.

48. *Mayor and City Council of Baltimore et al. v. CFPB*, No. 1:25-cv-00458 — District of Maryland issued a TRO preventing Trump from defunding the CFPB.

49. *Association of American Universities v. Department of Health and Human Services*, No. 1:25-cv-10346 — District of Massachusetts issued a nationwide injunction against Trump's NIH funding cuts.

50. *Doe 1 v. Office of the Director of National Intelligence*, No. 1:25-cv-00300 — The Eastern District of Virginia issued an "administrative stay" against firing DEI employees with CIA and DNI. The court then considered and rejected imposing a TRO to the same effect.