**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PERKINS COIE LLP,<br><br>   Plaintiffs,<br><br> v.<br><br>U.S. DEPARTMENT OF JUSTICE, FEDERAL COMMUNICATIONS COMMISSION, OFFICE OF MANAGEMENT AND BUDGET, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, OFFICE OF PERSONNEL MANAGEMENT, GENERAL SERVICES ADMINISTRATION, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, THE UNITED STATES OF AMERICA, and, in their official capacities, PAMELA J. BONDI, BRENDAN CARR, RUSSELL T. VOUGHT, ANDREA R. LUCAS, CHARLES EZELL, STEPHEN EHEKIAN, and TULSI GABBARD,<br><br>   Defendants. | Civil Action No. 25-716 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO THE MOTION TO DISMISS**

## INTRODUCTION

As in its Complaint, Plaintiff's main strategy in its opposition (ECF 142, "Opposition") to Defendants' motion to dismiss (ECF 43, "Motion") is repetition. Its theory seems to be that, if it calls the Executive Order a "punishment" enough, the Court will see things the same way. And because Plaintiff (and its clients) have received Federal funds, Plaintiff seems to think that declining to provide such funds in the future suddenly becomes "punishment." By Plaintiff's lights, a government contract is a blood oath to fund private parties in perpetuity.

The Court should not buy it. Plaintiff cannot dispute that its conduct is subject to reasonable scrutiny, and it cannot dodge the fact that it has engaged in aggressive DEI practices and sanctionable litigation conduct. That is the heart of the case. This Court should not announce a rule that the Government *cannot* consider an employer's conduct in determining whether the employee should be trusted with this nation's secrets. This Court should not strip away the Government's longstanding authority to use its procurement power to advance the cause of equality in the workplace. This Court should not exempt Perkins Coie from the civil rights laws. And this Court should not muzzle agencies from providing mere *guidance* on Federal building access.

At bottom, Plaintiff does not like what the Government says about Perkins Coie. That is unsurprising. What is surprising is that Plaintiff thinks that the proper recourse is to go to court to fix that. This Court should dismiss this case.

# ARGUMENT

*Motion to Dismiss*

As noted in Defendants' opposition to Plaintiff's motion for summary judgment (ECF 143, "MSJ Opposition"), Section 1 of the Executive Order sets out the Executive Branch's concerns regarding the Plaintiff. This ability to engage in speech of this kind is an essential function for the Executive Branch. *See, e.g., Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009) ("Indeed, it is not easy to imagine how government could function if it lacked this freedom."). To the degree Plaintiff disfavors this speech, the appropriate remedy is to be found through the ballot box, not through a request from a co-equal branch of government to silence a peer. *Id.* (noting the Government is "ultimately accountable to the electorate and the political process for its advocacy," and "[i]f the citizenry objects, newly elected officials later could espouse some different or contrary position."). Indeed, the fact that Plaintiff does not ask this Court to somehow enjoin the *Fact Sheet* illustrates why this Court should not enjoin Section 1. In either case, the Government is simply engaging in its own speech.

Section 2 of the Executive Order addresses security clearances. Plaintiff's Opposition (at 11) takes a narrow view of what can be considered when evaluating security clearances. In fact, the D.C. Circuit recognized in *Lee v. Garland* that "[c]learance decisions involve an assessment of intangible qualities such as 'loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment.'" 120 F.4th 880, 893 (D.C. Cir. 2024) (quoting EO 12,968). Any number of things can call into question a person's "reliability," "strength of character," "discretion," or "sound judgment"—to name a few candidates: apparent lack of compliance with civil rights laws or sanctionable conduct in litigation. But, more importantly, *Lee*'s point was that, whatever the President decides in these respects raise

"unmanageable questions" for the judiciary to answer. *Id.* In *Lee*, the D.C. Circuit held that it "cannot, and should not, second-guess the Executive Branch['s]" determinations on what information is "relevant" to permitting access to classified material. *Id.* at 894. Just so here.

The Opposition (at 16) attacks Section 3 on the basis that there is no interest or legal authority to address the activities of third parties used by contractors. This is incorrect on both counts. Section 3 falls squarely within the well supported tradition of the use of procurement power to advance social policies, in this case, racial discrimination. Executive Order § 3(a). The government's interest in eliminating discrimination in the work force has long been recognized as a legitimate basis for the exercise of discretion in determining contracting partners for the government. *See, e.g., Contractors Ass'n of Eastern Pa. v. Secretary of Labor*, 442 F.2d 159, 168-71 (3d Cir. 1971). Furthermore, requirements for contractors to certify that their subcontractors are compliant with Executive Orders related to anti-discrimination laws have long been part of the regulations governing procurement. *See, e.g.,* 41 CFR 60-1.4(b) sub 8 (stating, in part, "The applicant further agrees that it will refrain from entering into any contract or contract modification subject to Executive Order 11246 of September 24, 1965, with a contractor debarred from, or who has not demonstrated eligibility for, Government contracts and federally assisted construction contracts pursuant to the Executive Order and will carry out such sanctions and penalties for violation of the equal opportunity clause as may be imposed upon contractors and subcontractors by the administering agency or the Secretary of Labor pursuant to Part II, Subpart D of the Executive Order.").

The Opposition's protest about the sufficiency of the Executive Order's rationale (at 16) is also unsupported by authority in this Circuit. As noted in Defendant's MSJ Opposition, great deference is due to Executive Orders addressing efficiency in the workplace of government

3

contractors.  *See, e.g., UAW-Labor Employment & Training Corp. v. Chao,* 325 F.3d 360, 366-67 (D.C. Cir. 2003) (noting that executive orders need only have a "sufficiently close nexus to the values of providing the government an economical and efficient system for procurement and supply" to comply with the Procurement Act).  The same goes for the Opposition's suggestion that it makes no difference even if the President has a "legitimate basis" to terminate contracts with Perkins Coie.  Opp. at 14.  Again, the Government has long harnessed its procurement power to combat racial discrimination in the workplace, and Section 3 is merely the other side of that same coin.  The Opposition does not grapple with the fact that First Amendment retaliation requires but-for causation.  *Houston Community College Sys. v. Wilson*, 595 U.S. 468, 477 (2022).  Even assuming the Opposition is right (and it is not) that the President cannot consider Perkins's indiscretions in litigation, there is still no retaliation claim to be had if the President would have imposed Section 3's restrictions *anyway*.

Lastly, the Opposition (at 13 n.7) appears to concede that Perkins "does not hold government contracts."  That only goes to show that its reliance on *Bd. of Cnty. Cmm'rs v. Umbehr*, 518 U.S. 668, (1996), is misplaced.  That case addressed a contractor's claim that his contract was terminated in violation of the First Amendment.  *Id.*  As noted, Plaintiff has not and cannot allege that the Executive Order has resulted in the termination of any contracts.  And while Section 3 is amply supported by the principle that the procurement power may be used to advance social policy, even assuming that *Umbehr* applied to Section 3 it is vital to note that the Court pointedly limited the decision to *existing* contracts.  *Id*. at 685 ("Finally, we emphasize the limited nature of our decision today. Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a

relationship.").  How *Umbehr* can be reconciled with the Government's undisputed interests in efficiency or in combating racial discrimination in the workplace is simply not a question before this Court.

The Opposition attacks Section 4 on the grounds that it "is at most redundant." Opposition at 18.  This position highlights another of the troubling features of Plaintiff's Complaint, namely, the intrusion into the effective operation of the Executive Branch.  Plaintiff's argument appears to be that prior executive orders on a subject are enough, and at that point additional communications between the White House and agencies on the same subject are not only redundant, but capable of judicial review.  As noted in the MSJ Opposition, Section 4 is nothing other than additional direction to the EEOC to pursue tasks it could already be doing. Furthermore, the form of relief requested—enjoining the EEOC from reviewing potential violations of Title VII—is completely without legal support.

Finally, as to Section 5, Plaintiff asserts that the claim is ripe but overlooks the fact that Section 5 calls for guidance to be issued, yet *no* guidance has been issued.  As noted in the Motion and the MSJ Opposition, Plaintiff's concerns are all merely speculative and conjectural. Every argument Plaintiff makes as to Section 5 is, at the end of the day, an argument that an agency's guidance *will* be improper.  But, of course, the Court should wait for there to actually *be* guidance before addressing those arguments.  Until then, Plaintiff tilts at imaginary windmills.

*Motion to Reconsider*

Plaintiff's Opposition to the Motion to Reconsider highlights yet another flaw in the Complaint.  Plaintiff seeks to bind every federal agency but has not alleged a plausible nexus between the non-named agencies and any injury that it may suffer.  Plaintiff's reliance on 5

U.S.C. § 702 is misplaced.  That section allows injunctions to be implemented by naming "the Federal officer or officers (by name or by title) … personally responsible for compliance."  To the extent Plaintiff is unable to list every officer it would like to enjoin, that merely highlights Plaintiff's lack of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  If Plaintiff cannot even *name* the supposedly offending agencies, it is hard to see how Plaintiff can possibly allege that it has suffered any harm traceable to them.  It is the Plaintiff's burden to allege which agencies have caused it traceable injury and this is not satisfied through a broad and general accusation against the United States.  Defendants respectfully submit that this Court's Order should be modified to bind only the agencies named by the Plaintiff.

## CONCLUSION

The Court should dismiss the Complaint and grant judgment to Defendants.

Dated: April 18, 2025                    Respectfully submitted,
       Washington, DC


                                         CHAD MIZELLE
                                         Acting Associate Attorney General


                                         /s/ *Richard Lawson*
                                         RICHARD LAWSON
                                         Deputy Associate Attorney General
                                         950 Pennsylvania Avenue, NW
                                         Washington, DC 20530
                                         Telephone: (202) 445-8042

                                         *Counsel for Defendants*

6